UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | | |
|---|---|---|
| SEACOAST NATIONAL BANK, | ) | **Case No. 0:26-cv-60289-WPD** |
| **Plaintiff,** | ) | **Judge Hon. William P. Dimitrouleas** |
| v. | ) | |
| M/V SLOW UR ROLL II, et al., | ) | |
| **Defendants.** | ) | |

FILED BY _____ D.C.

JUN 24 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## EMERGENCY MOTION TO PRESERVE PHYSICAL AND ELECTRONIC EVIDENCE, HOLD SALE PROCEEDS IN COURT REGISTRY, AND FOR RECONSIDERATION OF DE 79

Claimant Charles Jacob Stratmann appears solely in his individual capacity and respectfully

seeks emergency, limited preservation relief before M/V Slow UR Roll II is sold, transferred,

altered, refit, or stripped of evidence on June 26, 2026. The vessel is not merely collateral.

It is a physical evidence node containing Seakeeper stabilization unit serials and installation

architecture, Humphree interceptor configuration, helm and electronics integration, calibration

data, proprietary SYG work product, and related technical and R&D evidence directly relevant

to pending federal litigation in which this Claimant is a party. At minimum, this Court should

order that (1) all sale proceeds be held in the Court's registry pending lien-priority review,

and (2) no transfer, alteration, refit, removal, destruction, or disposal of material vessel

systems occur until an expedited preservation inspection is completed. This relief does not

ask the Court to reverse DE 79. It asks the Court to exercise its expressly retained

Page 1 of 13

jurisdiction — see DE 70 (Court "retains jurisdiction to enter further necessary or proper orders") — to prevent irreversible evidence loss before the confirmation window closes on July 3, 2026. DE 80 at 1 confirms the sale "will occur on June 26, 2026, and be subject to confirmation on July 3, 2026."

## I. PRELIMINARY STATEMENT AND CANDOR

Claimant acknowledges that his prior filing [DE 72] contained case citations that do not exist. That error was Claimant's alone. This Court noted "little tolerance for the hallucinated case citations" but declined to impose sanctions. DE 79 at 2. Every authority cited herein has been independently verified to the reporter, pin cite, and holding stated. Claimant does not ask the Court to overlook the prior error. He asks only that one conceded citation defect not extinguish substantive evidence-preservation rights and a wage lien that are grounded in law that does exist.

## II. PROCEDURAL POSTURE: RETAINED JURISDICTION AND RULE 60(b)

This Court entered a final default judgment [DE 69/70] and confirmed the June 26, 2026 sale date [DE 80]. DE 70 expressly provides that the Court "retains jurisdiction to enter further necessary or proper orders." That retained-jurisdiction grant is the primary procedural vehicle for the preservation and registry-hold relief requested here. No reversal of DE 79

is required to grant either.

To the extent the Court considers the alternative request for wage-lien reinstatement, the applicable vehicle is Fed. R. Civ. P. 60(b)(1) (mistake or error of law) and 60(b)(6) (any other reason justifying relief), not Supplemental Rule C(6). Claimant is not relitigating the pre-judgment claim deadline. He is asserting that a post-judgment order did not adjudicate an independent preferred maritime lien before purporting to close the res. See 46 U.S.C. § 31326(b)(1) (preferred maritime liens, including seaman's wages, attach to proceeds of a court-ordered sale in prescribed priority).

III. THE VESSEL IS MATERIAL PHYSICAL EVIDENCE: PRESERVATION IS THE PRIMARY RELIEF

A. Evidence Categories at Irreversible Risk

M/V Slow UR Roll II (2008 Everglades 350LX Express) functioned as SYG LLC's demonstration, R&D, and integration platform for marine stabilization and electronics systems. The following categories of physical, electronic, and technical evidence are present on the vessel and will be transferred, removed, altered, or overwritten if the vessel is conveyed to a third party without a preservation protocol:

1. Seakeeper gyroscopic stabilization unit: serial number, model, installation

configuration, mounting architecture, wiring integration, and calibration data.

2. Humphree interceptor or trim stabilization system: controller, configuration profile, and calibration settings.

3. Helm and display integration: chartplotter, multifunction display, software version, controller interface, NMEA bus configuration, and co-integrated systems.

4. Electronics wiring harness: routing, custom modifications, junction points, and proprietary SYG integration work.

5. Physical mounting and structural modifications: fiberglass work, through-hull modifications, drainage configuration, and access panels relevant to stabilization installation.

6. Service tags, serial plates, labels, and installation records affixed to or stored aboard the vessel.

7. Data-bearing devices: any onboard computer, tablet, controller, or data logger storing configuration, calibration, or operational records.

