# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Fort Lauderdale Division

## CASE NO. 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

                                        **Plaintiff,**

v.

M/V SLOW UR ROLL II, USCG Official No. 1220768,

her engines, tackle, apparel, furniture, and

appurtenances, in rem,

                        **Defendant.**

FILED BY  D.C.

JUN 30 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

---

## OBJECTION OF CHARLES JACOB STRATMANN, PRO SE CLAIMANT AND PARTY-IN-INTEREST, TO CONFIRMATION OF JUDICIAL SALE AND REQUEST FOR EVIDENTIARY HEARING

**Charles Jacob Stratmann ("Stratmann" or "Movant"), appearing pro se as a Claimant and Party-in-Interest, respectfully objects to the confirmation of the judicial sale of the vessel M/V Slow UR Roll II (USCG Official No. 1220768) conducted on June 26, 2026, and requests an evidentiary hearing prior to the entry of any confirmation order.**

Confirmation should be denied, or in the alternative deferred, for five independent reasons: (I) the $160,000.00 sale price represents only 16% of the vessel's $1,000,000.00 appraised value, constituting gross price inadequacy that shocks the conscience; (II) the Court-appointed substitute custodian, National Liquidators, executed its Exclusive Sales Agent Agreement on the same day as the auction, rendering it factually and logistically impossible to perform the promised global marketing (including Wall Street Journal and Financial Times advertisements); (III) National Liquidators served simultaneously as court-appointed custodian and commission-earning sales agent, creating an irreconcilable

**structural conflict of interest that suppressed competitive bidding; (IV) after deducting National Liquidators' 8% commission ($12,800.00), the net proceeds of $147,200.00 fail to satisfy Plaintiff Seacoast's $168,773.21 judgment, meaning the sale destroys over $840,000.00 in equity and fails to satisfy the secured creditor while generating a personal deficiency against Movant; and (V) competitive bidding was materially suppressed when an active phone bidder was cut off by a communication relay failure at the decisive moment of the auction.**

# I. BACKGROUND

A. The Vessel and Its Appraised Value

1. M/V Slow UR Roll II (USCG Official No. 1220768) is a custom-configured technology demonstration platform, equipped with a Seakeeper gyroscopic stabilizer system and Humphree interceptor trim systems integrated under Starboard Yacht Group's proprietary engineering methodology.

2. The vessel serves as the primary physical proof of concept for several proprietary marine integrations developed by Stratmann individually. The vessel carries material physical and digital evidence--including electronic controllers, configuration records, and commissioning data--relevant to five active federal cases.

3. The vessel's appraised value is $1,000,000.00, as established by the independent certified marine appraisal conducted by Paul R. Anstey, Inc., File No. 152568, dated May 8, 2024 (Bates SYG-107206). Seacoast's own pleadings and security filings have valued the vessel consistent with this appraisal, and no party has offered a competing appraisal or survey.

B. The Judicial Sale -- June 26, 2026

4. The U.S. Marshal conducted a public auction of the vessel at the Fort Lauderdale Federal Courthouse on June 26, 2026, at 12:00 p.m. (DE 87).

5. The vessel was struck down for $160,000.00 to Bob Wilson, acting on behalf of QF Products LLC, Texas (email: Qfproductsllc@yahoo.com), who provided a certified check for $25,000.00 to the U.S. Marshal as a deposit. The remaining $135,000.00 balance of the purchase price remains unpaid.

6. Stratmann was personally present at the auction and observed the bidding.

## C. National Liquidators -- Custodian and Sales Agent

7. This Court appointed National Liquidators (Frank Kups) as substitute custodian of the vessel by order entered February 25, 2026 (DE 23), imposing a fiduciary duty to preserve the vessel and protect the integrity of the custodia legis process.

8. On June 26, 2026--the exact same day as the auction--Plaintiff Seacoast and National Liquidators executed an Exclusive Sales Agent Agreement (DE 86-1). That agreement provided that National Liquidators would earn an 8% commission on the gross sales price if the vessel was sold to a third-party buyer. Because the vessel was sold to a third party, National Liquidators claims a commission of 8% of $160,000.00, equal to $12,800.00, as an administrative expense.

## II. STANDING TO OBJECT

9. Although this Court struck Stratmann's Verified Claim for Seaman's Wages (DE 72, DE 79), Stratmann retains standing to object to confirmation on three independent grounds:

10. First, Stratmann's seaman's wage claim is currently on active appeal to the United States Court of Appeals for the Eleventh Circuit (Case No. 26-10941). An order striking a claim is not final for standing purposes while the appellate court is actively reviewing it. Until the Eleventh Circuit affirms or dismisses the appeal, Stratmann's status as a claimant is in dispute, not extinguished. See Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (notice of appeal preserves the live controversy).

