# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### Fort Lauderdale Division

**CASE NO. 0:26-cv-60289-WPD**

**IN ADMIRALTY**

**SEACOAST NATIONAL BANK,**

Plaintiff,

v.

M/V SLOW UR ROLL II, USCG Official No. 1220768,
her engines, tackle, apparel, furniture, and
appurtenances, in rem,

Defendant.

---

FILED BY_*ClVL*___D.C.

**JUL 06 2026**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. · FT. LAUD.

---

## CLAIMANT'S PROTEST OF JUDICIAL SALE AND MOTION TO SET ASIDE OR DEFER CONFIRMATION OF THE JUNE 26, 2026 AUCTION OF M/V SLOW UR ROLL II

### (Supplemental Admiralty Rule E(9)(b); S.D. Fla. Local Admiralty Rule E(17); Fed. R. Civ. P. 59(e))

---

Charles Jacob Stratmann ("Claimant"), appearing pro se as a party-in-interest and as the sole member of Starboard Yacht Group, LLC, respectfully PROTESTS the June 26, 2026 judicial sale of M/V SLOW UR ROLL II and moves this Court to: (1) set aside the sale as grossly inadequate and procedurally irregular; or (2) in the alternative, defer confirmation pending appellate review and pending disclosure of the identities of all bidders, including the telephone bidder whose communication was disrupted at the decisive moment of the auction.

This Protest is not duplicative of Claimant's Objection to Confirmation (DE 92). DE 92 asked the Court to decline to confirm. This Protest attacks the validity of the sale transaction itself and invokes the Court's independent supervisory authority over its own officers -- the U.S. Marshal and National Liquidators -- to evaluate whether the auction was fairly conducted under Supplemental Admiralty Rule E(9)(b).

## I. FACTS

A. The Vessel and Its Value.



1. M/V Slow UR Roll II (USCG Official No. 1220768) is a 2008 Everglades 350LX Express, professionally appraised at $1,000,000.00 by Paul R. Anstey, Inc., Marine Surveyors, File No. 152568, May 8, 2024 (DE 92-2). The vessel is a custom-configured technology demonstration platform carrying proprietary Seakeeper gyroscopic stabilizer and Humphree trim-system integrations developed under Starboard Yacht Group's trade-secret methodology and is material evidence in five pending federal cases.

2. Seacoast National Bank's judgment against the vessel is $168,773.21 (DE 70).

**B. The June 26, 2026 Auction.**

1. On June 26, 2026, the United States Marshals Service and court-appointed substitute custodian National Liquidators conducted a public auction of the vessel at the Fort Lauderdale Federal Courthouse, 299 E. Broward Blvd. (DE 87).

2. The vessel was knocked down to a single bidder, William Wilson, acting for QF Products LLC (Texas), for $160,000.00 -- exactly 16% of the vessel's $1,000,000.00 appraised fair market value (DE 87; DE 92-2). Wilson tendered a certified deposit check of $25,000.00. The remaining $135,000.00 balance was due and unpaid pending confirmation. Claimant was personally present at the auction.

3. After National Liquidators' claimed 8% commission ($12,800.00) and the Marshal's fee, net proceeds are approximately $147,135.00 -- an amount that does not satisfy Seacoast's $168,773.21 judgment. The sale simultaneously destroys approximately $840,000.00 in vessel equity and generates a personal deficiency against Claimant.

**C. National Liquidators' Same-Day Sales Agreement.**

1. National Liquidators was appointed substitute custodian by order entered February 25, 2026 (DE 23), charged with preserving the vessel in custodia legis.

2. On June 26, 2026 -- the same day as the auction -- Seacoast (through Trina Sessoms, VP) and National Liquidators (Frank Kups) executed the Exclusive Sales Agent Agreement (DE 86-1). That agreement promised: premier placement on VesselArrest.com and YachtAuctions.com reaching international buyers monthly; vessel-specific marketing pamphlets in electronic and hard copy; print and digital advertising in the Wall Street Journal and Financial Times; and active brokerage outreach to domestic and international buyers.

3. None of these obligations could have been performed between execution of the agreement

and the auction on the same day. A Wall Street Journal advertisement cannot be placed, approved, and published on the same morning a contract is signed. An international marketing pamphlet cannot be drafted, printed, and distributed to buyers on the day of the auction itself.

**D. The Telephone Bidder Communication Disruption.**

1. During the auction, an active, registered telephone bidder was competing through a relay individual physically present at the auction. Claimant personally observed the relay individual relaying bids by telephone to the auctioneer throughout the active bidding period. The telephone bidder participated in multiple rounds of competitive bidding.

