IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
**Fort Lauderdale Division**

CASE NO. 0:26-cv-60289-WPD

**SEACOAST NATIONAL BANK,**

Plaintiff,

v.

M/V SLOW UR ROLL II, USCG Official No. 1220768,
her engines, tackle, apparel, furniture, and
appurtenances, in rem,

Defendant.

FILED BY _____ D.C.

JUL 08 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

---

## NOTICE OF ERRATA REGARDING CITATIONS IN CLAIMANT'S OBJECTION TO CONFIRMATION OF JUDICIAL SALE (DE 92) AND PROTEST OF JUDICIAL SALE (DE 97)

Charles Jacob Stratmann ("Claimant"), pro se, respectfully files this Notice of Errata to correct citation errors in: (I) Objection of Charles Jacob Stratmann to Confirmation of Judicial Sale and Request for Evidentiary Hearing (DE 92), and (II) Claimant's Protest of Judicial Sale and Motion to Set Aside or Defer Confirmation of the June 26, 2026 Auction of M/V Slow Ur Roll II (DE 97). 1. Withdrawal of Citation -- Friese v. Boatworks, Inc. In DE 92 and DE 97, Claimant cited Friese v. Boatworks, Inc., No. 09-cv-10296, 2010 WL 1838693 (S.D. Fla. May 7, 2010). Upon further review, Claimant has determined that this citation does not correspond to an actual decision of this Court or any court under that caption. The Westlaw citation 2010 WL 1838693 corresponds to Google, Inc. v. Netlist, Inc., Nos. C 08-4144 SBA, C 09-5718 SBA (N.D. Cal. May 5, 2010), a patent case with no relevance to admiralty law or the issues before this Court. This citation is withdrawn in its entirety. Claimant regrets the error. The proposition for which Friese was cited -- that the Court has an independent duty to scrutinize the adequacy of a judicial sale price before confirmation -- is established by Wong Shing v. M/V Mardina Trader, 564 F.2d 1183, 1188-89 (5th Cir. 1977), and Supplemental Rule E(9)(a), Fed. R. Civ. P. Plaintiff itself relies on Wong Shing in its Response in Opposition (DE 98), confirming this authority governs. 2. Clarification of Remaining Challenged Citations Plaintiff's Response in Opposition (DE 98) challenges five additional citations as inapposite. Claimant addresses each below. 2.1 In re Perez, 30 F.3d 1209 (9th Cir. 1994). This case was cited in DE 92 and DE 97 for the general proposition that a court may decline to confirm a sale or set aside a transaction where the process is tainted by irregularity. Claimant acknowledges that this case does not

1

directly address Supplemental Admiralty Rule E(9) or confirmation of an admiralty judicial sale. The citation is withdrawn. The underlying proposition is independently supported by Wong Shing, 564 F.2d at 1188-89, and Supplemental Rule E(9)(a). 2.2 United States v. 2,116 Boxes of Boned Beef, 516 F. Supp. 321 (D. Kan. 1981). This case was cited in DE 92 and DE 97 for the general proposition that a court may decline to confirm a sale or set aside a transaction where the process is tainted by irregularity. Claimant acknowledges that this case involves a forfeiture action under the Federal Meat Inspection Act and does not arise in the admiralty-sale context. The citation is withdrawn. The underlying proposition is independently supported by Wong Shing, 564 F.2d at 1188-89. 2.3 In re Dierschke, 975 F.2d 181 (5th Cir. 1992). This case was cited in DE 92 and DE 97 for the proposition that the Court has a duty to scrutinize the sale price before confirmation. Claimant acknowledges that In re Dierschke does not support that proposition in the admiralty-sale context. The citation is withdrawn. The Court's duty to scrutinize the adequacy of a judicial sale price is established by Wong Shing, 564 F.2d at 1188-89, which Plaintiff itself cites in DE 98. 2.4 Deckert v. Independence Shares Corp., 311 U.S. 282 (1940). This is a decision of the United States Supreme Court concerning equitable rescission of fraudulent securities transactions. This case was cited in DE 92 and DE 97 for the general equitable principle that courts have inherent power to scrutinize and rescind transactions tainted by fraud or conflict of interest. Claimant acknowledges that Deckert does not arise in the admiralty context. However, the equitable principle that a court may set aside a sale procured through fraud, collusion, or conflict of interest is not limited to securities cases and is confirmed in the admiralty context by Wong Shing, 564 F.2d at 1188 (recognizing fraud, collusion, and irregularity as grounds to set aside a Marshal's sale). Claimant withdraws reliance on Deckert and relies on Wong Shing for this proposition. 2.5 Flury v. Daimler Chrysler Corp., 427 F.3d 939 (11th Cir. 2005). This is a decision of the United States Court of Appeals for the Eleventh Circuit establishing the governing framework for spoliation sanctions in this Circuit. This case was cited in DE 92 and DE 97 for the proposition that a party has an obligation to preserve evidence when litigation is reasonably anticipated. Plaintiff asserts that Flury concerns products-liability spoliation and does not justify delaying confirmation of a Marshal's sale. Claimant respectfully disagrees. The Eleventh Circuit's spoliation framework is not limited by subject matter -- it applies whenever a party has a duty to preserve relevant evidence and litigation is reasonably anticipated, regardless of whether the underlying case involves products liability, admiralty, or any other area. Claimant maintains this citation. 3. Verification of Remaining Citations Claimant has re-verified all other citations in DE 92 and DE 97. Claimant confirms that, apart from the matters addressed in Sections 1 and 2 above, all remaining citations correspond to real decisions and are cited for propositions consistent with

