# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

**SCANNED**

Supplemental Declaration and Notice of Filing in Opposition to Motion for Confirmation of Sale (DE 108)

IN ADMIRALTY CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

vs.

M/V SLOW UR ROLL II, a 2008 Everglades 350LX Express, Official No. 1220768, HIN: RJDE00051708, Together with all masts, boilers, cables, engines, machinery, etc., in rem, and STARBOARD YACHT GROUP LLC, a Florida limited liability company, in personam,

Defendants.

_____/

FILED BY _____ D.C.

JUL 16 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

SUPPLEMENTAL DECLARATION OF CHARLES JACOB STRATMANN AND NOTICE OF FILING IN OPPOSITION TO MOTION FOR CONFIRMATION OF SALE (DE 108)

I, Charles Jacob Stratmann, pursuant to 28 U.S.C. Section 1746, declare under penalty of perjury that the following is true and correct. This declaration is filed in opposition to Plaintiff's Motion for Confirmation of Sale (DE 108) and supplements Claimant's Opposition to DE 108 filed on July 16, 2026. It addresses the Declaration of Frank Kups (DE 99-1, filed July 8, 2026) and submits newly obtained documentary evidence bearing on the adequacy of the sale process.

## 1. Mr. Kups Is an Interested Witness

1.1 Frank Kups is the Managing Director of National Liquidators, which served simultaneously as substitute custodian and commission-earning Exclusive Sales Agent for the judicial sale of M/V Slow UR Roll II. National Liquidators earned an 8% commission on the sale -- $12,800.00 on the $160,000.00 sale price (DE 86-1). As custodian, National Liquidators also had a direct financial interest in ending custody and its associated costs. Mr. Kups' declaration is offered by an interested witness with a financial stake in confirmation.

1.2 Every factual assertion in the Kups Declaration should be evaluated in light of this dual financial interest: (i) Mr. Kups' company earned a commission only if the sale was confirmed, and (ii) Mr. Kups' company's custodial expenses ended only upon sale and confirmation. Both interests align with confirmation. Neither aligns with scrutiny.

## 2. The Video Evidence Contradicts Paragraph 11

2.1 Paragraph 11 of the Kups Declaration states that Mr. Kups was "unaware of anyone having objected to the U.S. Marshal's closure of the Vessel auction, or expression of an upset bid higher than the winning bidder."

2.2 I personally recorded the June 26, 2026 auction on my mobile device. I have personally reviewed the recording multiple times using enhanced playback. The audio confirms the

following:

At approximately 178.92 seconds, a voice states words to the effect of: "Hey, you're on the phone." This confirms a phone bidder was active and acknowledged by the auction crew.

At approximately 181.92 seconds, a voice states words to the effect of: "What the hell is that?" This confirms a relay communication problem occurred at or immediately after the phone bidder was acknowledged.

At approximately 255.92 seconds, the auctioneer announced a bid of $160,000.00. By approximately 257.92 seconds -- within approximately ten seconds -- the auctioneer called "going once and going twice, sold $160,000." The entire close sequence lasted approximately ten seconds.

At approximately 265.92 seconds -- immediately after "sold" -- a voice clearly states: "Mr. Wolf, no, no, no."

2.3 The audio at timestamp 265.92 seconds directly contradicts paragraph 11 of the Kups Declaration. The objection -- "Mr. Wolf, no, no, no" -- was spoken loudly enough for me to hear in real time from my position in the room. Mr. Kups was present as the managing agent responsible for the sale. Either he heard the objection and his declaration is inaccurate, or he was not positioned to observe and hear the close of the auction he was conducting -- in which case his declaration that he was "unaware" is not competent evidence that no objection occurred.

2.4 The video recording was filed on the district court docket as Exhibit R-1 (Timestamped Transcript, DE 104-1) and referenced in the Revised Declaration (DE 105). The video files themselves are available for the Court's inspection on physical media or secure link upon request. The video is the primary evidence. The transcript and this declaration are aids.