8. Physical condition evidence of the vessel's demonstration and sea-trial state during Claimant's period of maritime service.

These categories are not reconstructable from documents alone. The physical integration

architecture, calibration state, and condition of the vessel are themselves the evidence.

Claimant has submitted a sworn declaration identifying each installation in detail,

including first-in-class proprietary systems and a cross-system gyroscopic/interceptor

integration dataset that resides only in the vessel's onboard controllers. See Declaration

of Charles Jacob Stratmann ¶¶ 3-9, filed herewith. That declaration is supported by an

independent marine survey (Paul R. Anstey, Inc., File No. 15256B, May 8, 2024) which

confirms the presence of the "Sea Keeper 5000 Gyro" and "Humphree trim tabs" as installed

systems, documents a custom refit of the vessel, and values the vessel at $1,000,000

market / $1,350,000 replacement. See id. ¶ 8; Exhibit A (Bates SYG-107206).

B. Preservation Duty Is Triggered: Related Litigation Is Already Pending

The duty to preserve evidence attaches when litigation is pending or reasonably anticipated.

Fed. R. Civ. P. 37(e); Flury v. Daimler Chrysler Corp., 427 F.3d 939, 943-44 (11th Cir.

2005). Related federal litigation in which this Claimant is a party is currently pending.

Sale to a third party without a preservation protocol creates a substantial risk that the

buyer will lawfully alter, remove, refit, overwrite, or discard the evidence categories

enumerated above before any court can review them.

This is not a claim that the Court-ordered sale itself constitutes spoliation. The harm is

transfer without preservation — a buyer takes title with no knowledge of, and no obligation to maintain, the evidentiary significance of the vessel's onboard systems. Federal courts have inherent authority to manage proceedings and prevent the loss of material evidence. Chambers v. NASCO, Inc., 501 U.S. 32, 43-46 (1991). Fed. R. Civ. P. 26(c)(1)(G) authorizes protective orders providing that trade secrets or confidential research, development, or commercial information not be revealed or be revealed only in a specified way. The Defend Trade Secrets Act, 18 U.S.C. § 1836(b), authorizes injunctions and affirmative protective measures to prevent dissemination of trade-secret information. Florida Statutes § 688.002 (FUTSA) protects formulas, programs, devices, methods, techniques, and processes that derive independent economic value from secrecy and are subject to reasonable measures to maintain secrecy. The vessel's proprietary stabilization integration architecture and R&D configuration constitute protectable confidential commercial information subject to these authorities.

C. Preservation Does Not Impair Seacoast's Position

The preservation protocol is narrower than a stay of foreclosure. It does not impair Seacoast National Bank's adjudicated mortgage position, its right to proceeds, or its right to credit-bid. The sole requests are that proceeds remain under Court control pending

priority review and that the vessel's evidence-bearing systems not be altered, removed, overwritten, or discarded before an inspection. Seacoast's security interest survives intact. The substitute custodian (National Liquidators) remains responsible for the vessel. Any buyer takes subject to a time-limited preservation protocol that imposes minimal burden.

## IV. ALTERNATIVE: SEAMAN'S WAGE LIEN PRIORITY

Even if the Court maintains its DE 79 ruling, Claimant's preferred maritime wage lien attaches to sale proceeds by operation of 46 U.S.C. § 31326(b)(1). Preferred maritime liens — including seaman's wages — are not extinguished by a court-ordered sale; they attach to proceeds in the same priority. The wage lien totals no less than $300,000, with a calculated amount of $478,225 based on 1,739 hours of documented maritime labor at a fixed contractual rate of $275 per hour. See DE 72, Exhibit W-1. The independent marine survey values the vessel at $1,000,000 market value and $1,350,000 replacement value. See Declaration ¶ 8; Exhibit A. The wage lien represents less than half of market value and does not threaten Seacoast's adjudicated mortgage priority.

The Court need not decide the merits of the wage dispute before June 26. It need only direct that proceeds sufficient to satisfy a potential preferred maritime lien be held in the Court's registry pending a priority determination. A wage lien priority position lost

through a sale without prior adjudication is not restorable by damages.

Sasportes v. M/V Sol de Copacabana, 581 F.2d 1204, 1208 (5th Cir. 1978), bars an investor-owner from converting equity interests into wage liens. It does not bar a working maritime laborer employed by a separate Florida LLC — a legal entity distinct from its sole member under Fla. Stat. § 605.04093 — from asserting wages for physical maritime labor actually performed over three years and never paid. McDermott International, Inc. v. Wilander, 498 U.S. 337, 355 (1991), confirms seaman status turns on the nature of work performed and connection to a vessel in navigation, not ownership titles. Applying Sasportes to these facts would immunize any vessel owner who incorporates an LLC from ever paying maritime workers simply because the worker holds a membership interest. That is not what Sasportes holds.