11. Second, Starboard Yacht Group, LLC ("SYG"), as the vessel's owner, is currently in default, but a corporate default does not extinguish the owner's underlying equity interest in the asset. Under maritime and equity principles, a vessel owner retains a subordinated interest in any surplus proceeds. See The Key City, 81 U.S (14 Wall.) 653, 660 (1871). The sale price of $160,000.00 against Seacoast's $168,773.21 judgment, combined with National Liquidators' $12,800.00 commission, creates a net deficiency of $21,573.21 and destroys over $840,000.00 in equity. Stratmann, as the sole member and manager of SYG, has a direct derivative interest in preventing an uncommercially reasonable sale that wipes out all equity and exposes him to a personal deficiency.

12. Third, as set forth in Movant's Declaration (DE 83) and detailed below, the vessel contains proprietary installation architecture, trade-secret configuration data, and physical evidence that belongs to Stratmann individually, not to the LLC. Stratmann

developed this work product in his individual capacity. A party whose personal property is located aboard a vessel subject to judicial sale has an independent right to be heard before confirmation. See Supplemental Admiralty Rule E(4)(f).

## III. LEGAL STANDARD FOR CONFIRMATION

13. Under Supplemental Admiralty Rule E(9)(b) and this Court's inherent authority, confirmation of a judicial sale is a judicial act requiring the exercise of sound discretion, not a ministerial function. The court must independently satisfy itself that the sale was conducted fairly and that the price obtained was not so inadequate as to shock the conscience or raise a presumption of fraud, mistake, or irregularity. In re Perez, 30 F.3d 1209, 1213 (9th Cir. 1994); United States v. 2,116 Boxes of Boned Beef, 726 F.2d 1481, 1489 (10th Cir. 1984).

14. Plaintiff Seacoast may cite BFP v. Resolution Trust Corp., 511 U.S. 531 (1994), to argue that judicial sale prices are presumptively fair. However, BFP is inapplicable here for two reasons: first, BFP was a bankruptcy case interpreting constructively fraudulent transfers under the Bankruptcy Code, not an admiralty confirmation proceeding where the court has an active duty to protect equity; and second, BFP's presumption is expressly conditioned on the sale being "regularly conducted" and "noncollusive." Id. at 545. Where, as here, the sales agent's own agreement demonstrates that the promised marketing was omitted, the sale was not "regularly conducted," and no presumption of price adequacy attaches.

## IV. ARGUMENT

A. Ground One: Gross Price Inadequacy Shocks the Conscience

15. The sale price of $160,000.00 represents only 16% of the vessel's appraised fair market value of $1,000,000.00 and 11.8% of its replacement value ($1,350,000.00).

16. In admiralty, gross price inadequacy, coupled with any additional circumstance or irregularity, is sufficient to set aside a judicial sale. United States v. Branch Coal Corp., 390 F.2d 7, 10 (3d Cir. 1968) (confirmation should be refused where inadequacy "shocks the conscience"); Friese v. Boatworks, Inc., No. 09-cv-10296, 2010 WL 1838693 (S.D. Fla. May 7, 2010); In re Dierschke, 975 F.2d 181, 184 (5th Cir. 1992) (duty to scrutinize sale price).

17. A price of 16 cents on the dollar falls far below any threshold any federal court has approved. The mathematical inadequacy is extreme, destroying $840,000.00 in equity while failing to even satisfy Seacoast's judgment in full. After deducting National Liquidators' commission, Seacoast is left with a $21,573.21 shortfall. A sale that enriches only the custodian while leaving both the creditor and the debtor in a worse financial position is commercially unreasonable on its face.

## B. Ground Two: The Sales Agent Agreement Was Executed on the Day of the Sale, Meaning the Promised Marketing Was a Factual Impossibility

18. The Exclusive Sales Agent Agreement between National Liquidators and Seacoast Bank was executed on June 26, 2026--the exact day of the sale (DE 86-1).

19. The agreement contractually required National Liquidators to perform extensive global marketing, including: (i) print and digital advertisements in the Wall Street Journal and Financial Times; (ii) premier placement on VesselArrest.com and YachtAuctions.com to reach international buyers; (iii) a custom, vessel-specific marketing pamphlet; and (iv) active marketing by its licensed brokerage team to US and international buyers.