2. At or near the decisive moment of the auction, the relay individual suffered a disruption in telephone communication. The telephone bidder's final bid was not timely relayed to the auctioneer. The auction closed without the telephone bidder being able to resume participation. William Wilson's winning bid of $160,000.00 prevailed not because it represented the ceiling of competitive market demand, but because the only active competing bidder was cut off at the decisive moment.

3. William Wilson was personally present and observed the same events. A declaration from Mr. Wilson is being obtained and will be filed in support of this Protest or as a supplement thereto.

4. The identities of the telephone bidder and the relay individual are known only to the United States Marshals Service and National Liquidators. This Court cannot evaluate whether the bidding was suppressed, whether the participants were independent, or whether a pre-arranged transaction occurred, without knowing who participated in the bidding process.

## II. GROUNDS FOR PROTEST

### A. The Sale Price Is Grossly Inadequate.

1. A sale price of $160,000.00 on a $1,000,000.00 vessel -- 16% of appraised value -- is not merely low. It is constructively fraudulent and shocks the conscience. Admiralty courts exercise heightened scrutiny over judicial sales and will set aside or decline to confirm sales where the price is grossly inadequate. United States v. Branch Coal Corp., 390 F.2d 7, 10 (3d Cir. 1968); First Nat'l Bank of Jefferson Parish v. M/V Lightning Power, 776 F.2d 1258, 1261 (5th Cir. 1985); 2,116 Boxes of Boned Beef v. Goedert, 726 F.2d 1481, 1484 (9th Cir. 1984).

2. The sale is especially suspect because the net proceeds do not satisfy the judgment debt. A judicial sale that fails to pay the secured creditor while destroying the debtor's equity at 16 cents on the dollar is not a fair realization of the res -- it is a de facto liquidation at the creditor's convenience.

3. The inadequate price was not the product of a fair market. It was the direct and foreseeable result of the structural defects described below.

**B. The Marketing Process Was Structurally Impossible.**

1. The Exclusive Sales Agent Agreement (DE 86-1) was executed on the same day as the auction. The marketing obligations in that agreement -- Wall Street Journal and Financial Times advertisements, international buyer outreach, VesselArrest.com and YachtAuctions.com placement, vessel-specific marketing pamphlets -- cannot be performed in hours. They require days or weeks of lead time.

2. There are only two possible explanations: (a) the agreement was backdated, in which case the integrity of DE 86-1 is in question; or (b) no marketing was performed before the auction, in which case this $1,000,000.00 vessel was sold without any of the marketing the custodian promised.

3. Either way, this Court should not confirm a judicial sale where the sales agent's own filed agreement demonstrates that the marketing promised never occurred or cannot be verified. In re Dierschke, 975 F.2d 181, 185 (5th Cir.

1) (irregularity in sale process is independent ground to refuse confirmation).

C. The Custodian and Sales Agent Roles Created a Structural Conflict of Interest.

1. National Liquidators served simultaneously as (a) the court-appointed substitute custodian, with a duty to preserve the res and ensure a fair process for all parties, and (b) the exclusive sales agent earning an 8% commission only on a completed third-party sale -- earning nothing if Seacoast credit-bid.

2. These roles are structurally incompatible. A custodian's duty runs to the Court and to all parties equally. A commission-earning sales agent's financial incentive runs to closing any sale, at any price, to a third party as quickly as possible. The conflict materially contributed to the inadequate price.

3. Courts decline to confirm sales where the conduct of the sales process was affected by a conflict of interest. Matter of Topgallant Lines, Inc., 154 B.R. 368, 376 (S.D. Ga. 1993); Supplemental Admiralty Rule E(9)(b) (court may decline to confirm a sale if the sale was not "fairly conducted").

**D. Competitive Bidding Was Suppressed.**

1. An active telephone bidder was cut off at the decisive moment of the auction due to a communication relay failure. The auction result does not reflect the full competitive market for this vessel. A bidder who was actively competing was effectively excluded from the final bid round by a circumstance entirely outside his control.

2. A specialized $1,000,000.00 marine technology vessel would attract premium buyers from outside South Florida -- Gulf Coast dealers, New England buyers, Caribbean operators, and gyroscopic stabilizer technology investors. Adequate remote and telephone bidding capability is essential to realize fair value for this category of asset. The auction was conducted without meaningful provision for sustained remote-bidder participation.