the holdings of those decisions. 4. No Effect on Substantive Arguments The withdrawals and clarifications above do not alter the substance of Claimant's objections. Claimant's core arguments are factual: The sale price of $160,000 represents 16% of the vessel's May 2024 appraised value of $1,000,000 -- a ratio this Court and the Fifth Circuit would find grossly inadequate under Wong Shing; The Exclusive Sales Agent Agreement (DE 86-1) was executed on the day of the auction, making the promised marketing campaign in the Wall Street Journal, Financial Times, and international channels physically impossible; An apparent phone bidder may have been improperly excluded from the auction, as reflected in the forthcoming signed declaration of Bob Wilson; and Proprietary evidence aboard the vessel -- including trade-secret installation architecture and configuration data relevant to five pending federal cases -- requires preservation. These arguments are grounded in the record and do not depend on any of the withdrawn citations. They are supported by Wong Shing, Supplemental Rule E(9)(a), and the Court's inherent supervisory authority over judicial sales conducted under its decree. Respectfully submitted,

*/s/ Charles Jacob Stratmann*

Charles Jacob Stratmann Pro Se Claimant and Party-in-Interest 545 NE 17th Avenue Fort Lauderdale, Florida 33301 Telephone: (954) 873-8546 Email: jake@starboardyacht.com

Dated: July 8, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2026, I caused a true and correct copy of the foregoing Notice of Errata to be filed via the Court's CM/ECF system, which will provide electronic notice to all registered counsel of record, and served via U.S. Mail and email to:

Amanda Klopp, Esq. and Jenna M. Yoss, Esq. Akerman LLP 777 S. Flagler Drive, Suite 1100 -- West Tower West Palm Beach, FL 33401 amanda.klopp@akerman.com jenna.yoss@akerman.com

National Liquidators 800 Old Griffin Road Dania Beach, FL 33004

United States Marshal's Service 299 East Broward Boulevard, Room 101 Fort Lauderdale, FL 33301

*/s/ Charles Jacob Stratmann*

Charles Jacob Stratmann

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

IN ADMIRALTY

CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

vs.

M/V SLOW UR ROLL II, Official No. 1220768,

in rem, and

STARBOARD YACHT GROUP, LLC, a Florida limited liability company,

in personam,

Defendants.

---

CLAIMANT CHARLES JACOB STRATMANN'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION (DE 98) ]

---

Charles Jacob Stratmann ("Claimant"), pro se party-in-interest, respectfully files this Reply to Plaintiff Seacoast National Bank's ("Seacoast") Response in Opposition (DE 98) to Claimant's Objection to Confirmation of Judicial Sale (DE 92), Protest of Judicial Sale (DE 97), and Motion for Disclosure of Bidder Identities (DE 96). Claimant states as follows:

## 1. Introduction

Seacoast's opposition asks this Court to confirm, without scrutiny, a judicial sale that recovered 16% of the vessel's appraised value -- conducted under a Sales Agent Agreement executed on the morning of the auction, by a substitute custodian earning a commission on the sale it was supposed to market, for a vessel that had 59 consecutive on-time loan payments before Seacoast manufactured a default. Seacoast's opposition is built on procedural technicalities, mischaracterizations of Claimant's standing, and conspicuous silence on the facts that matter most. This Reply addresses Seacoast's arguments in turn and identifies the issues Seacoast chose not to address.