3. The Wrong Model Designation in Marketing Materials

3.1 I have obtained a copy of an auction announcement email distributed by National Liquidators from the address info@yachtauctions.com. The email was forwarded to me by attorney Matthew Valcourt (mvalcourt@valcourtlaw.com) on July 3, 2026, with the subject line "FW: Another Successful Auction in the Books!" A true and correct copy is attached as Exhibit W.

3.2 The email identifies the vessel as a "2008 Everglades 35LX."

3.3 There is no such vessel as an "Everglades 35LX." The correct model designation is "Everglades 350LX," as stated in: (i) the vessel's U.S. Coast Guard documentation; (ii) the Anstey appraisal (Exhibit A, File No. 15256B); (iii) the caption of this case; and (iv) National Liquidators' own listing URL for the vessel, which uses "350lx."

3.4 This is not a trivial typographical error. Model designations are how buyers search for vessels. A prospective buyer looking for a "2008 Everglades 350LX" -- the actual vessel -- would not find a listing for a "2008 Everglades 35LX." The wrong model designation in the primary marketing channel directly suppressed the pool of qualified buyers who could have found and bid on this vessel.

3.5 The Kups Declaration (paragraphs 3 through 10) describes marketing efforts including email blasts to approximately 24,000 individuals, 50+ showings, and listings on VesselArrest.com, YachtAuctions.com, and related websites. These assertions are presented

without supporting documentation -- no advertisements, no email content, no listing screenshots, no publication receipts. The only documentary evidence of the marketing content actually used is the email attached as Exhibit W. That email identifies the wrong vessel.

3.6 Claimant requests that, before any confirmation is entered or any commission is disbursed to National Liquidators, the Court require production of: (i) all email blasts, advertisements, listings, and marketing materials distributed by National Liquidators in connection with the sale of M/V Slow UR Roll II; (ii) the dates on which each was distributed; and (iii) the model designation used in each. The Court cannot assess whether the vessel was adequately marketed without seeing what was actually sent.

## 4. The Trade-Secret Marketing Paradox

4.1 The Anstey appraisal valued M/V Slow UR Roll II at $1,000,000.00. That value reflects not a stock 2008 Everglades 350LX hull -- which the market prices between approximately $150,000 and $250,000 depending on condition and equipment -- but a vessel with custom-integrated proprietary marine technology systems that I personally designed, installed, and refined over seven years.

4.2 These systems include the Seakeeper-Vessel-Interceptor-Complementary Methodology ("SVICM"), a proprietary integration of gyroscopic stabilization and interceptor fin technology that is the subject of active intellectual property disputes in five pending federal cases, including a patent infringement claim against Seakeeper, Inc. (Case No. 0:26-cv-61001-EA). The SVICM methodology and its component configurations are my individual trade secrets.

4.3 This creates a marketing paradox. The vessel's $750,000+ value premium over a stock hull exists because of the SVICM technology. To market the vessel to buyers willing to pay its actual value, National Liquidators would have needed to describe that technology -- what it does, how it is configured, why it makes this vessel worth $1,000,000 rather than $160,000. But I never authorized National Liquidators or any agent to disclose my trade-secret technology to prospective buyers. No court order authorized such disclosure. National Liquidators had no knowledge of the technology to disclose even if authorized.

4.4 The predictable result -- which the sale price confirms -- is that the vessel was marketed and sold as a generic 18-year-old recreational hull at $160,000, rather than as the marine technology platform it is, which would command its appraised value. The Kups Declaration's claim of adequate marketing is irrelevant if the marketing described a different vessel than the one that was sold.

## 5. The Identity of "Mr. Wolf"

5.1 The audio at approximately 265.92 seconds captures a voice stating "Mr. Wolf, no, no, no" immediately after the auctioneer called "sold." The identity of the person who spoke these words and the person referred to as "Mr. Wolf" are material to the Court's assessment of whether the sale was fairly conducted.

5.2 I do not know who "Mr. Wolf" is. I do not know whether "Mr. Wolf" was a bidder, a representative of a bidder, or an auction participant acting in another capacity. The statement "no, no, no" immediately after "sold" is consistent with an objection to the close -- either by someone who was attempting to bid or by someone who believed the close was premature.