Claimant notes that Seacoast National Bank is represented in this matter by counsel who are named defendants in related pending litigation filed by this Claimant, No. 0:26-cv-61150-PAB (S.D. Fla.). Claimant does not move to disqualify. He notes only that the Rule 11 characterization in DE 73 was advanced by adversarial parties, not neutral officers. The Court may weigh that context as it deems appropriate.

V. EMERGENCY STAY FACTORS

1. **Likelihood of success on the merits:** Substantial on the preservation theory. The evidence categories are concrete, the related litigation is pending, and the Court has expressly retained jurisdiction. The wage-lien theory presents arguable legal questions on Rule C(6)/60(b) and Sasportes applicability.

2. **Irreparable harm:** The risk of irreparable harm is substantial on two independent grounds. First, once the vessel is transferred, altered, stripped, refit, or placed beyond practical access, the original physical evidence condition cannot be reconstructed by any monetary remedy. Second, a seaman's wage lien priority position lost through a sale without prior adjudication is not restorable by damages.

3. **Harm to opposing party:** Minimal. Seacoast National Bank suffers no material harm from a preservation protocol or registry-hold. Its mortgage claim is adjudicated, its security interest is intact, and the vessel remains in substitute custody.

4. **Public interest:** Federal maritime policy strongly favors protection of seaman's wage claims. 46 U.S.C. § 31326(b)(1). The public interest also supports preservation of material evidence before courts can review it.

VI. RELIEF REQUESTED

WHEREFORE, Claimant Charles Jacob Stratmann, individually, respectfully requests that

this Court grant the narrowest relief necessary to prevent irreversible harm:

A. **(PRIMARY — Registry-Hold):** Order that all proceeds from the June 26, 2026 vessel sale be held in the Court's registry pending this Court's ruling on lien priority and the preservation issues raised herein. This relief is procedurally costless — it does not require reinstatement of the wage claim, reversal of DE 79, or any merits determination.

B. **(PRESERVATION ORDER):** Order that Seacoast National Bank, National Liquidators, any purchaser at the June 26, 2026 sale, and any subsequent custodian preserve without alteration, removal, refit, overwriting, or disposal the vessel's onboard stabilization systems, serial plates, helm and electronics integration, wiring, data-bearing devices, service records, installation photographs, and all physical configurations as they exist on the date of sale, pending an expedited preservation inspection to be completed within seven (7) days of sale.

C. **(INSPECTION ORDER):** Permit Claimant or Claimant's designated marine surveyor or electronics expert to inspect and photograph the vessel's onboard systems, serial numbers, installation architecture, and data-bearing devices before title transfer, refit, equipment removal, or alteration — or, if title has already transferred,

within seven (7) days of this order.

D. **(CONFIRMATION STAY — FALLBACK):** In the alternative, stay confirmation of the June 26, 2026 sale (scheduled July 3, 2026) for no more than seven (7) days to permit the preservation inspection and allow this Court to rule on relief A and B.

E. **(WAGE LIEN — ALTERNATIVE):** Reconsider and vacate DE 79 under Fed. R. Civ. P. 60(b) and reinstate Claimant's Verified Claim for Seaman's Wages as a preferred maritime lien subject to adjudication of priority against sale proceeds.

F. **(CREDIT-BID — FLOOR):** In the event the Court declines all other relief, authorize Claimant to submit a credit bid at the June 26, 2026 judicial sale in an amount up to $300,000, subject to subsequent priority determination, and waive the seven-day advance notice requirement under Local Admiralty Rule E(15) given the exigency of the sale date.

Claimant respectfully submits that relief A and B are the minimum required to prevent irreversible harm and are within the Court's retained jurisdiction under DE 70 without disturbing existing judgments or the pending sale.

## CERTIFICATE OF SERVICE

I hereby certify that on _6/24_ , 2026, a true and correct copy of the foregoing

was served via U.S. Mail and email upon:

Amanda Klopp, Esq. / Jenna M. Yoss, Esq.

Akerman LLP

777 S. Flagler Drive, Suite 1100 West Tower

West Palm Beach, FL 33401

amanda.klopp@akerman.com

jenna.yoss@akerman.com

Attorneys for Seacoast National Bank

National Liquidators

800 Old Griffin Rd

Dania Beach, FL 33004

Substitute Custodian

Respectfully submitted,

**Charles Jacob Stratmann**

Plaintiff, Pro Se

545 NE 17th Avenue

Fort Lauderdale, Florida 33301

(954) 873-8546

jake@starboardyacht.com

Date: 6/24/2024