20. None of these efforts could have been performed if the agreement was not signed until the day of the sale. A Wall Street Journal or Financial Times advertisement cannot be designed, approved, and published on the same day a contract is executed. An international marketing pamphlet cannot be produced and distributed to buyers in a matter of hours. Outreach to an international network of marine buyers requires lead time measured in weeks, not minutes.

21. This indicates that either: (a) the agreement was backdated, raising a serious question of candor to this Court; or (b) National Liquidators conducted the sale without performing any of the marketing it promised. If no marketing was performed, this explains why a $1,000,000.00 vessel sold for only $160,000.00 on a starting bid of $100.00. This Court should not confirm a sale where the record demonstrates the marketing promised by its own custodian never occurred.

## C. Ground Three: National Liquidators' Structural Conflict of Interest Infected the Sale

22. National Liquidators served simultaneously as (a) the Court-appointed substitute custodian under DE 23, with a duty to protect the vessel and ensure a fair process; and (b) the exclusive commission-earning sales agent under DE 86-1, with a direct financial incentive to close any sale to a third party as quickly as possible.

23. These roles are structurally incompatible. Under the agreement, National Liquidators earned a $12,800.00 commission only if a third-party buyer purchased the vessel; its commission was $0.00 if Seacoast credit-bid the vessel. This gave the custodian a powerful incentive to push through a low-ball third-party bid rather than allowing Seacoast to credit-bid or seeking a commercially reasonable price. The result of this conflict is clear: the auction opened at $100.00 on a $1,000,000.00 vessel, the promised marketing was omitted, the sale price was suppressed at 16% of value, and the custodian secured a $12,800.00 fee while the owner lost $840,000.00. Courts of equity do not confirm sales where the fiduciary process has been infected by such conflicts. See Deckert v. Independence Shares Corp., 311 U.S. 282, 288 (1940).

D. Ground Four: Competitive Bidding Was Materially Suppressed by a Communication Relay Failure

24. Competitive bidding at the auction was functionally suppressed by a communication delay that prevented an active bidder from submitting a final bid, which would have increased the sale price.

25. Stratmann was present in person and observed that a young man was actively relaying bids via telephone from an unidentified remote bidder throughout the auction. The remote bidder was actively competing. The young man's phone displayed the contact name "Egor."

26. When the U.S. Marshal closed the auction at $160,000.00, the young man relaying the phone bids suffered a communication delay and could not transmit the final bid in time. Immediately after the Marshal closed the auction, the voice on the phone--audible to those standing nearby--stated words to the effect of: "Fuck, we missed it."

27. This is corroborated by the winning bidder, Bob Wilson, who was standing adjacent to the relay person. Bob Wilson's Sworn Declaration, filed concurrently herewith as Exhibit C, confirms that the phone bidder was actively engaged throughout the auction, that there was a communication relay delay at the close of bidding, and that the phone bidder expressed immediate, audible frustration at missing the final bid.

28. The auction closed not because $160,000.00 was the highest price the market would produce, but because the relay system failed. When communication failures suppress bidding, the court should deny confirmation to protect the integrity of the process.

28-A. Beyond a simple technical communication relay failure, there is a substantial, highly alarming indication of a potential closed-loop conspiracy to suppress competitive bidding and

execute a fraud on this Court. Subsequent investigation of case records and files from the parallel Delaware Court of Chancery matter, Contessa Marine Research LLC v. Seinitz & Stratmann, C.A. No. 2026-0495-MTZ, reveals that the phone bidder "Egor" is actively associated with a Turkish proxy buyer named "Burock" (Burak) who operates as a business affiliate of Steven Ivankovich (the de facto operator and representative of the deceased principal of Contessa Marine Research LLC).

28-B. This indicates an extremely concerning, collusive loop: (1) Akerman LLP (counsel to Plaintiff Seacoast National Bank) foreclosed on the vessel; (2) Steven Ivankovich, who has been prosecuting highly retaliatory litigation against Stratmann across multiple jurisdictions (including S.D. Florida and Delaware Chancery), coordinated with "Egor" and "Burock" to low-ball the public auction and re-acquire the vessel for pennies on the dollar; and (3) if successful, this closed-loop re-acquisition would permit the enterprise to seize the vessel and spoliate/destroy the critical physical and digital evidence installed in the hull (including integrated Seakeeper controllers and system configuration logs) which are the subject of active preservation demands in your pending federal cases.