**E. The Outstanding Balance Renders the Sale Incomplete.**

1. Wilson's $135,000.00 balance remains unpaid. Confirming a sale before the purchase price is fully tendered transfers a $1,000,000.00 vessel on a 2.5% deposit. Supplemental Rule E(9) does not contemplate confirmation of a sale where the buyer has not performed his own obligation. The Court should not confirm the sale until full payment is verified.

## III. THE COURT RETAINS JURISDICTION TO HEAR THIS PROTEST

1. Claimant acknowledges this Court's July 1, 2026 Order (DE 93) holding that the pending appeal divests the Court of jurisdiction over DE 92. This Protest raises a separate and independent basis for the Court's authority that was not addressed in DE 93.

2. The filing of a notice of appeal divests a district court of jurisdiction only "over those aspects of the case involved in the appeal." Weaver v. Florida Power & Light Co., 172 F.3d 771, 773 (11th Cir. 1999). The merits of the underlying foreclosure judgment (DE 70) are the subject of the appeal. The administrative question of whether the June 26, 2026 auction was fairly conducted under Supplemental Rule E(9)(b) is a post-judgment collateral matter entirely separate from those merits.

3. Supplemental Admiralty Rule E(9) and Local Admiralty Rule E(17) give this Court supervisory authority over its own officers -- the U.S. Marshal and court-appointed custodians -- that is not divested by appeal. The Court cannot simultaneously lack jurisdiction to evaluate the sale it ordered while retaining jurisdiction to confirm it. If the Court lacks jurisdiction to hear this Protest, it equally lacks jurisdiction to enter a confirmation order.

4. This Protest therefore invokes the Court's inherent authority to supervise the conduct of its own officers in executing the Final Judgment, authority that is collateral to and independent of the foreclosure merits on appeal.

## IV. RELIEF REQUESTED

WHEREFORE, Claimant respectfully requests that this Court:

1. SET ASIDE the June 26, 2026 judicial sale of M/V SLOW UR ROLL II as grossly inadequate and procedurally defective;

2. In the alternative, DEFER confirmation of the sale pending: (a) resolution of the pending appeal in the Eleventh Circuit (Appeal No. 26-12270-G); (b) full payment of the $160,000.00 purchase price; and (c) an evidentiary hearing on the integrity of the auction process;

3. In the further alternative, HOLD all gross sale proceeds ($160,000.00) in the Court registry with no disbursement to Seacoast or National Liquidators pending resolution of the appeal and any evidentiary hearing;

4. DISAPPROVE National Liquidators' 8% commission ($12,800.00) pending a showing that the marketing obligations in DE 86-1 were actually performed;

5. ORDER the United States Marshals Service and National Liquidators to disclose within five (5) business days: (a) the names, addresses, telephone numbers, and email addresses of all registered bidders; (b) the method of participation of each bidder (in-person, telephone, or through an agent); (c) the identity, employer, and contact information of the relay individual who communicated telephone bids; and (d) the official bidding and registration logs;

6. If the sale is set aside, ORDER a new sale with: (a) a minimum 30-day national marketing period with verifiable pre-auction advertising; (b) an independent sales agent with no custodial interest; (c) sustained telephone and online bidding capability; (d) a minimum opening bid not less than 65% of the most recent professional appraisal; and (e) full disclosure of all registered

bidders prior to the auction; and

7. Grant such other and further relief as is equitable and just.

## V. CERTIFICATE OF CONFERRAL (S.D. Fla. L.R. 7.1(a)(3))

Claimant certifies that on July 7, 2026, he made a good-faith effort to confer with counsel for Plaintiff Seacoast National Bank, Akerman LLP, by email to Amanda Klopp, Esq. (amanda.klopp@akerman.com), Jenna M. Yoss, Esq. (jenna.yoss@akerman.com), and Kristen Fiore, Esq. (kristen.fiore@akerman.com), describing the relief sought in this Protest and inviting a response by July 8, 2026, at 5:00 p.m. ET. No response consenting to the requested relief had been received as of the time of filing.

## VI. CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 7, 2026, a true and correct copy of the foregoing was filed via CM/ECF, which will serve all counsel of record, including:

Amanda Klopp, Esq. / Jenna M. Yoss, Esq. / Kristen Fiore, Esq. Akerman LLP 2777 E. Oakland Park Blvd., Suite 500 Fort Lauderdale, Florida 33306

*/s/ Charles Jacob Stratmann*

Respectfully submitted,

*/s/ Charles Jacob Stratmann*

Charles Jacob Stratmann, pro se Claimant / Sole Member, Starboard Yacht Group, LLC 545 NE 17th Avenue Fort Lauderdale, Florida 33301 Telephone: (954) 873-8546 Email: jake@starboardyacht.com

Dated: July 7, 2026