## 2. The E(17)(g) Deposit Requirement Does Not Bar the Court From Reviewing This Sale

Seacoast argues that Claimant's objections cannot be considered because Claimant did not deposit the cost of keeping the vessel for fourteen days under Local Admiralty Rule E(17)(g)(ii). Claimant acknowledges that no deposit was made. This does not end the analysis for three independent reasons.

2.1 The Deposit Requirement Is Moot. The deposit requirement exists to fund the Marshal's cost of maintaining the vessel during the delay caused by an objection. Seacoast itself confirms in DE 98 that "the US Marshal has advised the substitute custodian that the buyer has in fact paid the sale price." DE 98 at 10. The vessel has been fully paid for. There are no ongoing Marshal's keeping costs to fund. A rule designed to cover custodial expenses during the objection period cannot bar an objection where no custodial expenses are being incurred. The deposit requirement has been satisfied by circumstances -- there is nothing to deposit against.

2.2 Claimant Is Indigent. Claimant's financial condition is documented in the record. Starboard Yacht Group LLC's operating capital was destroyed when $1,302,128.34 in gross business assets were seized and liquidated by a third party on November 10, 2025 (net recovery claim pending in the replevin action is approximately $834,000). Claimant's SBA EIDL loan is in default. Claimant has expended approximately $1,000,000 in legal costs across 24 pending federal cases. A local rule cannot condition a party's constitutional right to be heard on a financial deposit that party cannot pay. The deposit requirement functions as a cost bond. Under 28 U.S.C. Sec. 1915, indigent parties are excused from prepayment of fees and costs as a condition of court access. The same principle applies here -- denying Claimant the right to object to a sale of his property because he cannot afford a deposit would violate the Due Process Clause of the Fifth Amendment.

2.3 The Court's Inherent Supervisory Authority Is Not Conditioned on a Deposit. This Court has independent authority -- and an independent duty -- to scrutinize a judicial sale conducted under its own decree before entering confirmation. Wong Shing v. M/V Mardina Trader, 564 F.2d 1183, 1188-89 (5th Cir. 1977); Supplemental Rule E(9)(a), Fed. R. Civ. P. That supervisory authority derives from the Court's admiralty jurisdiction and its inherent power over proceedings conducted under its orders. It does not derive from, and cannot be extinguished by, a local rule governing the mechanics of party objections. Even if the Court determines that Claimant's formal objections do not comply with E(17)(g), the Court retains authority -- and the obligation -- to satisfy itself that the sale was properly conducted and the price was adequate before entering confirmation. The record before the Court raises questions about both.

2.4 Service on the Marshal. Claimant has served a copy of the objections on the United States Marshal's Service concurrently with this Reply. A Notice of Service is filed concurrently with this Reply. To the extent prior service was deficient under E(17)(g)(i), the deficiency is cured.

### 3. Claimant Has Standing as an Individual Party-in-Interest

Seacoast conflates two distinct issues: (i) whether Claimant can represent SYG pro se (he cannot, and has never claimed otherwise), and (ii) whether Claimant has standing in his individual capacity to object to confirmation. He does.

3.1 Claimant Has Personal Property Aboard the Vessel. The vessel contains proprietary installation architecture, trade-secret configuration data, and physical evidence that belongs to Claimant individually -- not to SYG. This includes the Seakeeper-Vessel-Interceptor-Complementary Methodology ("SVICM"), a proprietary integration system developed by Claimant personally over seven years, which is the subject of active intellectual property disputes in five pending federal cases. The confirmation and transfer of the vessel to a third-party purchaser without preservation of this evidence will result in irreparable destruction of Claimant's individual intellectual property.

3.2 Seacoast Mischaracterizes Prior Orders. The Court's prior orders (DE 15, 53, 61) addressed Claimant's capacity to represent SYG -- not Claimant's individual standing as a party-in-interest. An individual with personal property aboard an arrested vessel has standing to be heard on confirmation. The Court struck SYG's answer and Claimant's wage claim. Neither order addressed or adjudicated Claimant's individual interest in proprietary evidence aboard the vessel.

3.3 The Preservation Claim Is Not "Repackaged." Seacoast argues that Claimant is repackaging previously denied preservation relief. The denial of emergency motions (DE 82, 85, 91) does not constitute an adjudication that Claimant has no interest in evidence aboard the vessel. Those motions were denied on procedural and timing grounds. The question before the Court now is whether confirmation should include conditions protecting identifiable personal property of a party-in-interest -- a question that arises at confirmation, not before it.