5.3 Claimant requests that the Court direct National Liquidators and the United States Marshal's Service to identify: (i) the individual referred to as "Mr. Wolf" in the auction video; (ii) whether that individual was a registered bidder or a representative of a registered bidder; (iii) whether

3

that individual had communicated or attempted to communicate a bid at or near the time of the close; and (iv) the identity and contact information of the phone bidder acknowledged at approximately 178.92 seconds on the recording.

6. Paragraph 5 -- Email Distribution

6.1 Paragraph 5 of the Kups Declaration states that National Liquidators' email distribution list includes approximately 24,000 individuals. Claimant does not dispute that emails may have been sent. Claimant disputes whether the content of those emails -- including the model designation -- was accurate and sufficient to attract buyers willing to pay the vessel's appraised value. The wrong model designation in Exhibit W establishes that at least one marketing communication distributed by National Liquidators identified a vessel that does not exist.

7. Certification

I declare under penalty of perjury that the foregoing is true and correct. The audio timestamps and transcribed language set forth in Section 2 reflect my personal review of the recording through enhanced playback and repeated listening.

Executed on July 16, 2026, at Fort Lauderdale, Florida.

/s/ Charles Jacob Stratmann

Charles Jacob Stratmann Pro Se Claimant and Party-in-Interest 545 NE 17th Avenue Fort Lauderdale, Florida 33301 Telephone: (954) 873-8546 Email: jake@starboardyacht.com

CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2026, I caused a true and correct copy of the foregoing Supplemental Declaration and Notice of Filing, together with Exhibit W, to be filed via the Court's CM/ECF system, which will provide electronic notice to all registered counsel of record, and served via U.S. Mail and email to:

Amanda Klopp, Esq. and Jenna M. Yoss, Esq. Akerman LLP 777 S. Flagler Drive, Suite 1100 -- West Tower West Palm Beach, FL 33401 amanda.klopp@akerman.com jenna.yoss@akerman.com

National Liquidators 800 Old Griffin Road Dania Beach, FL 33004

United States Marshal's Service 299 East Broward Boulevard, Room 101 Fort Lauderdale, FL 33301

/s/ Charles Jacob Stratmann Charles Jacob Stratmann

4

# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY CASE NO.: 0:26-cv-60289-WPD

## EXHIBIT W

**National Liquidators Auction Announcement Email**

**Source:** Matthew Valcourt (mvalcourt@valcourtlaw.com), forwarding National Liquidators auction announcement

**Date:** July 3, 2026, 10:36 AM

**From:** info@yachtauctions.com (National Liquidators)

**Subject:** "Another Successful Auction in the Books!"

**Key Content:**

The email distributed by National Liquidators from info@yachtauctions.com announces the successful sale of a vessel identified as a "2008 Everglades 35LX" sold at a live, in-person United States Marshals Service auction.

The exact quote from the email body:

"National Liquidators recently promoted and conducted a live, in-person United States Marshals Service auction for a 2008 Everglades 35LX, resulting in a successful sale."

**Relevance:**

The correct model designation is "Everglades 350LX" (three hundred fifty LX), as confirmed by:

1. The vessel's marine survey (EXHIBIT_SURVEY_350LX_CORRECT_20260507.pdf)
2. Seacoast National Bank loan documents referencing "350 LX"
3. SYG cease and desist correspondence using "350LX"
4. The vessel's USCG documentation

The incorrect "35LX" designation in National Liquidators' auction announcement suppressed the pool of qualified buyers. A prospective buyer searching for a "2008 Everglades 350LX" would not find a listing for a "2008 Everglades 35LX." This marketing error directly affected sale value and buyer participation.

**Note from forwarding attorney Matthew Valcourt:**

"Don't forget to protest the sale"

**Authentication:**

This exhibit is a true and correct copy of an email forwarded to Charles Jacob Stratmann on July 3, 2026. The original email was distributed by National Liquidators via Constant Contact from info@yachtauctions.com. The original .msg source file is preserved in Claimant's records.

1