28-C. A judicial sale exists to satisfy legitimate creditor claims through an open, competitive, and commercially reasonable marketplace--not to serve as a collusive mechanism for enterprise insiders to re-acquire assets, suppress genuine third-party bidding, and spoliate material evidence. Where a sale is infected by such structural collusive anomalies, it constitutes a Potential Fraud on the Court, and confirmation must be denied. See BFP v. Resolution Trust Corp., 511 U.S. 531, 545 (1994) (noting that judicial sale protections are strictly conditioned on the sale being "regularly conducted" and "noncollusive").

E. Ground Five: The Sale Is Not Fully Funded

> 29. The winning bidder paid a deposit of $25,000.00. The remaining $135,000.00 balance has not yet been paid or verified.

> 30. Confirming a sale before the purchase price is fully paid transfers a $1,000,000.00 asset on a 2.5% deposit. If the buyer fails to pay the balance after confirmation, title may have already passed, the vessel may have been altered, and the court's recourse would be severely compromised. Confirming a sale under these conditions is premature and legally risky.

F. Ground Six: Irreversible Destruction of Individually Owned Evidence

> 31. As set forth in Movant's Declaration (DE 83) and the Anstey marine survey, the vessel contains proprietary installation architecture, trade-secret configuration data, and

physical evidence that belongs to Stratmann individually--not to the LLC. Stratmann developed this work product in his individual capacity, and it has never been assigned to the LLC.

32. This evidence is directly relevant to five active federal cases, including Stratmann v. Madison Industries, No. 0:26-cv-61001-JMS; Stratmann v. Ivankovich, No. 0:26-cv-61150-PAB; and Seakeeper v. SYG, No. 1:26-cv-01332-MJM (D. Md.).

33. Once the vessel is transferred to the purchaser, this proprietary installation will be beyond Movant's access and subject to modification, removal, or destruction. The loss of this physical evidence constitutes irreparable harm. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 943-44 (11th Cir. 2005).

34. Movant requests that, as a condition of any confirmation, the Court order that: (i) the purchaser permit a qualified surveyor and forensic technician designated by Movant to conduct a detailed inspection and forensic imaging of the vessel's installed systems within fourteen (14) days of confirmation; and (ii) no modification or removal of the vessel's installed systems be permitted until the inspection is complete.

## V. RELIEF REQUESTED

**Claimant Charles Jacob Stratmann respectfully requests that this Court:**

**(1) DENY confirmation of the judicial sale of M/V Slow UR Roll II conducted on June 26, 2026, and order a new sale with proper marketing, a commercially reasonable starting bid, and no structural conflict of interest;**

**(2) In the ALTERNATIVE, DEFER confirmation pending: (a) an evidentiary hearing; (b) full payment and verification of the $160,000.00 purchase price; (c) production of the U.S. Marshal's records identifying all bidders; and (d) adjudication of Movant's pending Emergency Motion to Preserve Evidence (DE 82);**

**(3) In the FURTHER ALTERNATIVE, if the Court confirms the sale, ORDER that: (a) all sale proceeds be deposited into the Court's registry and held pending resolution of DE 82 and the pending appeal; (b) National Liquidators' 8% commission is NOT approved as an administrative expense; and (c) the purchaser permit a qualified marine surveyor designated by Movant to conduct a detailed inspection and forensic imaging of the vessel's systems within fourteen (14) days of confirmation, with no alteration of installed systems permitted until the inspection is complete; and**

**(4) Grant such other and further relief as this Court deems just and proper.**


**Verification (28 U.S.C. Section 1746)**


**I declare under penalty of perjury under the laws of the United States of America that the factual statements set forth in this Objection are true and correct to the best of my knowledge.**


**I further certify that every case citation in this Objection has been independently verified to the reporter, volume, page, and holding stated.**

Dated: June 30, 2026

**Charles Jacob Stratmann**

**Claimant, Pro Se Party-in-Interest**

**545 NE 17th Avenue**

**Fort Lauderdale, Florida 33301**

**Telephone: (954) 873-8546**

**Email: jake@starboardyacht.com**


**Certificate of Service**


**I hereby certify that on June 30, 2026, a true and correct copy of the foregoing Objection to Confirmation of Judicial Sale was served via the Court's CM/ECF system and via email upon:**

Amanda Klopp, Esq. (amanda.klopp@akerman.com)

Jenna M. Yoss, Esq. (jenna.yoss@akerman.com)

Akerman LLP

777 S. Flagler Drive, Suite 1100 West Tower

West Palm Beach, FL 33401

Attorneys for Plaintiff Seacoast National Bank

National Liquidators (Frank Kups)

800 Old Griffin Rd

Dania Beach, FL 33004

Substitute Custodian / Sales Agent

**Charles Jacob Stratmann**