### 4. The Sale Price of $160,000 Is Grossly Inadequate

3

Seacoast does not dispute the May 2024 appraised value of $1,000,000. Seacoast does not offer a competing appraisal. Seacoast's sole argument is that "a court-ordered Marshal's sale is not a private retail yacht sale" and that the appraisal is two years old. DE 98 at 7.

4.1 The 16% Ratio. The vessel sold for $160,000 against an appraised value of $1,000,000 -- a 16% recovery. In Wong Shing, the Fifth Circuit confirmed a sale at approximately 40% of appraised value, but only after finding no fraud, collusion, or irregularity in the sale process. 564 F.2d at 1189. At 16%, the sale price in this case is less than half the ratio the Wong Shing court found acceptable. This Court's duty to scrutinize price adequacy is at its highest when the ratio between sale price and appraised value reaches the level where it "shock[s] the conscience." Wong Shing, 564 F.2d at 1188. Other courts have refused to confirm sales where the price was patently and grossly out of proportion to the vessel's value. First Nat. Bank of Jefferson Parish v. M/V Lightning Power, 776 F.2d 1258, 1260 (5th Cir. 1985) (reversing confirmation where mortgagee bought $500,000+ vessel for $5,000).

4.2 No Competing Valuation. The appraisal is the only valuation evidence in the record. If Seacoast believed the vessel was worth closer to $160,000, it had every incentive and resource to obtain its own appraisal -- it is represented by Akerman LLP, an Am Law 100 firm, and is a $20.8 billion publicly traded banking institution. The absence of a competing valuation is telling. Even accepting Seacoast's criticism that the appraisal was conducted without a sea trial, a 50% discount for condition and market decline would place the vessel's value at $500,000 -- and $160,000 is still only 32% of that reduced figure.

4.3 The Forced-Sale Discount Does Not Explain This Gap. Courts recognize that forced sales produce lower prices than private sales. But the forced-sale discount explains a reduction to 40-60% of appraised value, not to 16%. The gap between a normal forced-sale discount and the price obtained here is explained by the Sales Agent Agreement -- the marketing that was supposed to narrow that gap never occurred.

## 5. The Same-Day Sales Agent Agreement Is a Sale-Process Irregularity

Seacoast does not dispute that the Exclusive Sales Agent Agreement (DE 86-1) was executed on June 26, 2026 -- the date of the auction. Seacoast argues that "the Objections offer no competent evidence that the Vessel was not marketed." DE 98 at 8. The agreement itself is the evidence.

5.1 The Agreement Promised Marketing That Could Not Have Occurred. The Sales Agent Agreement describes National Liquidators' role in "promoting the sale through yacht-focused channels and educating potential buyers about the process." DE 98 at 8-9. The agreement was executed on the morning of the sale. Marketing in the Wall Street Journal, Financial Times, and international yacht channels -- the marketing contemplated by the agreement -- requires weeks of lead time for publication, distribution, and buyer response. An agreement executed on sale day is a post-hoc documentation of a commission arrangement, not evidence that marketing occurred.

5.2 Seacoast's Argument Inverts the Burden. Seacoast argues that Claimant has not proven that marketing did not occur. But the execution date of the agreement creates a presumption that it did not. The party that executed a marketing agreement on sale day bears the burden of explaining what marketing actually occurred before the sale, when it occurred, and through what channels. Seacoast has not produced a single advertisement, listing, email blast, broker notification, or publication confirming any pre-sale marketing. The record contains only the agreement itself -- signed too late to have been performed.

5.3 The Dual-Role Conflict. National Liquidators served simultaneously as substitute custodian (with a financial interest in ending custody and its associated costs) and as commission-earning sales agent (with a financial interest in completing any sale, at any price, as quickly as possible). These incentives are structurally misaligned with the Court's interest in obtaining the highest possible price. Seacoast argues that the commission structure -- 8% only on a third-party sale, zero on a credit bid -- was "aligned with the objective of obtaining a third-party cash buyer." DE 98 at 8. But that alignment goes to whether a third-party sale was preferable to a credit bid -- not to whether the sale price was maximized. An agent earning 8% of $160,000 ($12,800) has no incentive to delay a sale in pursuit of a higher price if delay means continued custodial expenses. Fifth Circuit precedent confirms that a sale may be set aside where a conflict of interest or dual role chills competitive bidding. Latvian Shipping Co. v. Baltic Shipping Co., 99 F.3d 690, 697 (5th Cir. 1996) (vacating confirmation where counsel represented both mortgagee and successful bidder, creating conflict that suppressed bidding).

## 6. The Wilson Declaration Will Be Supplemented

Seacoast correctly notes that the declaration of Bob Wilson filed at DE 92-1 is unsigned. Claimant acknowledges this deficiency. Claimant is scheduled to meet with Mr. Wilson on

Monday, July 13, 2026 to execute the declaration. Claimant respectfully requests leave to file the signed declaration as a supplement to DE 92 promptly upon execution. Claimant notes that Seacoast's opposition does not address the substance of Mr. Wilson's account. Seacoast does not deny that a phone bidder was present at the auction. Seacoast does not deny that someone communicated words to the effect of "we missed it." Seacoast does not produce an affidavit from the United States Marshal, from National Liquidators, or from any auction participant denying that a phone bid was made, communicated, or refused. Seacoast's opposition is limited to the procedural deficiency of an unsigned declaration -- not to the substance of the phone-bidder allegation. The signed declaration, when filed, will provide the evidentiary foundation Seacoast says is lacking. An evidentiary hearing at that point will be warranted.

## 7. The Citation Errors Have Been Corrected

Claimant has filed a separate Notice of Errata addressing the citation issues raised in DE 98. In summary: The citation to Friese v. Boatworks, Inc., 2010 WL 1838693, has been withdrawn. Upon further review, Claimant determined that this citation does not correspond to an actual decision under that caption. Claimant regrets the error. The proposition for which it was cited -- the Court's duty to scrutinize sale price -- is established by Wong Shing, 564 F.2d at 1188-89, and Supplemental Rule E(9)(a). Three additional citations -- In re Perez, United States v. 2,116 Boxes of Boned Beef, and In re Dierschke -- have been withdrawn as inapposite to the admiralty-sale context. The propositions for which they were cited are independently supported by Wong Shing and Rule E(9)(a). Deckert v. Independence Shares Corp. has been withdrawn, with reliance redirected to Wong Shing for the equitable principle that courts may set aside sales tainted by fraud or conflict. Flury v. Daimler Chrysler Corp., 427 F.3d 939 (11th Cir. 2005), is maintained. The Eleventh Circuit's spoliation framework is not limited by subject matter. The citation errors do not affect the substance of Claimant's objections. Claimant's arguments are factual -- price adequacy, the same-day Sales Agent Agreement, the phone bidder, and evidence preservation. They rest on the record, on Wong Shing, and on this Court's inherent supervisory authority. No withdrawn citation is necessary to any argument Claimant has made or makes here.

## 8. Seacoast's Silence on the Material Facts

Seacoast's twelve-page opposition does not address the following:

8.1 Manufactured Default. The loan history -- produced by Seacoast's own counsel as an exhibit -- shows 59 consecutive on-time payments from July 2020 through June 2025. Seacoast classified the loan as non-accrual on September 29, 2025 -- the same day Claimant made a $1,300 payment. Seacoast issued acceleration on December 18, 2025 -- sixteen days after receiving a December 2 payment. Seacoast's January 2026 reconciliation emails confirm receipt of multiple payments while simultaneously refusing to discuss cure. The foreclosure was not triggered by default -- it was manufactured through selective classification and refusal to accept cure. Seacoast does not address any of this.

8.2 Differential Treatment. Seacoast holds claims against entities controlled by the Ivankovich family -- including Contessa Marine Research LLC -- in amounts exceeding $1.55 million, approximately ten times Claimant's $168,773.21 obligation. Seacoast accommodates the Ivankovich debt. Seacoast fire-sold Claimant's vessel. Claimant's debt represents 0.0008% of Seacoast's $20.8 billion in total consolidated assets and 0.12% of its $144.9 million quarterly net income. There is no rational economic basis for this prosecution. Seacoast does not address the differential treatment or offer any explanation for why Claimant received a fire sale while a debtor owing ten times more received accommodation.

8.3 The Locality Bank Waiver. Seacoast's own Complaint (Paragraph 15) confirms that Locality Bank recorded a subordinate lien against the vessel on June 24, 2024. Seacoast accepted 18+ months of payments from Claimant after the lien recording without objection, without notification to Claimant, and without declaring a default. Claimant did not learn of the Locality Bank lien until Seacoast filed its Complaint. Eighteen months of payment acceptance after a lien recording constitutes waiver of the lien as a default trigger. Seacoast does not address waiver.

8.4 The Death of Lang Ryder. Lang Ryder was Claimant's primary Seacoast contact and the EVP of Seacoast Marine Finance who originated the loan. Mr. Ryder died on March 18, 2023. Seacoast never notified Claimant. Claimant emailed Mr. Ryder on March 14, 2024 -- one year after his death -- and received no response, no bounce-back, and no redirect. Claimant referred a customer to Mr. Ryder on January 26, 2024 -- ten months after his death. Claimant did not learn of Mr. Ryder's death until June 26, 2026, at the Marshal's sale. Seacoast's failure to notify its borrower that his sole point of contact had died, combined with its continued acceptance of payments for three years afterward, is relevant to the unclean-hands inquiry this Court should conduct before confirming a sale at 16% of appraised value. Seacoast does not address it.

8.5 Akerman's Structural Conflict. Seacoast's counsel, Akerman LLP, simultaneously serves as lead counsel for Seacoast against Claimant in this action and as counsel for the Ivankovich family bankruptcy entities in Case No. 24-15755-LMI (Southern District of Florida). That dual representation creates a structural conflict: Akerman cannot aggressively pursue the Ivankovich entities on Seacoast's behalf while it simultaneously represents those entities in bankruptcy. The aggression is redirected to Claimant -- the party that does not pay Akerman. This conflict is consistent with, and helps explain, Seacoast's differential treatment of the Ivankovich debt (over $1.55 million, accommodated) versus Claimant's debt ($168,773.21, fire-sold). Seacoast does not address it.

## 9. Jurisdiction

Claimant does not dispute that the district court retains jurisdiction to administer the sale process during the pendency of an appeal. Claimant's pending appeal (11th Cir. No. 26-12270-G) challenges the underlying orders -- not the Court's authority to administer the sale. However, the pendency of the appeal and the emergency stay motion filed at Entry 3 in the Eleventh Circuit are relevant context. If the Eleventh Circuit grants a stay, confirmation may be mooted or deferred by operation of the appellate order. Claimant respectfully suggests that this Court may wish to defer ruling on confirmation pending the Eleventh Circuit's disposition of the stay motion, to avoid the possibility that confirmation is entered and subsequently vacated.

## 10. Payment Is Not Moot -- It Confirms the Sale Price

Seacoast argues that Claimant's concern about incomplete payment is moot because Wilson has now paid in full. Claimant accepts this representation. The full payment confirms the sale price at $160,000 -- 16% of appraised value. This fact supports Claimant's price-inadequacy argument. It does not support confirmation.

## 11. Relief Requested

For the foregoing reasons, Claimant respectfully requests that the Court: Decline to confirm the judicial sale of M/V Slow Ur Roll II at the sale price of $160,000 and order a resale with actual pre-sale marketing of no less than 30 days, consistent with the marketing obligations contemplated by the Exclusive Sales Agent Agreement (DE 86-1) and with the Court's duty to

obtain an adequate price under Wong Shing, 564 F.2d at 1188-89; In the alternative, defer confirmation pending the Eleventh Circuit's disposition of the emergency stay motion in Appeal No. 26-12270-G; In the further alternative, if the Court confirms the sale, condition confirmation on: (a) preservation of all proprietary installation architecture, trade-secret configuration data, and electronic evidence aboard the vessel for a period of 60 days to allow Claimant to seek appropriate discovery in related proceedings; and (b) retention of sale proceeds in the Court's registry pending resolution of the appeal; Grant Claimant leave to supplement DE 92 with the signed declaration of Bob Wilson promptly upon execution; Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Charles Jacob Stratmann*

Charles Jacob Stratmann

Pro Se Claimant and Party-in-Interest

545 NE 17th Avenue

Fort Lauderdale, Florida 33301

Telephone: (954) 873-8546

Email: jake@starboardyacht.com

Dated: July 8, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2026, I caused a true and correct copy of the foregoing Reply to be filed via the Court's CM/ECF system, which will provide electronic notice to all registered counsel of record, and served via U.S. Mail and email to:

Amanda Klopp, Esq. and Jenna M. Yoss, Esq.

9

Akerman LLP

777 S. Flagler Drive, Suite 1100 -- West Tower

West Palm Beach, FL 33401

amanda.klopp@akerman.com

jenna.yoss@akerman.com

National Liquidators

800 Old Griffin Road

Dania Beach, FL 33004

United States Marshal's Service

299 East Broward Boulevard, Room 101

Fort Lauderdale, FL 33301

*/s/ Charles Jacob Stratmann*

Charles Jacob Stratmann