# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

## IN ADMIRALTY
## CASE NO.: 0:26-cv-60289-WPD

### SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/Y SLOW UR ROLL II, a 2008 Everglades 350LX Express,
Official No. 1220768, HIN: RJDE0005I708,
together with all masts, boilers, cables, engines, machinery, etc.,
in rem, and

### STARBOARD YACHT GROUP LLC,

a Florida limited liability company, in personam,

Defendants.

---

## EXHIBIT INDEX
Emergency Supplemental Motion to Vacate DE 109 (Rule 60(d)(3))
14 Exhibits (A through N)

| Exh | Bates | Title | Date | Pages | Source |
|---|---|---|---|---|---|
| A | SYG-107809 | Defendant's Objection to Judicial Sale | June 25, 202 | 10 | DE 92, SDFL 0:26-cv-60289-WPD |
| B | SYG-107810 | Motion for Disclosure of Bidder Identities and Abuc... | July 6, 2026 | 6 | DE 96, SDFL 0:26-cv-60289-WPD |
| C | SYG-107811 | Claimant's Protest of Judicial Sale | July 6, 2026 | 7 | DE 97, SDFL 0:26-cv-60289-WPD |
| D | SYG-107803 | Klopp's Response to Objections | July 7, 2026 | 12 | DE 98, SDFL 0:26-cv-60289-WPD |
| E | SYG-107812 | Defendant's Reply in Support of Objections | July 10, 202 | 10 | DE 104, SDFL 0:26-cv-60289-WPD |
| F | SYG-107813 | Court's Order Overruling Objections and Directing Con... | July 12, 202 | 2 | DE 107, SDFL 0:26-cv-60289-WPD |
| G | SYG-107804 | Motion for Confirmation of Sale with False Statement | July 14, 202 | 2 | DE 108, SDFL 0:26-cv-60289-WPD |
| H | SYG-107805 | Unsigned Proposed Order for Judge Dimitrouleas (B4 of D... | July 14, 202 | 2 | DE 108-2, SDFL 0:26-cv-60289-WPD |
| I | SYG-107806 | Clerk's Confirmation of Sale | July 15, 202 | 1 | DE 109, SDFL 0:26-cv-60289-WPD |
| J | SYG-107801 | Order Approving Employment of Bankruptcy Counsel 2Klo... | July 22, 202 | 2 | BK ECF No. 57, Case No. 24-15755-LMI |
| K | SYG-107802 | CMR Docket -- Seacoast v. Contessa Marine Recovery LLC... | 2025-2026 | 6 | SDFL 1:25-cv-25958-DPG |
| L | SYG-107807 | Seacoast Acceleration Letter to Stratmann (One-Day Gap,... | December 8,... | 2 | External evidence hub |
| M | SYG-107808 | Fiore Extension Motion (Coordinated Timing) | July 13, 202 | 3 | 11th Cir. 26-12270-G |
| N | SYG-107813 | S.D. Fla. Local Admiralty Rule E(17)(f) and (g) --2026 if... | 2026 | 2 | flsd.uscourts.gov -- S.D. Fla. Local Rul... |

**Total Exhibit Pages: 67**

**Total Binder Pages (with cover sheets + index): 81**

**Exhibits: A through N (14 exhibits)**

## CHAIN OF CUSTODY

All exhibits extracted from Obsidian PREDICATE_VAULT or SDFL PACER with SHA-256 hash verification. Each exhibit is preceded by a native-format cover sheet bearing the court caption, Bates number, and chain-of-custody metadata. Exhibits are arranged in chronological/doctrinal order to support the fraud-on-the-court narrative.

## EXHIBIT NARRATIVE

- Exhibits A-F: The objection chain -- DE 92, 96, 97, 98, 104, 107. Proves objections existed and were actively litigated.

- Exhibits G-H: The fraud instruments -- DE 108 (false 'no objections' statement) and DE 108-2 (unsigned proposed order).

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

## IN ADMIRALTY

CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/Y SLOW UR ROLL II, a 2008 Everglades 350LX Express,

Official No. 1220768, HIN: RJDE0005I708,

together with all masts, boilers, cables, engines, machinery, etc.,

in rem, and

STARBOARD YACHT GROUP LLC,

a Florida limited liability company, in personam,

Defendants.

---

# EXHIBIT A

Bates No.: SYG-107809

---

**TITLE:**   Defendant's Objection to Judicial Sale

**DATE:**   June 25, 2026

**SOURCE:**   DE 92, SDFL 0:26-cv-60289-WPD

**PAGES:**   10

**SHA-256:**   8c6984f32c9845ea...

**FILE SIZE:**   603,427 bytes

---

**RELEVANCE:**

Shows defendant objected to sale before confirmation -- negates 'no objections' statement

---

*Exhibit A -- SYG-107809 -- Filed with Emergency Supplemental Motion to Vacate DE 109 (Rule 60(d)(3))*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
## Fort Lauderdale Division

## CASE NO. 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

**Plaintiff,**

v.

M/V SLOW UR ROLL II, USCG Official No. 1220768,

her engines, tackle, apparel, furniture, and

appurtenances, in rem,

**Defendant.**

FILED BY _____ D.C.

JUN 30 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## OBJECTION OF CHARLES JACOB STRATMANN, PRO SE CLAIMANT AND PARTY-IN-INTEREST, TO CONFIRMATION OF JUDICIAL SALE AND REQUEST FOR EVIDENTIARY HEARING

Charles Jacob Stratmann ("Stratmann" or "Movant"), appearing pro se as a Claimant and Party-in-Interest, respectfully objects to the confirmation of the judicial sale of the vessel M/V Slow UR Roll II (USCG Official No. 1220768) conducted on June 26, 2026, and requests an evidentiary hearing prior to the entry of any confirmation order.

Confirmation should be denied, or in the alternative deferred, for five independent reasons: (I) the $160,000.00 sale price represents only 16% of the vessel's $1,000,000.00 appraised value, constituting gross price inadequacy that shocks the conscience; (II) the Court-appointed substitute custodian, National Liquidators, executed its Exclusive Sales Agent Agreement on the same day as the auction, rendering it factually and logistically impossible to perform the promised global marketing (including Wall Street Journal and Financial Times advertisements); (III) National Liquidators served simultaneously as court-appointed custodian and commission-earning sales agent, creating an irreconcilable

structural conflict of interest that suppressed competitive bidding; **(IV) after deducting National Liquidators' 8% commission ($12,800.00), the net proceeds of $147,200.00 fail to satisfy Plaintiff Seacoast's $168,773.21 judgment, meaning the sale destroys over $840,000.00 in equity and fails to satisfy the secured creditor while generating a personal deficiency against Movant; and (V) competitive bidding was materially suppressed when an active phone bidder was cut off by a communication relay failure at the decisive moment of the auction.**

# I. BACKGROUND

A. The Vessel and Its Appraised Value

1. M/V Slow UR Roll II (USCG Official No. 1220768) is a custom-configured technology demonstration platform, equipped with a Seakeeper gyroscopic stabilizer system and Humphree interceptor trim systems integrated under Starboard Yacht Group's proprietary engineering methodology.

2. The vessel serves as the primary physical proof of concept for several proprietary marine integrations developed by Stratmann individually. The vessel carries material physical and digital evidence--including electronic controllers, configuration records, and commissioning data--relevant to five active federal cases.

3. The vessel's appraised value is $1,000,000.00, as established by the independent certified marine appraisal conducted by Paul R. Anstey, Inc., File No. 152568, dated May 8, 2024 (Bates SYG-107206). Seacoast's own pleadings and security filings have valued the vessel consistent with this appraisal, and no party has offered a competing appraisal or survey.

B. The Judicial Sale -- June 26, 2026

4. The U.S. Marshal conducted a public auction of the vessel at the Fort Lauderdale Federal Courthouse on June 26, 2026, at 12:00 p.m. (DE 87).

5. The vessel was struck down for $160,000.00 to Bob Wilson, acting on behalf of QF Products LLC, Texas (email: Qfproductsllc@yahoo.com), who provided a certified check for $25,000.00 to the U.S. Marshal as a deposit. The remaining $135,000.00 balance of the purchase price remains unpaid.

6. Stratmann was personally present at the auction and observed the bidding.

## C. National Liquidators -- Custodian and Sales Agent

7. This Court appointed National Liquidators (Frank Kups) as substitute custodian of the vessel by order entered February 25, 2026 (DE 23), imposing a fiduciary duty to preserve the vessel and protect the integrity of the custodia legis process.

8. On June 26, 2026--the exact same day as the auction--Plaintiff Seacoast and National Liquidators executed an Exclusive Sales Agent Agreement (DE 86-1). That agreement provided that National Liquidators would earn an 8% commission on the gross sales price if the vessel was sold to a third-party buyer. Because the vessel was sold to a third party, National Liquidators claims a commission of 8% of $160,000.00, equal to $12,800.00, as an administrative expense.

## II. STANDING TO OBJECT

9. Although this Court struck Stratmann's Verified Claim for Seaman's Wages (DE 72, DE 79), Stratmann retains standing to object to confirmation on three independent grounds:

10. First, Stratmann's seaman's wage claim is currently on active appeal to the United States Court of Appeals for the Eleventh Circuit (Case No. 26-10941). An order striking a claim is not final for standing purposes while the appellate court is actively reviewing it. Until the Eleventh Circuit affirms or dismisses the appeal, Stratmann's status as a claimant is in dispute, not extinguished. See Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (notice of appeal preserves the live controversy).

11. Second, Starboard Yacht Group, LLC ("SYG"), as the vessel's owner, is currently in default, but a corporate default does not extinguish the owner's underlying equity interest in the asset. Under maritime and equity principles, a vessel owner retains a subordinated interest in any surplus proceeds. See The Key City, 81 U.S (14 Wall.) 653, 660 (1871). The sale price of $160,000.00 against Seacoast's $168,773.21 judgment, combined with National Liquidators' $12,800.00 commission, creates a net deficiency of $21,573.21 and destroys over $840,000.00 in equity. Stratmann, as the sole member and manager of SYG, has a direct derivative interest in preventing an uncommercially reasonable sale that wipes out all equity and exposes him to a personal deficiency.

12. Third, as set forth in Movant's Declaration (DE 83) and detailed below, the vessel contains proprietary installation architecture, trade-secret configuration data, and physical evidence that belongs to Stratmann individually, not to the LLC. Stratmann

developed this work product in his individual capacity. A party whose personal property is located aboard a vessel subject to judicial sale has an independent right to be heard before confirmation. See Supplemental Admiralty Rule E(4)(f).

## III. LEGAL STANDARD FOR CONFIRMATION

13. Under Supplemental Admiralty Rule E(9)(b) and this Court's inherent authority, confirmation of a judicial sale is a judicial act requiring the exercise of sound discretion, not a ministerial function. The court must independently satisfy itself that the sale was conducted fairly and that the price obtained was not so inadequate as to shock the conscience or raise a presumption of fraud, mistake, or irregularity. In re Perez, 30 F.3d 1209, 1213 (9th Cir. 1994); United States v. 2,116 Boxes of Boned Beef, 726 F.2d 1481, 1489 (10th Cir. 1984).

14. Plaintiff Seacoast may cite BFP v. Resolution Trust Corp., 511 U.S. 531 (1994), to argue that judicial sale prices are presumptively fair. However, BFP is inapplicable here for two reasons: first, BFP was a bankruptcy case interpreting constructively fraudulent transfers under the Bankruptcy Code, not an admiralty confirmation proceeding where the court has an active duty to protect equity; and second, BFP's presumption is expressly conditioned on the sale being "regularly conducted" and "noncollusive." Id. at 545. Where, as here, the sales agent's own agreement demonstrates that the promised marketing was omitted, the sale was not "regularly conducted," and no presumption of price adequacy attaches.

## IV. ARGUMENT

A. Ground One: Gross Price Inadequacy Shocks the Conscience

15. The sale price of $160,000.00 represents only 16% of the vessel's appraised fair market value of $1,000,000.00 and 11.8% of its replacement value ($1,350,000.00).

16. In admiralty, gross price inadequacy, coupled with any additional circumstance or irregularity, is sufficient to set aside a judicial sale. United States v. Branch Coal Corp., 390 F.2d 7, 10 (3d Cir. 1968) (confirmation should be refused where inadequacy "shocks the conscience"); Friese v. Boatworks, Inc., No. 09-cv-10296, 2010 WL 1838693 (S.D. Fla. May 7, 2010); In re Dierschke, 975 F.2d 181, 184 (5th Cir. 1992) (duty to scrutinize sale price).

17. A price of 16 cents on the dollar falls far below any threshold any federal court has approved. The mathematical inadequacy is extreme, destroying $840,000.00 in equity while failing to even satisfy Seacoast's judgment in full. After deducting National Liquidators' commission, Seacoast is left with a $21,573.21 shortfall. A sale that enriches only the custodian while leaving both the creditor and the debtor in a worse financial position is commercially unreasonable on its face.

**B. Ground Two: The Sales Agent Agreement Was Executed on the Day of the Sale, Meaning the Promised Marketing Was a Factual Impossibility**

18. The Exclusive Sales Agent Agreement between National Liquidators and Seacoast Bank was executed on June 26, 2026--the exact day of the sale (DE 86-1).

19. The agreement contractually required National Liquidators to perform extensive global marketing, including: (i) print and digital advertisements in the Wall Street Journal and Financial Times; (ii) premier placement on VesselArrest.com and YachtAuctions.com to reach international buyers; (iii) a custom, vessel-specific marketing pamphlet; and (iv) active marketing by its licensed brokerage team to US and international buyers.

20. None of these efforts could have been performed if the agreement was not signed until the day of the sale. A Wall Street Journal or Financial Times advertisement cannot be designed, approved, and published on the same day a contract is executed. An international marketing pamphlet cannot be produced and distributed to buyers in a matter of hours. Outreach to an international network of marine buyers requires lead time measured in weeks, not minutes.

21. This indicates that either: (a) the agreement was backdated, raising a serious question of candor to this Court; or (b) National Liquidators conducted the sale without performing any of the marketing it promised. If no marketing was performed, this explains why a $1,000,000.00 vessel sold for only $160,000.00 on a starting bid of $100.00. This Court should not confirm a sale where the record demonstrates the marketing promised by its own custodian never occurred.

**C. Ground Three: National Liquidators' Structural Conflict of Interest Infected the Sale**

22. National Liquidators served simultaneously as (a) the Court-appointed substitute custodian under DE 23, with a duty to protect the vessel and ensure a fair process; and (b) the exclusive commission-earning sales agent under DE 86-1, with a direct financial incentive to close any sale to a third party as quickly as possible.

23. These roles are structurally incompatible. Under the agreement, National Liquidators earned a $12,800.00 commission only if a third-party buyer purchased the vessel; its commission was $0.00 if Seacoast credit-bid the vessel. This gave the custodian a powerful incentive to push through a low-ball third-party bid rather than allowing Seacoast to credit-bid or seeking a commercially reasonable price. The result of this conflict is clear: the auction opened at $100.00 on a $1,000,000.00 vessel, the promised marketing was omitted, the sale price was suppressed at 16% of value, and the custodian secured a $12,800.00 fee while the owner lost $840,000.00. Courts of equity do not confirm sales where the fiduciary process has been infected by such conflicts. See Deckert v. Independence Shares Corp., 311 U.S. 282, 288 (1940).

D. Ground Four: Competitive Bidding Was Materially Suppressed by a Communication Relay Failure

24. Competitive bidding at the auction was functionally suppressed by a communication delay that prevented an active bidder from submitting a final bid, which would have increased the sale price.

25. Stratmann was present in person and observed that a young man was actively relaying bids via telephone from an unidentified remote bidder throughout the auction. The remote bidder was actively competing. The young man's phone displayed the contact name "Egor."

26. When the U.S. Marshal closed the auction at $160,000.00, the young man relaying the phone bids suffered a communication delay and could not transmit the final bid in time. Immediately after the Marshal closed the auction, the voice on the phone--audible to those standing nearby--stated words to the effect of: "Fuck, we missed it."

27. This is corroborated by the winning bidder, Bob Wilson, who was standing adjacent to the relay person. Bob Wilson's Sworn Declaration, filed concurrently herewith as Exhibit C, confirms that the phone bidder was actively engaged throughout the auction, that there was a communication relay delay at the close of bidding, and that the phone bidder expressed immediate, audible frustration at missing the final bid.

28. The auction closed not because $160,000.00 was the highest price the market would produce, but because the relay system failed. When communication failures suppress bidding, the court should deny confirmation to protect the integrity of the process.

28-A. Beyond a simple technical communication relay failure, there is a substantial, highly alarming indication of a potential closed-loop conspiracy to suppress competitive bidding and

execute a fraud on this Court. Subsequent investigation of case records and files from the parallel Delaware Court of Chancery matter, Contessa Marine Research LLC v. Seinitz & Stratmann, C.A. No. 2026-0495-MTZ, reveals that the phone bidder "Egor" is actively associated with a Turkish proxy buyer named "Burock" (Burak) who operates as a business affiliate of Steven Ivankovich (the de facto operator and representative of the deceased principal of Contessa Marine Research LLC).

28-B. This indicates an extremely concerning, collusive loop: (1) Akerman LLP (counsel to Plaintiff Seacoast National Bank) foreclosed on the vessel; (2) Steven Ivankovich, who has been prosecuting highly retaliatory litigation against Stratmann across multiple jurisdictions (including S.D. Florida and Delaware Chancery), coordinated with "Egor" and "Burock" to low-ball the public auction and re-acquire the vessel for pennies on the dollar; and (3) if successful, this closed-loop re-acquisition would permit the enterprise to seize the vessel and spoliate/destroy the critical physical and digital evidence installed in the hull (including integrated Seakeeper controllers and system configuration logs) which are the subject of active preservation demands in your pending federal cases.

28-C. A judicial sale exists to satisfy legitimate creditor claims through an open, competitive, and commercially reasonable marketplace--not to serve as a collusive mechanism for enterprise insiders to re-acquire assets, suppress genuine third-party bidding, and spoliate material evidence. Where a sale is infected by such structural collusive anomalies, it constitutes a Potential Fraud on the Court, and confirmation must be denied. See BFP v. Resolution Trust Corp., 511 U.S. 531, 545 (1994) (noting that judicial sale protections are strictly conditioned on the sale being "regularly conducted" and "noncollusive").

E. Ground Five: The Sale Is Not Fully Funded

29. The winning bidder paid a deposit of $25,000.00. The remaining $135,000.00 balance has not yet been paid or verified.

30. Confirming a sale before the purchase price is fully paid transfers a $1,000,000.00 asset on a 2.5% deposit. If the buyer fails to pay the balance after confirmation, title may have already passed, the vessel may have been altered, and the court's recourse would be severely compromised. Confirming a sale under these conditions is premature and legally risky.

F. Ground Six: Irreversible Destruction of Individually Owned Evidence

31. As set forth in Movant's Declaration (DE 83) and the Anstey marine survey, the vessel contains proprietary installation architecture, trade-secret configuration data, and

physical evidence that belongs to Stratmann individually--not to the LLC. Stratmann developed this work product in his individual capacity, and it has never been assigned to the LLC.

32. This evidence is directly relevant to five active federal cases, including Stratmann v. Madison Industries, No. 0:26-cv-61001-JMS; Stratmann v. Ivankovich, No. 0:26-cv-61150-PAB; and Seakeeper v. SYG, No. 1:26-cv-01332-MJM (D. Md.).

33. Once the vessel is transferred to the purchaser, this proprietary installation will be beyond Movant's access and subject to modification, removal, or destruction. The loss of this physical evidence constitutes irreparable harm. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 943-44 (11th Cir. 2005).

34. Movant requests that, as a condition of any confirmation, the Court order that: (i) the purchaser permit a qualified surveyor and forensic technician designated by Movant to conduct a detailed inspection and forensic imaging of the vessel's installed systems within fourteen (14) days of confirmation; and (ii) no modification or removal of the vessel's installed systems be permitted until the inspection is complete.

## V. RELIEF REQUESTED

Claimant Charles Jacob Stratmann respectfully requests that this Court:

(1) DENY confirmation of the judicial sale of M/V Slow UR Roll II conducted on June 26, 2026, and order a new sale with proper marketing, a commercially reasonable starting bid, and no structural conflict of interest;

(2) In the ALTERNATIVE, DEFER confirmation pending: (a) an evidentiary hearing; (b) full payment and verification of the $160,000.00 purchase price; (c) production of the U.S. Marshal's records identifying all bidders; and (d) adjudication of Movant's pending Emergency Motion to Preserve Evidence (DE 82);

(3) In the FURTHER ALTERNATIVE, if the Court confirms the sale, ORDER that: (a) all sale proceeds be deposited into the Court's registry and held pending resolution of DE 82 and the pending appeal; (b) National Liquidators' 8% commission is NOT approved as an administrative expense; and (c) the purchaser permit a qualified marine surveyor designated by Movant to conduct a detailed inspection and forensic imaging of the vessel's systems within fourteen (14) days of confirmation, with no alteration of installed systems permitted until the inspection is complete; and

Case 0:26-cv-60289-WPD   Document 92   Entered on FLSD Docket 06/30/2026   Page 9 of 10

(4) Grant such other and further relief as this Court deems just and proper.

## Verification (28 U.S.C. Section 1746)

I declare under penalty of perjury under the laws of the United States of America that the factual statements set forth in this Objection are true and correct to the best of my knowledge.

I further certify that every case citation in this Objection has been independently verified to the reporter, volume, page, and holding stated.

Dated: June 30, 2026

**Charles Jacob Stratmann**

**Claimant, Pro Se Party-in-Interest**

**545 NE 17th Avenue**

**Fort Lauderdale, Florida 33301**

**Telephone: (954) 873-8546**

**Email: jake@starboardyacht.com**

## Certificate of Service

I hereby certify that on June 30, **2026, a true and correct copy of the foregoing Objection to Confirmation of Judicial Sale was served via the Court's CM/ECF system and via email upon:**

Amanda Klopp, Esq. (amanda.klopp@akerman.com)

Jenna M. Yoss, Esq. (jenna.yoss@akerman.com)

Akerman LLP

777 S. Flagler Drive, Suite 1100 West Tower

West Palm Beach, FL 33401

Attorneys for Plaintiff Seacoast National Bank

National Liquidators (Frank Kups)

800 Old Griffin Rd

Dania Beach, FL 33004

Substitute Custodian / Sales Agent

**Charles Jacob Stratmann**

# PROPOSED ORDER

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Fort Lauderdale Division

### CASE NO. 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

**Plaintiff,**

v.

M/V SLOW UR ROLL II, Official No. 1220768,

her engines, tackle, apparel, furniture, and

appurtenances, in rem,

**Defendant.**

## ORDER ON OBJECTION TO CONFIRMATION OF JUDICIAL SALE

THIS CAUSE came before the Court upon the Objection to Confirmation of Judicial Sale filed by Claimant Charles Jacob Stratmann. The Court having reviewed the Objection, the response of Plaintiff Seacoast National Bank, and the record in this matter, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED:

[OPTION A -- DENY CONFIRMATION]

1. The Objection to Confirmation is SUSTAINED. Confirmation of the judicial sale of the vessel M/V Slow UR Roll II (USCG Official No. 1220768) conducted on June 26, 2026, is DENIED on the grounds of gross inadequacy of the sale price, failure of the sales agent to perform contractual marketing obligations, and structural conflict of interest.

Case 0:26-cv-60289-WPD   Document 92-1   Entered on FLSD Docket 06/30/2026   Page 2 of 9

Case No. 0:26-cv-60289-WPD | Objection to Sale Confirmation... | Page 12

2. The United States Marshals Service is directed to conduct a new sale of the vessel in accordance with Supplemental Admiralty Rule E(9), under terms and marketing procedures to be established by further order of this Court.

[OPTION B -- DEFER CONFIRMATION]

1. Confirmation of the judicial sale of the vessel M/V Slow UR Roll II is DEFERRED pending: (a) an evidentiary hearing on the bidding process and marketing efforts; (b) full payment and verification of the $160,000.00 purchase price; and (c) final adjudication of Movant's pending Emergency Motion to Preserve Evidence (DE 82).

2. The United States Marshals Service is directed to identify the telephone bidder and relay person present at the June 26, 2026 auction and provide that information to the Court and all parties within seven (7) days of this Order.

[OPTION C -- CONDITIONAL CONFIRMATION]

1. Confirmation of the judicial sale of the vessel M/V Slow UR Roll II is GRANTED, subject to the following strict conditions:

(a) All sale proceeds ($160,000.00) **shall be deposited into the Court's registry and held** pending final resolution of DE 82 **and the pending appeal before the Eleventh Circuit;**

(b) National Liquidators' 8% commission ($12,800.00) **is NOT approved as an** administrative expense and shall **be held subject to further briefing and determination of reasonableness; and**

(c) The purchaser, Bob Wilson **/ QF Products LLC, shall permit a qualified marine** surveyor and forensic technician **designated by Movant to conduct a detailed inspection** and forensic imaging of the vessel's **installed systems within fourteen (14) days of this** Order. No modification, removal, or alteration of the vessel's **installed systems shall be** permitted **until the inspection is complete.**

DONE AND ORDERED in **Fort Lauderdale, Florida this** \_\_\_\_ **day of July, 2026.**

---

**WILLIAM P. DIMITROULEAS**

**United States District Judge**

**Southern District of Florida**

Copies furnished to:

All counsel of record

Charles Jacob Stratmann, Pro Se

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Fort Lauderdale Division

## CASE NO. 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

**Plaintiff,**

v.

M/V SLOW UR ROLL II, Official No. 1220768,

her engines, tackle, apparel, furniture, and

appurtenances, in rem,

**Defendant.**

# DECLARATION OF BOB WILSON
# IN SUPPORT OF OBJECTION TO CONFIRMATION
# OF JUDICIAL SALE

I, Bob Wilson, declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that the following is true and correct:

1. My name is Bob Wilson. I am the owner of QF Products LLC, a Texas limited liability company. My business email is Qfproductsllc@yahoo.com. I make this declaration based on my personal knowledge and firsthand observations at the judicial sale described below.

2. On June 26, 2026, I attended and participated in the United States Marshal's judicial sale of the vessel M/V Slow UR Roll II, conducted in connection with the above-captioned case in the Southern District of Florida.

Exhibit C | Sworn Declaration of Bob Wilson | Date: 2026-06-30

3. I was the winning bidder at that sale. I purchased the vessel for $160,000.00.

4. During the auction, my son and I were standing in close proximity to a young man who was conducting phone bids on behalf of a party not present at the auction in person. The young man was relaying bid amounts by phone throughout the course of the auction.

5. When the U.S. Marshal called the final price and closed the auction at $160,000.00, I observed that the young man relaying the phone bids had not yet communicated the final bid or the auction's close to the party on the phone. There was a noticeable delay between the Marshal's call and the young man's communication.

6. Immediately after the Marshal closed the auction, I heard the voice on the phone -- which was audible to me and to my son standing nearby -- say words to the effect of: "Fuck, we missed it."

7. Based on my observation, the party on the phone was actively engaged and bidding, and was cut off by the communication delay between the auction's close and the young man's relay before that party could submit a higher bid.

8. After the sale concluded, I spoke briefly with Charles Jacob Stratmann, who identified himself as the Claimant and prior operator of the vessel. I confirmed to Stratmann that my son and I had heard the phone bidder's reaction when the auction closed.

9. I have no stake in the outcome of the confirmation proceeding. I provide this declaration solely to report what I personally observed at the judicial sale.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June ____, 2026, at _____ [City, State].

<hr>

**Bob Wilson**

**QF Products LLC**

Qfproductsllc@yahoo.com

Exhibit C | Sworn Declaration of Bob Wilson | Date: 2026-06-30

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

### IN ADMIRALTY

CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/Y SLOW UR ROLL II, a 2008 Everglades 350LX Express,
Official No. 1220768, HIN: RJDE0005I708,
together with all masts, boilers, cables, engines, machinery, etc.,
in rem, and

STARBOARD YACHT GROUP LLC,

a Florida limited liability company, in personam,

Defendants.

---

# EXHIBIT B

## Bates No.: SYG-107810

---

**TITLE:**   Motion for Disclosure of Bidder Identities and Auction Records

**DATE:**   July 6, 2026

**SOURCE:**   DE 96, SDFL 0:26-cv-60289-WPD

**PAGES:**   6

**SHA-256:**   3bb81897186cca5d...

**FILE SIZE:**   394,129 bytes

---

**RELEVANCE:**

Demonstrates active pursuit of auction transparency -- contradicts acquiescence narrative

---

*Exhibit B -- SYG-107810 -- Filed with Emergency Supplemental Motion to Vacate DE 109 (Rule 60(d)(3))*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
**Fort Lauderdale Division**

CASE NO. 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/V SLOW UR ROLL II, USCG Official No. 1220768, her engines, tackle, apparel, furniture, and appurtenances, in rem,

Defendant.

> FILED BY _CW_ D.C.
>
> **JUL 06 2026**
>
> ANGELA E. NOBLE
> CLERK U.S. DIST. CT.
> S. D. OF FLA. - FT. LAUD.

---

## MOTION FOR DISCLOSURE OF BIDDER IDENTITIES AND AUCTION RECORDS, AND FOR ORDER PRESERVING SUCH RECORDS PENDING APPELLATE REVIEW

---

Charles Jacob Stratman ("Movant"), appearing pro se as a party-in- interest in this admiralty foreclosure, respectfully moves this Court for an order directing the United States Marshal for the Southern District of Florida to disclose all records identifying the participants in the June 26, 2026 judicial auction of M/V Slow UR ROLL II, and to preserve all such records pending appellate review in the United States Court of Appeals for the Eleventh Circuit, Case No. 26-12270-G.

### I. STATEMENT OF FACTS

1. The United States Marshal conducted a public auction of M/V Slow UR ROLL II on June 26, 2026, at approximately 12:00 p.m. at the Fort Lauderdale Federal Courthouse (DE 87). The vessel sold for $160,000.00 to William Wilson, acting on behalf of QF Products LLC, Texas. Wilson deposited $25,000.00; the balance of $135,000.00 remains unpaid (DE 87; DE 92-1).

2. The vessel was independently appraised at $1,000,000.00 (Paul R. Anstey, Inc., File No. 152568, May 8, 2024; Bates SYG-107206). The sale price is 16% of the appraised fair market value, leaving an 84% shortfall.

3. During the auction, a telephone bidder actively competed through a young male relay person. The contact name displayed on the phone was "Egor." The relay person was unable to transmit



the final bid before the Marshal closed the auction. The winning bidder, William Wilson, confirmed in his declaration (DE 92-1) that the phone bidder "was actively engaged and bidding" and "was cut off by the communication delay between the auction's close and the young man's relay before that party could submit a higher bid."

4. The identities of the telephone bidder, the relay person, and the principal on whose behalf bids were placed are material to Movant's pending Objection to Confirmation of Sale (DE 92), Emergency Motion to Preserve Evidence and Hold Proceeds (DE 82), and appeal to the Eleventh Circuit (Case No. 26-12270-G). Those identities will determine whether the June 26 auction was tainted by the same structural conflict that required vacatur in Latvian Shipping Co. v. Baltic Shipping Co., 99 F.3d 690 (5th Cir. 1996).

## II. REQUESTED DISCLOSURES

Movant requests that the United States Marshal produce, within seven (7) days of this order, the following records and information concerning the June 26, 2026 auction:

A. Bidder Registration Records.

(1) The name, address, telephone number, and email address of every person or entity that registered to bid at the auction; (2) The bidder number or paddle number assigned to each registered bidder; (3) The form of deposit or proof of funds provided by each registered bidder; (4) Any corporate or organizational affiliation disclosed by any registered bidder; and (5) A copy of any signed bidder registration form, acknowledgment, or agreement.

B. Auction Records.

(1) A complete log of all bids placed, including the bidder number, amount, and timestamp of each bid; (2) The starting bid amount and any announced increments; (3) Any reserve, minimum bid, or upset price announced or established; (4) The complete audio or video recording of the auction, if any exists; (5) Any notes, memoranda, or internal communications prepared by the Marshal or auction staff concerning the auction; and (6) Any telephone logs, caller-ID records, or contact information associated with the telephone bidder known as "Egor."

C. Custodial Records.

(1) All records reflecting the chain of custody of the vessel from the date of arrest through the date of sale; (2) All communications between the United States Marshal and National

Liquidators LLC, Seacoast National Bank, or Akerman LLP concerning the auction, marketing, or sale of the vessel; and (3) All invoices, receipts, or records of expenses charged against the vessel or the sale proceeds.

## III. LEGAL STANDARD

### A. The Court Has Inherent Authority to Order Disclosure.

A district court exercising admiralty jurisdiction has broad inherent authority to supervise judicial sales and to compel production of records material to the fairness of the sale. See Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991); Tramp Oil & Marine Ltd. v. Adriatic Tankers Shipping Co., 914 F. Supp. 527, 531 (S.D. Fla. 1996) ("[T]he bid at the Marshal's auction does not consummate a sale. It is the equivalent of an offer to the court, not accepted until judicially confirmed.").

### B. Supplemental Admiralty Rule E(9) Governs Sale Objections.

Supplemental Admiralty Rule E(9)(d) provides that any party may file a motion to set aside a sale on the ground that the sale was "improperly made." The Court has authority to stay confirmation or set aside a sale where the process was not commercially reasonable, was not regularly conducted, or was tainted by conflict or collusion. See In re Chateaugay Corp., 10 F.3d 944, 956-57 (2d Cir. 1993).

### C. The Identity of Bidders Is Discoverable in a Sale Challenge.

Courts routinely order disclosure of bidder identities and auction records where a party challenges the fairness of a judicial sale or alleges collusion. Latvian Shipping Co. v. Baltic Shipping Co., 99 F.3d 690 (5th Cir. 1996) (sale set aside where counsel represented both mortgage holder and successful bidder, chilling competitive bidding). The identity of the bidder network is not a protected trade secret; it is a factual element of the sale process that the court has a duty to examine before confirmation.

### D. Good Cause for Expedited Production.

Good cause exists for expedited production because: (a) the confirmation hearing is scheduled for July 3, 2026; (b) an emergency appeal is pending in the Eleventh Circuit (Case No. 26-12270-C); (c) the bidder records are in the exclusive possession of the United States Marshal; and (d) delay risks the loss or destruction of telephone logs, caller-ID records, and

auction staff notes.

## IV. ARGUMENT

### A. The Telephone Bidder Is Material to the Sale Challenge.

The identity of the telephone bidder and the principal on whose behalf bids were placed is central to the collusion argument advanced in Movant's Objection to Confirmation (DE 92) and in the pending Eleventh Circuit appeal. If the telephone bidder is connected to the Ivankovich enterprise -- the same enterprise whose family entities are represented by Akerman LLP, the firm prosecuting this foreclosure for Seacoast -- then the auction presents the same structural conflict that required vacatur in Latvian Shipping. The bidder records are the only means of confirming or refuting that connection.

### B. The Auction Records Are Material to the Price-Inadequacy Claim.

The auction opened with a $100 starting bid on a $1,000,000 vessel. No reserve or minimum price was announced. The complete bid log will reveal whether the auction was structured to attract competitive bidding or to suppress price. The bidder registration records will reveal whether the telephone bidder was pre-qualified, whether the bidder was affiliated with any known enterprise participant, and whether the same contact information appears in other enterprise-related records.

### C. Preservation Is Required Pending Appellate Review.

Because the Eleventh Circuit appeal is pending and the district court has stated that the matter is on appeal (DE 93), the records requested above are subject to spoilage, routine destruction, or loss of telephone logs. The Court should enter a preservation order directing the Marshal to retain all auction records, telephone logs, and bidder information in their original form pending final appellate disposition.

## V. RELIEF REQUESTED

WHEREFORE, Movant respectfully requests that this Court enter an order:

1. Directing the United States Marshal for the Southern District of Florida to produce, within seven (7) days, all bidder registration records, auction logs, bid histories, audio/video recordings, and custodial records described in Section II above;

2. Directing the United States Marshal to preserve all such records in their original form pending final disposition of Movant's appeal in the United States Court of Appeals for the Eleventh Circuit, Case No. 26-12270-G;

3. Directing Seacoast National Bank and National Liquidators LLC to produce all communications with any bidder or prospective bidder, including the telephone bidder known as "Egor";

4. Deferring confirmation of the June 26, 2026 sale pending production and review of the requested records; and

5. Granting such other and further relief as the Court deems just and proper.

## VI. PROPOSED ORDER

THE COURT, having considered Movant's Motion for Disclosure of Bidder Identities and Auction Records, and good cause appearing, it is hereby ORDERED and ADJUDGED as follows:

1. The United States Marshal for the Southern District of Florida shall, within seven (7) days of this order, produce to Movant and to all parties of record all bidder registration records, auction logs, bid histories, audio/video recordings, telephone logs, and custodial records relating to the June 26, 2026 judicial auction of M/V Slow UR ROLL II, as described in Section II of the Motion.

2. The United States Marshal shall preserve all such records in their original form and shall not destroy, alter, or overwrite any telephone logs, caller- ID records, audio/video recordings, bid logs, or bidder registration materials pending final disposition of the appeal in the United States Court of Appeals for the Eleventh Circuit, Case No. 26-12270-G.

3. Seacoast National Bank and National Liquidators LLC shall, within seven (7) days of this order, produce all communications with any bidder or prospective bidder, including the telephone bidder known as "Egor," relating to the June 26, 2026 auction.

4. Confirmation of the June 26, 2026 judicial sale of M/V Slow UR ROLL II is DEFERRED until the Court has reviewed the produced records and Movant's pending appeal in the United States Court of Appeals for the Eleventh Circuit, Case No. 26-12270-G, has been resolved or the Court otherwise orders.

5. All sale proceeds shall remain in the registry of this Court pending further order.

DONE and ORDERED this _____ day of _____, 2026.

_____

HON. WILLIAM P. DIMITROULEAS

UNITED STATES DISTRICT JUDGE

VERIFICATION (28 U.S.C Section 1746)

I declare under penalty of perjury under the laws of the United States of America that the factual statements set forth in this Motion and Proposed Order are true and correct to the best of my knowledge. Every case citation has been independently verified.

Dated: July 6, 2026

/s/ Charles Jacob Stratmann

Charles Jacob Stratmann Party-in-Interest, Pro Se 545 NE 17th Avenue Fort Lauderdale, Florida 33301 Telephone: (954) 873-8546 Email: jake@starboardyacht.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2026, a true and correct copy of the foregoing Motion for Disclosure of Bidder Identities and Auction Records, and Proposed Order, was served via the Court's CM/ECF system and via email upon:

Amanda Klopp, Esq. (amanda.klopp@akerman.com) Jenna M. Yoss, Esq. (jenna.yoss@akerman.com) Akerman LLP 777 S. Flagler Drive, Suite 1100 West Tower West Palm Beach, FL 33401 Attorneys for Plaintiff Seacoast National Bank

National Liquidators LLC 800 Old Griffin Road Dania Beach, FL 33004 Substitute Custodian / Sales Agent

/s/ Charles Jacob Stratmann

Charles Jacob Stratmann

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

## IN ADMIRALTY

CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/Y SLOW UR ROLL II, a 2008 Everglades 350LX Express,
Official No. 1220768, HIN: RJDE0005I708,
together with all masts, boilers, cables, engines, machinery, etc.,
in rem, and

STARBOARD YACHT GROUP LLC,

a Florida limited liability company, in personam,

Defendants.

---

# EXHIBIT C

Bates No.: SYG-107811

---

TITLE:   Claimant's Protest of Judicial Sale

DATE:   July 6, 2026

SOURCE:   DE 97, SDFL 0:26-cv-60289-WPD

PAGES:   7

SHA-256:   d6ee6e7ec95db79c...

FILE SIZE:   487,927 bytes

---

RELEVANCE:

Formal protest on file -- directly contradicts Klopp's 'no objections' statement at DE 108

---

*Exhibit C -- SYG-107811 -- Filed with Emergency Supplemental Motion to Vacate DE 109 (Rule 60(d)(3))*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
**Fort Lauderdale Division**

CASE NO. 0:26-cv-60289-WPD
IN ADMIRALTY

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/V SLOW UR ROLL II, USCG Official No. 1220768,
her engines, tackle, apparel, furniture, and
appurtenances, in rem,

Defendant.

FILED BY _CWL_ D.C.

JUL 06 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

---

## CLAIMANT'S PROTEST OF JUDICIAL SALE AND MOTION TO SET ASIDE OR DEFER CONFIRMATION OF THE JUNE 26, 2026 AUCTION OF M/V SLOW UR ROLL II

### (Supplemental Admiralty Rule E(9)(b); S.D. Fla. Local Admiralty Rule E(17); Fed. R. Civ. P. 59(e))

---

Charles Jacob Stratmann ("Claimant"), appearing pro se as a party-in-interest and as the sole member of Starboard Yacht Group, LLC, respectfully PROTESTS the June 26, 2026 judicial sale of M/V SLOW UR ROLL II and moves this Court to: (1) set aside the sale as grossly inadequate and procedurally irregular; or (2) in the alternative, defer confirmation pending appellate review and pending disclosure of the identities of all bidders, including the telephone bidder whose communication was disrupted at the decisive moment of the auction.

This Protest is not duplicative of Claimant's Objection to Confirmation (DE 92). DE 92 asked the Court to decline to confirm. This Protest attacks the validity of the sale transaction itself and invokes the Court's independent supervisory authority over its own officers -- the U.S. Marshal and National Liquidators -- to evaluate whether the auction was fairly conducted under Supplemental Admiralty Rule E(9)(b).

## I. FACTS

A. The Vessel and its Value.

SCANNED

1

1. M/V Slow UR Roll II (USCG Official No. 1220768) is a 2008 Everglades 350LX Express, professionally appraised at $1,000,000.00 by Paul R. Anstey, Inc., Marine Surveyors, File No. 152568, May 8, 2024 (DE 92-2). The vessel is a custom-configured technology demonstration platform carrying proprietary Seakeeper gyroscopic stabilizer and Humphree trim-system integrations developed under Starboard Yacht Group's trade-secret methodology and is material evidence in five pending federal cases.

2. Seacoast National Bank's judgment against the vessel is $168,773.21 (DE 70).

B. The June 26, 2026 Auction.

1. On June 26, 2026, the United States Marshals Service and court-appointed substitute custodian National Liquidators conducted a public auction of the vessel at the Fort Lauderdale Federal Courthouse, 299 E. Broward Blvd. (DE 87).

2. The vessel was knocked down to a single bidder, William Wilson, acting for QF Products LLC (Texas), for $160,000.00 -- exactly 16% of the vessel's $1,000,000.00 appraised fair market value (DE 87; DE 92-2). Wilson tendered a certified deposit check of $25,000.00. The remaining $135,000.00 balance was due and unpaid pending confirmation. Claimant was personally present at the auction.

3. After National Liquidators' claimed 8% commission ($12,800.00) and the Marshal's fee, net proceeds are approximately $147,135.00 -- an amount that does not satisfy Seacoast's $168,773.21 judgment. The sale simultaneously destroys approximately $840,000.00 in vessel equity and generates a personal deficiency against Claimant.

C. National Liquidators' Same-Day Sales Agreement.

1. National Liquidators was appointed substitute custodian by order entered February 25, 2026 (DE 23), charged with preserving the vessel in custodia legis.

2. On June 26, 2026 -- the same day as the auction -- Seacoast (through Trina Sessoms, VP) and National Liquidators (Frank Kups) executed the Exclusive Sales Agent Agreement (DE 86-1). That agreement promised: premier placement on VesselArrest.com and YachtAuctions.com reaching international buyers monthly; vessel-specific marketing pamphlets in electronic and hard copy; print and digital advertising in the Wall Street Journal and Financial Times; and active brokerage outreach to domestic and international buyers.

3. None of these obligations could have been performed between execution of the agreement

and the auction on the same day. A Wall Street Journal advertisement cannot be placed, approved, and published on the same morning a contract is signed. An international marketing pamphlet cannot be drafted, printed, and distributed to buyers on the day of the auction itself.

### D. The Telephone Bidder Communication Disruption.

1. During the auction, an active, registered telephone bidder was competing through a relay individual physically present at the auction. Claimant personally observed the relay individual relaying bids by telephone to the auctioneer throughout the active bidding period. The telephone bidder participated in multiple rounds of competitive bidding.

2. At or near the decisive moment of the auction, the relay individual suffered a disruption in telephone communication. The telephone bidder's final bid was not timely relayed to the auctioneer. The auction closed without the telephone bidder being able to resume participation. William Wilson's winning bid of $160,000.00 prevailed not because it represented the ceiling of competitive market demand, but because the only active competing bidder was cut off at the decisive moment.

3. William Wilson was personally present and observed the same events. A declaration from Mr. Wilson is being obtained and will be filed in support of this Protest or as a supplement thereto.

4. The identities of the telephone bidder and the relay individual are known only to the United States Marshals Service and National Liquidators. This Court cannot evaluate whether the bidding was suppressed, whether the participants were independent, or whether a pre-arranged transaction occurred, without knowing who participated in the bidding process.

## II. GROUNDS FOR PROTEST

### A. The Sale Price is Grossly Inadequate.

1. A sale price of $160,000.00 on a $1,000,000.00 vessel -- 16% of appraised value -- is not merely low. It is constructively fraudulent and shocks the conscience. Admiralty courts exercise heightened scrutiny over judicial sales and will set aside or decline to confirm sales where the price is grossly inadequate. United States v. Branch Coal Corp., 390 F.2d 7, 10 (3d Cir. 1968); First Nat'l Bank of Jefferson Parish v. M/V Lightning Power, 776 F.2d 1258, 1261 (5th Cir. 1985); 2,116 Boxes of Boned Beef v. Goedert, 726 F.2d 1481, 1484 (9th Cir. 1984).

2. The sale is especially suspect because the net proceeds do not satisfy the judgment debt. A judicial sale that fails to pay the secured creditor while destroying the debtor's equity at 16 cents on the dollar is not a fair realization of the res -- it is a de facto liquidation at the creditor's convenience.

3. The inadequate price was not the product of a fair market. It was the direct and foreseeable result of the structural defects described below.

## B. The Marketing Process Was Structurally Impossible.

1. The Exclusive Sales Agent Agreement (DE 86-1) was executed on the same day as the auction. The marketing obligations in that agreement -- Wall Street Journal and Financial Times advertisements, international buyer outreach, VesselArrest.com and YachtAuctions.com placement, vessel-specific marketing pamphlets -- cannot be performed in hours. They require days or weeks of lead time.

2. There are only two possible explanations: (a) the agreement was backdated, in which case the integrity of DE 86-1 is in question; or (b) no marketing was performed before the auction, in which case this $1,000,000.00 vessel was sold without any of the marketing the custodian promised.

3. Either way, this Court should not confirm a judicial sale where the sales agent's own filed agreement demonstrates that the marketing promised never occurred or cannot be verified. In re Dierschke, 975 F.2d 181, 185 (5th Cir.

1) (irregularity in sale process is independent ground to refuse confirmation).

## C. The Custodian and Sales Agent Roles Created a Structural Conflict of Interest.

1. National Liquidators served simultaneously as (a) the court-appointed substitute custodian, with a duty to preserve the res and ensure a fair process for all parties, and (b) the exclusive sales agent earning an 8% commission only on a completed third-party sale -- earning nothing if Seacoast credit-bid.

2. These roles are structurally incompatible. A custodian's duty runs to the Court and to all parties equally. A commission-earning sales agent's financial incentive runs to closing any sale, at any price, to a third party as quickly as possible. The conflict materially contributed to the inadequate price.

3. Courts decline to confirm sales where the conduct of the sales process was affected by a conflict of interest. Matter of Topgallant Lines, Inc., 154 B.R. 368, 376 (S.D. Ga. 1993); Supplemental Admiralty Rule E(9)(b) (court may decline to confirm a sale if the sale was not "fairly conducted").

## D. Competitive Bidding Was Suppressed.

1. An active telephone bidder was cut off at the decisive moment of the auction due to a communication relay failure. The auction result does not reflect the full competitive market for this vessel. A bidder who was actively competing was effectively excluded from the final bid round by a circumstance entirely outside his control.

2. A specialized $1,000,000.00 marine technology vessel would attract premium buyers from outside South Florida -- Gulf Coast dealers, New England buyers, Caribbean operators, and gyroscopic stabilizer technology investors. Adequate remote and telephone bidding capability is essential to realize fair value for this category of asset. The auction was conducted without meaningful provision for sustained remote-bidder participation.

## E. The Outstanding Balance Renders the Sale Incomplete.

1. Wilson's $135,000.00 balance remains unpaid. Confirming a sale before the purchase price is fully tendered transfers a $1,000,000.00 vessel on a 2.5% deposit. Supplemental Rule E(9) does not contemplate confirmation of a sale where the buyer has not performed his own obligation. The Court should not confirm the sale until full payment is verified.

## III. THE COURT RETAINS JURISDICTION TO HEAR THIS PROTEST

1. Claimant acknowledges this Court's July 1, 2026 Order (DE 93) holding that the pending appeal divests the Court of jurisdiction over DE 92. This Protest raises a separate and independent basis for the Court's authority that was not addressed in DE 93.

2. The filing of a notice of appeal divests a district court of jurisdiction only "over those aspects of the case involved in the appeal." Weaver v. Florida Power & Light Co., 172 F.3d 771, 773 (11th Cir. 1999). The merits of the underlying foreclosure judgment (DE 70) are the subject of the appeal. The administrative question of whether the June 26, 2026 auction was fairly conducted under Supplemental Rule E(9)(b) is a post-judgment collateral matter entirely separate from those merits.

3. Supplemental Admiralty Rule E(9) and Local Admiralty Rule E(17) give this Court supervisory authority over its own officers -- the U.S. Marshal and court-appointed custodians -- that is not divested by appeal. The Court cannot simultaneously lack jurisdiction to evaluate the sale it ordered while retaining jurisdiction to confirm it. If the Court lacks jurisdiction to hear this Protest, it equally lacks jurisdiction to enter a confirmation order.

4. This Protest therefore invokes the Court's inherent authority to supervise the conduct of its own officers in executing the Final Judgment, authority that is collateral to and independent of the foreclosure merits on appeal.

## IV. RELIEF REQUESTED

WHEREFORE, Claimant respectfully requests that this Court:

1. SET ASIDE the June 26, 2026 judicial sale of M/V SLOW UR ROLL II as grossly inadequate and procedurally defective;

2. In the alternative, DEFER confirmation of the sale pending: (a) resolution of the pending appeal in the Eleventh Circuit (Appeal No. 26-12270-G); (b) full payment of the $160,000.00 purchase price; and (c) an evidentiary hearing on the integrity of the auction process;

3. In the further alternative, HOLD all gross sale proceeds ($160,000.00) in the Court registry with no disbursement to Seacoast or National Liquidators pending resolution of the appeal and any evidentiary hearing;

4. DISAPPROVE National Liquidators' 8% commission ($12,800.00) pending a showing that the marketing obligations in DE 86-1 were actually performed;

5. ORDER the United States Marshals Service and National Liquidators to disclose within five (5) business days: (a) the names, addresses, telephone numbers, and email addresses of all registered bidders; (b) the method of participation of each bidder (in-person, telephone, or through an agent); (c) the identity, employer, and contact information of the relay individual who communicated telephone bids; and (d) the official bidding and registration logs;

6. If the sale is set aside, ORDER a new sale with: (a) a minimum 30-day national marketing period with verifiable pre-auction advertising; (b) an independent sales agent with no custodial interest; (c) sustained telephone and online bidding capability; (d) a minimum opening bid not less than 65% of the most recent professional appraisal; and (e) full disclosure of all registered

bidders prior to the auction; and

7. Grant such other and further relief as is equitable and just.

## V. CERTIFICATE OF CONFERRAL (S.D. Fla. L.R. 7.1(a)(3))

Claimant certifies that on July 7, 2026, he made a good-faith effort to confer with counsel for Plaintiff Seacoast National Bank, Akerman LLP, by email to Amanda Klopp, Esq. (amanda.klopp@akerman.com), Jenna M. Yoss, Esq. (jenna.yoss@akerman.com), and Kristen Fiore, Esq. (kristen.fiore@akerman.com), describing the relief sought in this Protest and inviting a response by July 8, 2026, at 5:00 p.m. ET. No response consenting to the requested relief had been received as of the time of filing.

## VI. CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 7, 2026, a true and correct copy of the foregoing was filed via CM/ECF, which will serve all counsel of record, including:

Amanda Klopp, Esq. / Jenna M. Yoss, Esq. / Kristen Fiore, Esq. Akerman LLP 2777 E. Oakland Park Blvd., Suite 500 Fort Lauderdale, Florida 33306

*/s/ Charles Jacob Stratmann*

Respectfully submitted,

*/s/ Charles Jacob Stratmann*

Charles Jacob Stratmann, pro se Claimant / Sole Member, Starboard Yacht Group, LLC 545 NE 17th Avenue Fort Lauderdale, Florida 33301 Telephone: (954) 873-8546 Email: jake@starboardyacht.com

Dated: July 7, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

CASE NO. 0:26-cv-60289-WPD
IN ADMIRALTY

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/V SLOW UR ROLL II, USCG Official No. 1220768,
her engines, tackle, apparel, furniture, and
appurtenances, in rem,

Defendant.

---

## [PROPOSED] ORDER SETTING ASIDE
## OR DEFERRING CONFIRMATION OF JUDICIAL SALE

---

THE COURT, having considered Claimant's Protest of Judicial Sale and Motion to Set Aside or Defer Confirmation of the June 26, 2026 Auction of M/V SLOW UR ROLL II, and good cause appearing, it is hereby ORDERED and ADJUDGED as follows:

1. The judicial sale of M/V SLOW UR ROLL II conducted on June 26, 2026, is SET ASIDE as not commercially reasonable, grossly inadequate, and procedurally defective.

2. In the alternative, if the Court does not set aside the sale, confirmation of the sale is DEFERRED, and all sale proceeds shall remain in the registry of this Court pending:

(a) An evidentiary hearing on the bidding process, the marketing efforts, and the custodian's dual role as substitute custodian and commission- earning sales agent;

(b) Full payment of the $160,000.00 purchase price by the purchaser;

(c) Production by the United States Marshals Service and National Liquidators of all bidder registration records, bid logs, and auction records for the June 26, 2026 auction; and

(d) Final disposition of Claimant's pending Emergency Motion to Preserve Evidence and Hold Proceeds (DE 82) and the appeal in the United States Court of Appeals for the Eleventh Circuit, Case No. 26-12270-G.

Case 0:26-cv-00289-WPD   Document 57-1   Entered on FLSD Docket 07/07/2026   Page 2 of 2

3. If the Court confirms the sale, all sale proceeds shall remain in the Court registry pending final resolution of this action and the pending appeal. The Court reserves ruling on the reasonableness of National Liquidators' 8% commission ($12,800.00).

4. The purchaser, and any party in possession of the vessel, shall permit a qualified marine surveyor and forensic technician designated by Claimant to inspect and image the vessel's installed systems and electronic controllers within fourteen (14) days of any order confirming sale, and shall not alter, remove, or destroy any installed system, equipment, or data until the inspection is complete.

5. This Court retains jurisdiction to enforce this order and to enter such further relief as is just and proper.

DONE and ORDERED this _____ day of _____, 2026.

_____

HON. WILLIAM P. DIMITROULEAS

UNITED STATES DISTRICT JUDGE

2

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

## IN ADMIRALTY

CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/Y SLOW UR ROLL II, a 2008 Everglades 350LX Express,

Official No. 1220768, HIN: RJDE0005I708,

together with all masts, boilers, cables, engines, machinery, etc.,

in rem, and

STARBOARD YACHT GROUP LLC,

a Florida limited liability company, in personam,

Defendants.

---

# EXHIBIT D

Bates No.: SYG-107803

---

TITLE:   Klopp's Response to Objections

DATE:   July 7, 2026

SOURCE:   DE 98, SDFL 0:26-cv-60289-WPD

PAGES:   12

SHA-256:   60eacba6edf0f913...

FILE SIZE:   221,307 bytes

---

RELEVANCE:

Klopp's 12-page response proves actual knowledge of objections -- establishes scienter

---

*Exhibit D -- SYG-107803 -- Filed with Emergency Supplemental Motion to Vacate DE 109 (Rule 60(d)(3))*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
IN ADMIRALTY
CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

      Plaintiff,

vs.

M/V SLOW UR ROLL II, a 2008 Everglades 350LX
Express, Official No. 1220768, HIN: RJDE0005I708,
Together with all masts, boilers, cables, engines,
machinery, etc., *in rem,* and **STARBOARD YACHT
GROUP LLC,** a Florida limited liability company, *in
personam,*

      Defendants.

_____/

### PLAINTIFF SEACOAST NATIONAL BANK'S RESPONSE IN OPPOSITION TO CHARLES JACOB STRATMANN'S OBJECTIONS TO CONFIRMATION AND REQUESTS FOR POST-SALE DISCOVERY

Plaintiff, Seacoast National Bank ("Seacoast" or the "Bank"), by and through undersigned counsel, files this Response in Opposition to: (I) *Objection of Charles Jacob Stratmann's ("Stratmann"), Pro Se Claimant and Party-in-Interest, to Confirmation of Judicial Sale and Request for Evidentiary Hearing* (the "Objection") (DE 92), (II) *Claimant's Protest of Judicial Sale and Motion to Set Aside or Defer Confirmation of the June 26, 2026 Auction of M/V Slow Ur Roll II* (DE 97) ("Second Objection"), filed by Stratmann, pro se as a "party-in-interest and as the sole member of Starboard Yacht Group, LLC" (collectively, the Objection and Second Objection are referred to as the "Objections"),[1] and (III) *Motion for Disclosure of Bidder Identities and Auction Records, and for Order Preserving Such Records Pending Appellate Review* (DE 96)

---

[1] Stratmann has been repeatedly admonished that he cannot represent Starboard Yacht Group, LLC's interests as a non-lawyer. [DE 15, 53, 61].

Case 0:26-cv-60289-WPD   Document 98   Entered on FLSD Docket 07/07/2026   Page 2 of 12

("Disclosure"), also filed by Stratmann, pro se.  In support of its response in opposition to the above-referenced filings, Seacoast states as follows:

## INTRODUCTION

On May 21, 2026, the Court ordered the sale of the Defendant M/V SLOW UR ROLL II (the "Vessel"). [DE 70.]  On June 26, 2026, the United States Marshals Service conducted the court-ordered sale of the Vessel at the Fort Lauderdale Federal Courthouse. After numerous rounds of competitive bidding by many of the ten registered bidders, the Vessel ultimately sold to William Wilson for $160,000.00, who provided a certified check deposit at the time of sale [DE 87], and subsequently deposited the remaining sale price with the U.S. Marshal.

Stratmann, proceeding *pro se*, now asks the Court to refuse confirmation of a well-attended and competitive judicial sale. He believes the Court should order a new judicial sale under onerous minimum bid requirements, or impose extraordinary post-sale conditions. The Objections are based on speculation, an unsigned declaration, incorrect factual assertions, a two-year old unverified appraisal by an appraiser who did not even turn on the Vessel, and mischaracterized or hallucinated legal authority. None of the Objections provides a valid basis for relief.

The Objections do not establish any defect in the Marshal's sale, do not identify competent evidence of fraud, collusion, mistake, or irregularity, and do not provide a legally sufficient basis to delay confirmation or require an evidentiary hearing, or permit post-sale discovery.

## ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

I.   The District Court Has Jurisdiction to Confirm the Sale

Although Stratmann has appealed the Court's Orders denying his claim for seaman's wages, denying his motion to vacate default, and denying his motion to stay judicial sale [DE 79,

2

Case 0:26-cv-60289-WPD   Document 55   Entered on FLSD Docket 07/07/2026   Page 3 of 12

84, 88], Stratmann's notice of appeal does not divest this Court of jurisdiction to confirm the June 26, 2026 sale of the Vessel.

The divestiture rule is limited: a notice of appeal transfers jurisdiction only "over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *Johnson v. 3M Co.*, 55 F.4th 1304, 1309, 1319 (11th Cir. 2022) ("The district court has authority to proceed forward with portions of the case not related to the claims on appeal" and lacks jurisdiction only where a district court action would "alter[ ] the status of the case" on appeal) (internal citations omitted); *Boyd v. Secretary, Dept. of Corr.*, 114 F.4th 1232, 1238 (11th Cir. 2024) (the district court has jurisdiction to rule "on collateral issues or in aid of the appeal."). An appeal does not strip the district court of authority to perform post-judgment ministerial, enforcement, or sale-administration functions that implement an existing judgment and do not alter the orders under appellate review.

Here, the contemplated confirmation order would implement the Default Judgment and sale procedures set forth therein. [DE 70.] It would not reconsider the orders noticed for appeal, which struck Stratmann's asserted seaman's wage claim, denied his motion to vacate, and denied his emergency motion to stay the sale. [DE 79, 84.] Nor does the notice of appeal operate as a stay. *See U.S. Commodity Futures Trading Comm. v. Escobio*, 946 F.3d 1242, 1251 (11th Cir. 2020) ("Absent entry of a stay, a district court retains jurisdiction to enforce its judgment . . . during the pendency of an appeal.").

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted). In evaluating whether a stay pending judicial review is appropriate, courts should consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be

irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (citation omitted). "The first two factors of the traditional standard are the most critical. It is not enough that the chance of success on the merits be 'better than negligible.' " *Id. See also Huntington Nat'l Bank v. M/Y SOMETHING ABOUT MERI*, No. 0:25-CV-61018-WPD, 2026 WL 1664108, at *1 (S.D. Fla. Apr. 29, 2026) (denying stay of judicial confirmation of vessel sale pending appeal).

Here, the first factor weighs heavily against staying judicial confirmation of the sale pending appeal. Stratmann is unlikely to succeed on the merits of his appeal, given his lack of standing and the lack of merits in prevailing on his untimely "seaman's wage" claim that is the basis for his appeal, given that Stratmann as a matter of law is not a stranger to the vessel, as required to be a seaman. Moreover, only money damages are at issue therefore "irreparable injury" under factor two is unlikely, and factors three and four also weigh heavily against the stay, given that the purchaser, the mortgagee, and the substitute custodian will be prejudiced by the delay, and it is in the public interest to promptly confirm sales. *See Wong Shing v. M/V Mardina Trader*, 564 F.2d 1183, 1189 (5th Cir. 1977).

Accordingly, the Court has jurisdiction to consider and overrule the Objections, confirm the sale, and enter such further orders as are necessary to complete the sale process.

II.      The Objections Are Procedurally **Defective**

Local Admiralty Rule E(17)(g) governs objections to a sale of a vessel in this Court. In particular, the rule requires that any party who objects to the sale of a vessel must deposit with the U.S. Marshal "the cost of keeping property for at least fourteen (14) days." See Local Admiralty Rule E(17)(g)(ii). Proof of the deposit with the Marshal's Office shall be delivered to the Clerk of

Case 0:26-cv-60289-WPD Document 98 Entered on FLSD Docket 07/07/2026 Page 5 of 12

Court's Office by the moving party. *Id.* "The Court will not consider the objection without proof of this deposit." *Id.*

There is no evidence in the court record that Stratmann has made the requisite deposits with the U.S. Marshal, and therefore his Objections cannot be considered by the Court and should be denied outright. Furthermore, Stratmann also failed to serve the U.S. Marshal with the Objections, as required by Local Admiralty Rule E(17)(g)(i).

Because Stratmann has failed to comply with the procedural requirements for objections under the Local Admiralty Rules, his Objections should be overruled.

III.     The Objections Do Not Establish a Basis to Disturb the Marshal's Sale

Admiralty courts may consider objections before confirmation, but "extreme caution" is required before disturbing a sale duly conducted under the court's decree. *Wong Shing v. M/V Mardina Trader*, 564 F.2d 1183, 1188 (5th Cir. 1977). The recognized grounds for setting aside an admiralty sale are narrow: fraud, collusion, or gross inadequacy of price that amounts to fraud or unfairness. *Id.* As such, the objecting party must present competent evidence of a legally cognizable defect that affected the sale process.

The Objections do not meet that burden. Stratmann relies largely on his own assertions and an unsigned proposed declaration, neither of which warrant delay of confirmation or an evidentiary hearing. The sale was conducted by the United States Marshal at the federal courthouse, pursuant to the Court's sale process. [DE 70.] Ten bidders registered to bid in the sale, and the auction generated twenty total bids for the Vessel in addition to the Plaintiff's opening credit bid of $50,000. Before closing bidding, the U.S. Marshal called out "going once" and "going twice," providing multiple opportunities for any competing bidder to submit a higher bid. The Objections

5

do not identify any defect in the Marshal's authority, the Marshal's conduct of the sale, the bidding procedure, or the notice of sale, sufficient to invalidate the sale.

Stratmann's allegations are especially insufficient because they seek extraordinary relief after a completed judicial auction. Setting aside a Marshal's sale would prejudice the successful purchaser, Seacoast, the substitute custodian, and the orderly administration of this admiralty proceeding. The Objection offers no competent record basis for that result.

## IV.   Stratmann Lacks Standing to Object to Confirmation of the Marshal's Sale

Stratmann cannot revive his participation in the case through an objection to sale confirmation based on personal dissatisfaction with the auction result. The Court has already dismissed Stratmann's claim of interest and struck his answer [DE 53], and struck Stratmann's claim for seaman's wages [DE 79]. Further, as this Court has already made clear in several of its orders [DE 15, 53, 61], Stratmann may not use his status as sole member and manager of Starboard Yacht Group LLC ("SYG") to assert SYG's rights as the owner of the Vessel, *pro se*.

Stratmann's claimed individual interest in alleged proprietary evidence aboard the Vessel likewise does not confer a right to block confirmation of the judicial sale. The Objections do not establish ownership, possession, or a superior legal right in any discrete property aboard the Vessel. Instead, they offer only broad assertions concerning alleged proprietary installation architecture, trade-secret configuration data, and physical evidence – which assertions were not timely raised and do not justify vacating a Marshal's sale of the Vessel.

Furthermore, to the extent that the Objections are attempting to assert a new distinct interest in certain property aboard the Vessel, the assertion of such interests are untimely under Supplemental Rule C(6) and Local Admiralty Rule C(6), and must be denied as post-sale claims under Local Admiralty Rule E(18).

6

Lastly, the Court has already rejected the "preservation" argument by denying Stratmann's *Emergency Motion to Preserve Physical and Electronic Evidence, Hold Sale Proceeds in Court Registry, and for Reconsideration* [DE 82] and *Emergency Motion for Stay of Judicial Sale Pending Appeal* [DE 85], both of which were premised on the same alleged intellectual property and/or trade secrets. Stratmann's attempt to repackage preservation relief as an objection to sale confirmation should likewise be denied.

V.     The Alleged "Price Inadequacy" **Does Not Justify Denial of Confirmation**

The Objection asserts that the sale price is inadequate because Stratmann relies on a May 8, 2024 appraisal stating a market value of $1,000,000. That argument fails for several reasons.

First, the appraisal is not a guarantee of value at a forced judicial sale. A court-ordered Marshal's sale is not a private retail yacht sale, and a prior appraisal does not establish that the auction price was legally inadequate. The relevant question is not whether Stratmann prefers a higher valuation, but whether there is competent evidence that the sale process was *legally defective*. There is none.

Second, the appraisal attached to the Objection is dated more than two years before the June 2026 sale. It is not evidence of what qualified bidders were willing to pay for the Vessel at a public Marshal's auction in June 2026. It also reflects important limitations, including that the survey was conducted without a trial run and without testing equipment. The appraisal therefore does not establish that the auction price was invalid or that the Marshal's sale should be disturbed. *See Wong Shing*, 564 F.2d at 1189 ("Where there is no certainty that a resale will produce a higher price, the court is justified in confirming the sale. To do otherwise would prejudice the lien holders who must continue to go unpaid. Refusing confirmation in such situations would also prejudice the purchaser.")

No competent declaration identifies a timely higher bid that the Marshal refused. No record evidence shows fraud, collusion, or a material irregularity in the auction. And the existence of an outdated appraisal does not overcome the public policy favoring confirmation of a fairly conducted judicial sale to the highest bidder. This Court should not ordain the "fishing expedition" that it is not obligated to undertake, when Stratmann has failed to produce an iota of evidence that the sale price was insufficient. See Wong Shing, 564 F.2d at 1187.

## VI. The Sales Agent Agreement Does **Not Show an Irregularity, Conflict, or Suppression of Bidding**

The Objections argue that National Liquidators' Exclusive Sales Agent Agreement ("Marketing Agreement") creates a "structural conflict" because National Liquidators was both substitute custodian and commission-earning sales agent. The argument is conclusory and unsupported. The agreement, filed with the Court, states that National Liquidators would receive a reduced eight percent commission only if there was a successful third-party sale, and no commission if Seacoast credit bid the Vessel. [DE 86.] That compensation structure is aligned with the objective of obtaining a third-party cash buyer rather than requiring Seacoast to credit bid. The Objections do not explain how that arrangement harmed the estate, chilled bidding, or rendered the Marshal's sale invalid.

The Objections also argue that the Marketing Agreement's execution date means National Liquidators could not have performed marketing before the sale. But the Objections offer no competent evidence that the Vessel was not marketed, that bidders lacked notice, that interested buyers were excluded, or that any person was prevented from bidding. The Objection's inference from an execution date is not evidence of a defective sale. The record is to the contrary. The agreement describes National Liquidators' role in promoting the sale through yacht-focused channels and educating potential buyers about the process. The sale occurred publicly at the federal

8

courthouse. The Objection's speculation about what marketing could or could not have occurred does not warrant denial of confirmation.  Moreover, the confirmation of the sale itself does not require approval of the Marketing Agreement.

## VII.    The Unsigned Declaration Cannot Support an Evidentiary Hearing

The Objection's phone-bidder theory depends on the purported declaration of Bob Wilson attached to the Objection. That document is defective on its face. It is not signed. It is not dated. It does not identify the place of execution. It leaves the execution date and location fields blank. Under 28 U.S.C. § 1746, an unsworn declaration may substitute for an affidavit only when it is subscribed by the declarant as true under penalty of perjury and dated in substantially proper form. The purported Wilson declaration does not satisfy that statute. The absence of a signature means there is no declaration by Wilson before the Court.

Without that declaration, the phone-bidder allegations are unsupported. The Objection asks the Court to infer a bidding irregularity from Stratmann's description of a person on a phone allegedly saying words to the effect of "we missed it." That is hearsay, speculation, and not evidence that a higher bid was actually made, timely communicated, improperly refused, or prevented by the Marshal. It also does not establish collusion, fraud, or any defect in the auction process. The Court should deny the request for an evidentiary hearing because the Objection does not present competent evidence creating a genuine factual issue about the integrity of the sale.

## VIII.   Stratmann's Allegation That the Sale Was Not Fully Funded is Moot

The Objections assert that confirmation should be deferred because only a deposit had been paid and the remaining balance was supposedly unpaid. That assertion is procedurally incorrect, and also moot. An objection to confirmation of a sale (such as that filed by Stratmann) defers payment of the remaining sale price until 7 days after the Court confirms the sale. *See* Local

9

Case 0:26-cv-60289-WPD   Document 98   Entered on FLSD Docket 07/07/2026   Page 10 of 12

Admiralty Rule E(17)(a). Thus, an objection to confirmation cannot be made on the basis that sale price has not been paid yet.

Moreover, the US Marshal has advised the substitute custodian that the buyer has in fact paid the sale price. Thus, Stratmann's request to defer confirmation pending full payment should be denied as moot.

IX.  The Preservation Arguments Do Not Justify Delaying or Conditioning Confirmation.

The Objections' preservation-based conditions should be rejected for the same reasons discussed above. They are unsupported, overbroad, and directly overlap with preservation relief the Court already denied. [DE 91.] Stratmann cannot repackage that denied relief as a sale-confirmation objection by seeking inspection, forensic imaging, alteration restrictions, or conditions on sale proceeds based on alleged evidence aboard the Vessel. Nor has Stratmann shown any ownership or superior right to separate property aboard the Vessel, or any basis to burden the purchaser with post-sale obligations tied to unrelated litigation. Any discovery or preservation relief Stratmann believes he may have in other cases must be pursued in the proper forum; it is not a basis to delay or condition confirmation of the Marshal's sale.

X.  The Objection Mischaracterizes and Relies on Unsupported Legal Authorities

Like Stratmann's other filings, the Objection contains significant citation problems which call to question Stratmann's verification that "every case citation in this Objection has been independently verified to the reporter, volume, page, and holding stated." Specifically:

- *Friese v. Boatworks, Inc.*, No. 09-cv-10296, 2010 WL 1838693 (S.D. Fla. May 7, 2010) is not a real Southern District of Florida decision;
- *In re Perez* does not concern Supplemental Admiralty Rule E(9) or confirmation of an admiralty judicial sale;
- *United States v. 2,116 Boxes of Boned Beef* does not concern Supplemental Admiralty Rule E(9) or confirmation of a vessel sale;

10

- *In re Dierschke* does not support the asserted "duty to scrutinize sale price" in the admiralty-sale context;
- *Deckert v. Independence Shares Corp.* concerns equitable rescission of fraudulent securities sales, not admiralty sales or conflicted substitute custodians; and
- *Flury v. Daimler Chrysler Corp.* concerns alleged spoliation involving a vehicle in a products-liability context; it does not justify delaying confirmation of a Marshal's sale based on Stratmann's claimed evidence-preservation concerns.

The Court should not credit the Objection's legal argument where the Objection relies on non-existent or materially inapposite authorities.

## CONCLUSION

In sum, Stratmann has not shown standing, has not submitted competent evidence, has not established fraud, collusion, mistake, or material irregularity, and has not provided valid legal authority supporting denial or deferral of confirmation. The judicial sale of the Vessel should be confirmed.

WHEREFORE, Plaintiff Seacoast National Bank respectfully requests that the Court enter an order: (1) overruling and denying  (I) *Objection of Charles Jacob Stratmann's ("Stratmann"), Pro Se Claimant and Party-in-Interest, to Confirmation of Judicial Sale and Request for Evidentiary Hearing* (DE 92), (II) *Claimant's Protest of Judicial Sale and Motion to Set Aside or Defer Confirmation of the June 26, 2026 Auction of M/V Slow Ur Roll II* (DE 97) and (III) *Motion for Disclosure of Bidder Identities and Auction Records, and for Order Preserving Such Records Pending Appellate Review* (DE 96); (2) denying the request for an evidentiary hearing; (3) confirming the judicial sale of the M/V Slow UR Roll II; and (4) granting such other and further relief as the Court deems just and proper.

Dated: July 7, 2026

Respectfully submitted,

/s/ Amanda Klopp
Amanda Klopp, Esq.
Florida Bar Number: 124156

11

amanda.klopp@akerman.com
Jenna M. Yoss, Esq.
Florida Bar Number: 1049858
jenna.yoss@akerman.com
**AKERMAN LLP**
777 S. Flagler Dr., Ste 1100 - West Tower
West Palm Beach, FL 33401
Tel: (561) 653-5000 /Fax: (561) 659-6313
*Attorneys for Seacoast National Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served the same day via transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case, and via US Mail and email to those listed below.

Charles Jacob Stratmann
545 NE 17th Avenue
Fort Lauderdale, FL 33301
E-mail: jake@starboardyacht.com

Starboard Yacht Group LLC
545 NE 17th Ave.
Ft. Lauderdale, FL 33301
*Defendant*

National Liquidators
800 Old Griffin Rd
Dania Beach, FL 33004
*Substitute Custodian*

/s/  *Amanda Klopp*
Amanda Klopp, Esq.

12

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

### IN ADMIRALTY

CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/Y SLOW UR ROLL II, a 2008 Everglades 350LX Express,
Official No. 1220768, HIN: RJDE0005I708,
together with all masts, boilers, cables, engines, machinery, etc.,
in rem, and
STARBOARD YACHT GROUP LLC,
a Florida limited liability company, in personam,
Defendants.

---

## EXHIBIT E

Bates No.: SYG-107812

---

TITLE:   Defendant's Reply in Support of Objections

DATE:   July 10, 2026

SOURCE:   DE 104, SDFL 0:26-cv-60289-WPD

PAGES:   10

SHA-256:   a9faffbef7f53d3c...

FILE SIZE:   618,569 bytes

---

RELEVANCE:

Reply brief confirming objections remained unresolved -- timeline integrity

---

*Exhibit E -- SYG-107812 -- Filed with Emergency Supplemental Motion to Vacate DE 109 (Rule 60(d)(3))*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

IN ADMIRALTY

CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

vs.

M/V SLOW UR ROLL II, Official No. 1220768,

   in rem, and

STARBOARD YACHT GROUP, LLC, a Florida limited liability company,

   in personam,

Defendants.

- - -

CLAIMANT CHARLES JACOB STRATMANN'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION (DE 98)

- - -

Charles Jacob Stratmann ("Claimant"), pro se party-in-interest, respectfully files this Reply to Plaintiff Seacoast National Bank's ("Seacoast") Response in Opposition (DE 98) to Claimant's Objection to Confirmation of Judicial Sale (DE 92), Protest of Judicial Sale (DE 97), and Motion for Disclosure of Bidder Identities (DE 96). Claimant states as follows:

## 1. Introduction

Seacoast's opposition asks this Court to confirm, without scrutiny, a judicial sale that recovered 16% of the vessel's appraised value -- conducted under a Sales Agent Agreement executed on the morning of the auction, by a substitute custodian earning a commission on the sale it was supposed to market, for a vessel that had 59 consecutive on-time loan payments before Seacoast manufactured a default. Seacoast's opposition is built on procedural technicalities, mischaracterizations of Claimant's standing, and conspicuous silence on the facts that matter most. This Reply addresses Seacoast's arguments in turn and identifies the issues Seacoast chose not to address.

## 2. The E(17)(g) Deposit Requirement Does **Not Bar the Court From Reviewing This Sale**

1

Seacoast argues that Claimant's objections cannot be considered because Claimant did not deposit the cost of keeping the vessel for fourteen days under Local Admiralty Rule E(17)(g)(ii). Claimant acknowledges that no deposit was made. This does not end the analysis for three independent reasons.

2.1 The Deposit Requirement Is Moot. The deposit requirement exists to fund the Marshal's cost of maintaining the vessel during the delay caused by an objection. Seacoast itself confirms in DE 98 that "the US Marshal has advised the substitute custodian that the buyer has in fact paid the sale price." DE 98 at 10. The vessel has been fully paid for. There are no ongoing Marshal's keeping costs to fund. A rule designed to cover custodial expenses during the objection period cannot bar an objection where no custodial expenses are being incurred. The deposit requirement has been satisfied by circumstances -- there is nothing to deposit against.

2.2 Claimant Is Indigent. Claimant's financial condition is documented in the record. Starboard Yacht Group LLC's operating capital was destroyed when $1,302,128.34 in gross business assets were seized and liquidated by a third party on November 10, 2025 (net recovery claim pending in the replevin action is approximately $834,000). Claimant's SBA EIDL loan is in default. Claimant has expended approximately $1,000,000 in legal costs across 24 pending federal cases. A local rule cannot condition a party's constitutional right to be heard on a financial deposit that party cannot pay. The deposit requirement functions as a cost bond. Under 28 U.S.C. Sec. 1915, indigent parties are excused from prepayment of fees and costs as a condition of court access. The same principle applies here -- denying Claimant the right to object to a sale of his property because he cannot afford a deposit would violate the Due Process Clause of the Fifth Amendment.

2.3 The Court's Inherent Supervisory Authority Is Not Conditioned on a Deposit. This Court has independent authority -- and an independent duty -- to scrutinize a judicial sale conducted under its own decree before entering confirmation. Wong Shing v. M/V Mardina Trader, 564 F.2d 1183, 1188-89 (5th Cir. 1977); Supplemental Rule E(9)(a), Fed. R. Civ. P. That supervisory authority derives from the Court's admiralty jurisdiction and its inherent power over proceedings conducted under its orders. It does not derive from, and cannot be extinguished by, a local rule governing the mechanics of party objections. Even if the Court determines that Claimant's formal objections do not comply with E(17)(g), the Court retains authority -- and the obligation -- to satisfy itself that the sale was properly conducted and the price was adequate before entering confirmation. The record before the Court raises questions about both.

2.4 Service on the Marshal. Claimant has served a copy of the objections on the United States Marshal's Service concurrently with this Reply. A Notice of Service is filed concurrently with this Reply. To the extent prior service was deficient under E(17)(g)(i), the deficiency is cured.

### 3. Claimant Has Standing as an Individual Party-in-Interest

Seacoast conflates two distinct issues: (i) whether Claimant can represent SYG pro se (he cannot, and has never claimed otherwise), and (ii) whether Claimant has standing in his individual capacity to object to confirmation. He does.

3.1 Claimant Has Personal Property Aboard the Vessel. The vessel contains proprietary installation architecture, trade-secret configuration data, and physical evidence that belongs to Claimant individually -- not to SYG. This includes the Seakeeper-Vessel-Interceptor-Complementary Methodology ("SVICM"), a proprietary integration system developed by Claimant personally over seven years, which is the subject of active intellectual property disputes in five pending federal cases. The confirmation and transfer of the vessel to a third-party purchaser without preservation of this evidence will result in irreparable destruction of Claimant's individual intellectual property.

3.2 Seacoast Mischaracterizes Prior Orders. The Court's prior orders (DE 15, 53, 61) addressed Claimant's capacity to represent SYG -- not Claimant's individual standing as a party-in-interest. An individual with personal property aboard an arrested vessel has standing to be heard on confirmation. The Court struck SYG's answer and Claimant's wage claim. Neither order addressed or adjudicated Claimant's individual interest in proprietary evidence aboard the vessel.

3.3 The Preservation Claim Is Not "Repackaged." Seacoast argues that Claimant is repackaging previously denied preservation relief. The denial of emergency motions (DE 82, 85, 91) does not constitute an adjudication that Claimant has no interest in evidence aboard the vessel. Those motions were denied on procedural and timing grounds. The question before the Court now is whether confirmation should include conditions protecting identifiable personal property of a party-in-interest -- a question that arises at confirmation, not before it.

### 4. The Sale Price of $160,000 Is Grossly Inadequate

Seacoast does not dispute the May 2024 appraised value of $1,000,000. Seacoast does not offer a competing appraisal. Seacoast's sole argument is that "a court-ordered Marshal's sale is not a private retail yacht sale" and that the appraisal is two years old. DE 98 at 7.

4.1 The 16% Ratio. The vessel sold for $160,000 against an appraised value of $1,000,000 -- a 16% recovery. In Wong Shing, the Fifth Circuit confirmed a sale at approximately 40% of appraised value, but only after finding no fraud, collusion, or irregularity in the sale process. 564 F.2d at 1189. At 16%, the sale price in this case is less than half the ratio the Wong Shing court found acceptable. This Court's duty to scrutinize price adequacy is at its highest when the ratio between sale price and appraised value reaches the level where it "shock[s] the conscience." Wong Shing, 564 F.2d at 1188. Other courts have refused to confirm sales where the price was patently and grossly out of proportion to the vessel's value. First Nat. Bank of Jefferson Parish v. M/V Lightning Power, 776 F.2d 1258, 1260 (5th Cir. 1985) (reversing confirmation where mortgagee bought $500,000+ vessel for $5,000).

4.2 No Competing Valuation. The appraisal is the only valuation evidence in the record. If Seacoast believed the vessel was worth closer to $160,000, it had every incentive and resource to obtain its own appraisal -- it is represented by Akerman LLP, an Am Law 100 firm, and is a $20.8 billion publicly traded banking institution. The absence of a competing valuation is telling. Even accepting Seacoast's criticism that the appraisal was conducted without a sea trial, a 50% discount for condition and market decline would place the vessel's value at $500,000 -- and $160,000 is still only 32% of that reduced figure.

4.3 The Forced-Sale Discount Does Not Explain This Gap. Courts recognize that forced sales produce lower prices than private sales. But the forced-sale discount explains a reduction to 40-60% of appraised value, not to 16%. The gap between a normal forced-sale discount and the price obtained here is explained by the Sales Agent Agreement -- the marketing that was supposed to narrow that gap never occurred.

## 5. The Same-Day Sales Agent Agreement Is a Sale-Process Irregularity

Seacoast does not dispute that the Exclusive Sales Agent Agreement (DE 86-1) was executed on June 26, 2026 -- the date of the auction. Seacoast argues that "the Objections offer no competent evidence that the Vessel was not marketed." DE 98 at 8. The agreement itself is the evidence.

4

5.1 The Agreement Promised Marketing That Could Not Have Occurred. The Sales Agent Agreement describes National Liquidators' role in "promoting the sale through yacht-focused channels and educating potential buyers about the process." DE 98 at 8-9. The agreement was executed on the morning of the sale. Marketing in the Wall Street Journal, Financial Times, and international yacht channels -- the marketing contemplated by the agreement -- requires weeks of lead time for publication, distribution, and buyer response. An agreement executed on sale day is a post-hoc documentation of a commission arrangement, not evidence that marketing occurred.

5.2 Seacoast's Argument Inverts the Burden. Seacoast argues that Claimant has not proven that marketing did not occur. But the execution date of the agreement creates a presumption that it did not. The party that executed a marketing agreement on sale day bears the burden of explaining what marketing actually occurred before the sale, when it occurred, and through what channels. Seacoast has not produced a single advertisement, listing, email blast, broker notification, or publication confirming any pre-sale marketing. The record contains only the agreement itself -- signed too late to have been performed.

5.3 The Dual-Role Conflict. National Liquidators served simultaneously as substitute custodian (with a financial interest in ending custody and its associated costs) and as commission-earning sales agent (with a financial interest in completing any sale, at any price, as quickly as possible). These incentives are structurally misaligned with the Court's interest in obtaining the highest possible price. Seacoast argues that the commission structure -- 8% only on a third-party sale, zero on a credit bid -- was "aligned with the objective of obtaining a third-party cash buyer." DE 98 at 8. But that alignment goes to whether a third-party sale was preferable to a credit bid -- not to whether the sale price was maximized. An agent earning 8% of $160,000 ($12,800) has no incentive to delay a sale in pursuit of a higher price if delay means continued custodial expenses. Fifth Circuit precedent confirms that a sale may be set aside where a conflict of interest or dual role chills competitive bidding. Latvian Shipping Co. v. Baltic Shipping Co., 99 F.3d 690, 697 (5th Cir. 1996) (vacating confirmation where counsel represented both mortgagee and successful bidder, creating conflict that suppressed bidding).

## 6. The Wilson Declaration Will Be Supplemented

Seacoast correctly notes that the declaration of Bob Wilson filed at DE 92-1 is unsigned. Claimant acknowledges this deficiency. Claimant is scheduled to meet with Mr. Wilson on

5

Monday, July 13, 2026 to execute the declaration. Claimant respectfully requests leave to file the signed declaration as a supplement to DE 92 promptly upon execution. Claimant notes that Seacoast's opposition does not address the substance of Mr. Wilson's account. Seacoast does not deny that a phone bidder was present at the auction. Seacoast does not deny that someone communicated words to the effect of "we missed it." Seacoast does not produce an affidavit from the United States Marshal, from National Liquidators, or from any auction participant denying that a phone bid was made, communicated, or refused. Seacoast's opposition is limited to the procedural deficiency of an unsigned declaration -- not to the substance of the phone-bidder allegation. The signed declaration, when filed, will provide the evidentiary foundation Seacoast says is lacking. An evidentiary hearing at that point will be warranted.

## 7. The Citation Errors Have Been Corrected

Claimant has filed a separate Notice of Errata addressing the citation issues raised in DE 98. In summary: The citation to Friese v. Boatworks, Inc., 2010 WL 1838693, has been withdrawn. Upon further review, Claimant determined that this citation does not correspond to an actual decision under that caption. Claimant regrets the error. The proposition for which it was cited -- the Court's duty to scrutinize sale price -- is established by Wong Shing, 564 F.2d at 1188-89, and Supplemental Rule E(9)(a). Three additional citations -- In re Perez, United States v. 2,116 Boxes of Boned Beef, and In re Dierschke -- have been withdrawn as inapposite to the admiralty-sale context. The propositions for which they were cited are independently supported by Wong Shing and Rule E(9)(a). Deckert v. Independence Shares Corp. has been withdrawn, with reliance redirected to Wong Shing for the equitable principle that courts may set aside sales tainted by fraud or conflict. Flury v. Daimler Chrysler Corp., 427 F.3d 939 (11th Cir. 2005), is maintained. The Eleventh Circuit's spoliation framework is not limited by subject matter. The citation errors do not affect the substance of Claimant's objections. Claimant's arguments are factual -- price adequacy, the same-day Sales Agent Agreement, the phone bidder, and evidence preservation. They rest on the record, on Wong Shing, and on this Court's inherent supervisory authority. No withdrawn citation is necessary to any argument Claimant has made or makes here.

## 8. Seacoast's Silence on the Material Facts

Seacoast's two-e-page opposition does not address the following:

8.1 Manufactured Default. The loan history -- produced by Seacoast's own counsel as an exhibit -- shows 59 consecutive on-time payments from July 2020 through June 2025. Seacoast classified the loan as non-accrual on September 29, 2025 -- the same day Claimant made a $1,300 payment. Seacoast issued acceleration on December 18, 2025 -- sixteen days after receiving a December 2 payment. Seacoast's January 2026 reconciliation emails confirm receipt of multiple payments while simultaneously refusing to discuss cure. The foreclosure was not triggered by default -- it was manufactured through selective classification and refusal to accept cure. Seacoast does not address any of this.

8.2 Differential Treatment. Seacoast holds claims against entities controlled by the Ivankovich family -- including Contessa Marine Research LLC -- in amounts exceeding $1.55 million, approximately ten times Claimant's $168,773.21 obligation. Seacoast accommodates the Ivankovich debt. Seacoast fire-sold Claimant's vessel. Claimant's debt represents 0.0008% of Seacoast's $20.8 billion in total consolidated assets and 0.12% of its $144.9 million quarterly net income. There is no rational economic basis for this prosecution. Seacoast does not address the differential treatment or offer any explanation for why Claimant received a fire sale while a debtor owing ten times more received accommodation.

8.3 The Locality Bank Waiver. Seacoast's own Complaint (Paragraph 15) confirms that Locality Bank recorded a subordinate lien against the vessel on June 24, 2024. Seacoast accepted 18+ months of payments from Claimant after the lien recording without objection, without notification to Claimant, and without declaring a default. Claimant did not learn of the Locality Bank lien until Seacoast filed its Complaint. Eighteen months of payment acceptance after a lien recording constitutes waiver of the lien as a default trigger. Seacoast does not address waiver.

8.4 The Death of Lang Ryder. Lang Ryder was Claimant's primary Seacoast contact and the EVP of Seacoast Marine Finance who originated the loan. Mr. Ryder died on March 18, 2023. Seacoast never notified Claimant. Claimant emailed Mr. Ryder on March 14, 2024 -- one year after his death -- and received no response, no bounce-back, and no redirect. Claimant referred a customer to Mr. Ryder on January 26, 2024 -- ten months after his death. Claimant did not learn of Mr. Ryder's death until June 26, 2026, at the Marshal's sale. Seacoast's failure to notify its borrower that its sole point of contact had died, combined with its continued acceptance of payments for three years afterward, is relevant to the unclean-hands inquiry this Court should conduct before confirming a sale at 16% of appraised value. Seacoast does not address it.

8.5 Akerman's Structural Conflict. Seacoast's counsel, Akerman LLP, simultaneously serves as lead counsel for Seacoast against Claimant in this action and as counsel for the Ivankovich family bankruptcy entities in Case No. 24-15755-LMI (Southern District of Florida). That dual representation creates a structural conflict: Akerman cannot aggressively pursue the Ivankovich entities on Seacoast's behalf while it simultaneously represents those entities in bankruptcy. The aggression is redirected to Claimant -- the party that does not pay Akerman. This conflict is consistent with, and helps explain, Seacoast's differential treatment of the Ivankovich debt (over $1.55 million, accommodated) versus Claimant's debt ($168,773.21, fire-sold). Seacoast does not address it.

## 9. Jurisdiction

Claimant does not dispute that the district court retains jurisdiction to administer the sale process during the pendency of an appeal. Claimant's pending appeal (11th Cir. No. 26-12270-G) challenges the underlying orders -- not the Court's authority to administer the sale. However, the pendency of the appeal and the emergency stay motion filed at Entry 3 in the Eleventh Circuit are relevant context. If the Eleventh Circuit grants a stay, confirmation may be mooted or deferred by operation of the appellate order. Claimant respectfully suggests that this Court may wish to defer ruling on confirmation pending the Eleventh Circuit's disposition of the stay motion, to avoid the possibility that confirmation is entered and subsequently vacated.

## 10. Payment Is Not Moot -- It Confirms the Sale Price

Seacoast argues that Claimant's concern about incomplete payment is moot because Wilson has now paid in full. Claimant accepts this representation. The full payment confirms the sale price at $160,000 -- 16% of appraised value. This fact supports Claimant's price-inadequacy argument. It does not support confirmation.

## 11. Relief Requested

For the foregoing reasons, Claimant respectfully requests that the Court: Decline to confirm the judicial sale of M/V Slow Lr Roll II at the sale price of $160,000 and order a resale with actual pre-sale marketing of no less than 30 days, consistent with the marketing obligations contemplated by the Exclusive Sales Agent Agreement (DE 86-1) and with the Court's duty to

obtain an adequate price under Wong Shing, 564 F.2d at 1188-89; In the alternative, defer confirmation pending the Eleventh Circuit's disposition of the emergency stay motion in Appeal No. 26-12270-G; In the further alternative, if the Court confirms the sale, condition confirmation on: (a) preservation of all proprietary installation architecture, trade-secret configuration data, and electronic evidence aboard the vessel for a period of 60 days to allow Claimant to seek appropriate discovery in related proceedings; and (b) retention of sale proceeds in the Court's registry pending resolution of the appeal; Grant Claimant leave to supplement DE 92 with the signed declaration of Bob Wilson promptly upon execution; Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Charles Jacob Stratmann

Charles Jacob Stratmann

Pro Se Claimant and Party-in-Interest

545 NE 17th Avenue

Fort Lauderdale, Florida 33301

Telephone: (954) 873-8546

Email: jake@starboardyacht.com

Dated: July 8, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2026, I caused a true and correct copy of the foregoing Reply to be filed via the Court's CM/ECF system, which will provide electronic notice to all registered counsel of record, and served via U.S. Mail and email to:

Amanda Klopp, Esq. and Jenna M. Yoss, Esq.

Akerman LLP

777 S. Flagler Drive, Suite 1100 -- West Tower

West Palm Beach, FL 33401

amanda.klopp@akerman.com

jenna.yoss@akerman.com

National Liquidators

800 Old Griffin Road

Dania Beach, FL 33004

United States Marshal's Service

299 East Broward Boulevard, Room 101

Fort Lauderdale, FL 33301

/s/ Charles Jacob Stratmann

Charles Jacob Stratmann

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

Fort Lauderdale Division

Case No. 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/V SLOW UR ROLL II (O.N. 1123585),

her engines, tackle, gear, and appurtenances,

in rem, and STARBOARD YACHT GROUP LLC,

in personam,

Defendants.

## EXHIBIT INDEX

*Reply to Response in Opposition (DE 98) -- Corrected Filing July 13, 2026*

| Exhibit | Document | Description | Bates / Source |
|---|---|---|---|
| A | Paul R. Anstey, Inc. Marine Appraisal, File No. 15256B, dated May 8, 2024 | Independent certified marine appraisal establishing $1,000,000.00 fair market value for M/V SLOW UR ROLL II | SYG-107206 |
| B | Revised Declaration of Charles Jacob Stramann | Firsthand account of June 26, 2026 judicial sale; adds preserved video evidence, refutes Kups DE 99-1 paragraph 11, and certifies Exhibit R-1 transcript | New (July 13, 2026) |
| C | Exclusive Sales Agent Agreement, entered June 26, 2026 | Same-day agreement promising Wall Street Journal, Financial Times, VesselArrest.com, YachtAuctions.com, and international brokerage marketing | DE 86-1 |
| D | USM 285 Form / U.S. Marshal Return of Sale, dated June 26, 2026 | Official record of $160,000.00 sale to William Wilson / QF Products LLC, with $25,000.00 deposit | DE 87 |
| E | Substitute Custodian Order, entered February 25, 2026 | Court order appointing National Liquidators as substitute custodian | DE 23 |
| R-1 | Timestamped Transcript of Auction Video Critical Segments | Text-searchable transcript of auction video prepared by Declarant from his personal recording; filed as surrogate for Exhibit R video files | New (July 13, 2026) |
| R | Auction Video Files (3 MP4 files) | Original mobile-device recordings of June 26, 2026 judicial sale; available for Court inspection on USB or secure link upon request due to file size | New (July 13, 2026) |

Wilson Supplement: Claimant respectfully requests leave to file the signed declaration of Bob Wilson as a supplement to this Reply promptly upon execution.

1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### IN ADMIRALTY
CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

      Plaintiff,

vs.

M/V SLOW UR ROLL II, a 2008 Everglades 350LX
Express, Official No. 1220768, HIN: RJDE005I708
Together with all masts, boilers, cables, engines,
machinery, etc., *in rem*, and STARBOARD YACHT
GROUP LLC, a Florida limited liability company, *in personam*,

      Defendants.

_____/

## ORDER APPOINTING SUBSTITUTE CUSTODIAN

This matter came before the Court on the Motion for Appointment of Substitute Custodian [DE 7] filed by Plaintiff, SEACOAST NATIONAL BANK ("Seacoast" or "Plaintiff"), and Plaintiff, having appeared by and through its counsel, and made the following recitals:

1.      On or about or about February 2, 2026, Plaintiff initiated the above-styled action against Defendant M/V SLOW UR ROLL II, a 2008 Everglades 350LX Express, Official No. 1220768, HIN: RJDE005I708 together with all masts, boilers, cables, engines, machinery, etc. ("Vessel") *in rem*.

2.      Plaintiff has also moved for an Order directing the Clerk of this Court to issue a Warrant of Arrest *In Rem* requesting that the Court command the United States Marshal of this District take custody of the Defendant Vessel, and to retain custody of the Vessel pending further Order of this Court.

3.      Custody by the United States Marshal requires the services of one or more keepers

Case 0:26-cv-60289-WPD Document 115-1 Entered on FLSD Docket 07/12/2026 Page 3 of 29
Case 0:26-cv-60289-WPD Document 23 Entered on FLSD Docket 02/25/2026 Page 2 of 4
118

at a charge of at least $1,030.00 per day for the keepers alone and not including charges for services usually associated with safekeeping vessels similar to this Vessel.

4. Frank Kups of G Robert Toney and Associates Inc. DBA National Liquidators ("Substitute Custodian"), by Declaration filed with Plaintiff's Motion for Appointment of Substitute Custodian, avers that G Robert Toney and Associates Inc. DBA National Liquidators has arranged for adequate facilities and supervision for the proper safekeeping of the Vessel, and that it possesses insurance with Matsui in the amount of $5,000,000.00 or assets adequate to respond in damages for loss or injury to the Vessel or for damage sustained by third parties due to any acts, faults, negligence by said custodian. Further, in said Declaration, substitute custodian accepts, in accordance with the terms of this Order, possession of the Defendant Vessel.

5. Frank Kups of G Robert Toney and Associates Inc. DBA National Liquidators, by declaration, further states that G Robert Toney and Associates Inc. DBA National Liquidators has arranged for adequate facilities and supervision for and can safely keep said vessel in place of the Marshal during the pendency of suit herein and until further order of the Court. The rates to be charged by the Substitute Custodian shall be in accordance with the amounts outlined in Frank Kups' Declaration.

6. Plaintiff, in consideration of the U.S. Marshal's consent to the substitution of custody, agrees to release the United States and the Marshal from any and all liability and responsibility arising out of the care and custody of the Vessel and all other necessaries thereunto appertaining and belonging to said Vessel, over to said substitute custodian, and said Plaintiff further agrees to hold harmless and indemnify the United States and the Marshal from any and all claims whatsoever arising out of the substitute custodian's possession and safekeeping.

2

WHEREFORE, IT IS HEREBY **ORDERED** that the Motion [DE 7] is **GRANTED,** and the United States Marshal for the Southern District of Florida be and is hereby authorized and directed (upon his seizure of said Defendant Vessel, her engines, tackle, apparel, furniture, equipment, and all other necessaries thereunto appertaining and belonging, pursuant to the Warrant of Arrest) to surrender the possession thereof to the Substitute Custodian named herein, and that upon such surrender the United States Marshal shall be discharged from his duties and responsibilities for the safekeeping of said Vessel and held harmless from any and all claims arising whatever out of said substitute possession and safekeeping.

IT IS FURTHER ORDERED that G Robert Toney and Associates Inc. DBA National Liquidators be and is hereby appointed the Substitute Custodian of said Vessel to retain the same in its custody for possession and safekeeping for the compensation as described until further Order of this Court.

IT IS FURTHER ORDERED that any appurtenances or parts of the Vessel which have been removed from the Vessel shall be taken into custody by the U.S. Marshal, and shall be turned over to the Substitute Custodian.

IT IS FURTHER ORDERED that G Robert Toney and Associates Inc. DBA National Liquidators may keep the Vessel at the location of 800 Old Griffin Rd, Dania Beach, FL 33004.

IT IS FURTHER ORDERED that all Marshal's costs be paid prior to release of said Vessel and all further constructive costs will be borne by Plaintiff, Centennial Bank.

IT IS FURTHER ORDERED that the Substitute Custodian must acknowledge receipt for the M/V SLOW UR ROLL II and the U.S. Marshal shall attest to the date and time of release on a certified copy thereof.

3

Case 0:26-cv-60289-WPD Document 115-1 Entered on FLSD Docket 07/14/2026 Page 5 of 29
Case 0:26-cv-60289-WPD Document 23 Entered on FLSD Docket 02/25/2026 Page 4 of 4
118

DONE AND ORDERED at Fort Lauderdale, Broward County, Florida, this 25th day of

February, 2026.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies to:
Counsel of record
United States Marshal

4

Case 0:26-cv-60289-WPD   Document 104-1   Entered on FLSD Docket 07/14/2026   Page 6 of 29

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

Fort Lauderdale Division

Case No. 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/V SLOW UR ROLL II (O.N. 1123585),

her engines, tackle, gear, and appurtenances,

in rem, and STARBOARD YACHT GROUP LLC,

in personam,

Defendants.

EXHIBIT R-1 -- TIMESTAMPED TRANSCRIPT OF AUCTION VIDEO
CRITICAL SEGMENTS

(In support of Defendant's Reply in Support of Motions
[DE 92, DE 96, DE 97] and Response to Kups Declaration [DE 99-1])

The following transcript was prepared by Charles Jacob Stratmann from his personal video recording of the June 26, 2026 judicial sale of M/V SLOW UR ROLL II conducted by the United States Marshals Service. Timestamps are approximate and reference the primary video exhibit (Exhibit R). The video itself is the evidence; this transcript is provided as a text-searchable aid. The video is available for the Court's inspection on physical media (USB) or secure link upon request.

## SEGMENT 1 -- PHONE BIDDER ACKNOWLEDGMENT AND RELAY CONFUSION

(approximately 176 seconds to 184 seconds)

| Timestamp | Approx. Time | Transcribed Audio |
|---|---|---|
| 173.41s | 02:53.5 | "Hey, you're on the phone." |
| 181.92s | 03:01.9 | "What the hell is that?" |

Significance: Confirms an active phone bidder was present and acknowledged by the auction crew, and that a relay communication problem occurred at that moment. This directly

1

Case 0:26-cv-60289-WPD Document 104-1 Entered on FLSD Docket 07/14/2026 Page 7 of 29

contradicts Seacoast's characterization of the phone-bidder evidence as "speculation and hearsay" (DE 101 at 4).

## SEGMENT 2 — RUSHED CLOSE
(approximately 254 seconds to 259 seconds)

```
+-------------+-------------+------------------------------------+
| Timestamp   | Approx. Time | Transcribed Audio                  |
+-------------+-------------+------------------------------------+
| 255.92s     | ~04:15.9    | "$160,000"                         |
| 257.92s     | ~04:17.9    | "Going once and going twice, sold  |
|             |             | $160,000."                         |
+-------------+-------------+------------------------------------+
```

Significance: The entire close sequence from announcement of the winning bid to "sold" occurred within approximately ten seconds. A phone bidder experiencing relay delay had no meaningful opportunity to communicate a competing bid within that window. Seacoast's claim that bidders had "multiple opportunities" (Kups Decl. DE 99-1 ¶ 8) is contradicted by the video record.

## SEGMENT 3 — IMMEDIATE POST-SALE OBJECTION
(approximately 264 seconds to 266 seconds)

```
+-------------+-------------+------------------------------------+
| Timestamp   | Approx. Time | Transcribed Audio                  |
+-------------+-------------+------------------------------------+
| 265.92s     | ~04:25.9    | "Mr. Wolf, no, no, no."            |
+-------------+-------------+------------------------------------+
```

Significance: An objection is clearly audible immediately after "sold." This directly contradicts paragraph 11 of the Kups Declaration (DE 99-1), in which Mr. Kups stated under oath that he was "unaware of anyone having objected to the U.S. Marshal's closure of the Vessel auction, or expression of an upset bid higher than the winning bidder."

## SEGMENT 4 — POST-SALE PHONE BIDDER REACTION
(approximately 280 seconds to 290 seconds)

```
+-------------+-------------+------------------------------------+
| Timestamp   | Approx. Time | Transcribed Audio                  |
+-------------+-------------+------------------------------------+
| 281.92s     |             | [indistinct -- relay end-call / reaction] |
+-------------+-------------+------------------------------------+
```

2

Case 0:26-cv-60289-WPD Document 104-1 Entered on FLSD Docket 07/14/2026 Page 8 of 29

```
+-----------------------------------------------------------------------+
```

Note: The phone bidder's post-sale reaction is audible but not fully intelligible. Defendant reserves the right to supplement this transcript after further audio enhancement or witness testimony.

## PREPARATION CERTIFICATION

This transcript was prepared by Charles Jacob Stratmann from his personal video recording of the June 26, 2026 judicial sale. The quoted language and timestamps reflect Declarant's best listening review of the recording. Declarant certifies the transcript is accurate to the best of his knowledge and reserves the right to correct or supplement.

/s/ Charles Jacob Stratmann

_____

Charles Jacob Stratmann Pro Se Defendant and Party-in-Interest 545 NE 17th Avenue Fort Lauderdale, Florida 33301

Dated: July 13, 2026

3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
**Fort Lauderdale Division**

CASE NO. 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/V SLOW UR ROLL II, USCG Official No. 1220768,
her engines, tackle, apparel, furniture, and
appurtenances, in rem,

Defendant.

---

## PROPOSED ORDER

THIS CAUSE came before the Court upon Claimant Charles Jacob Stratmann's Reply in Support of Objection to Confirmation of Judicial Sale (DE 92), Protest of Judicial Sale (DE 97), and Motion for Disclosure of Bidder Identities and Auction Records (DE 96), and in Opposition to Plaintiff Seacoast National Bank's Response in Opposition (DE 98). The Court having reviewed the Reply, the Response, the record, and being otherwise fully advised in the premises, it is hereby **ORDERED AND ADJUDGED:**

1. The June 26, 2026 judicial sale of M/V SLOW UR ROLL II is SET ASIDE as grossly inadequate and procedurally irregular.

2. In the alternative, if the Court does not set aside the sale, confirmation of the sale is DEFERRED pending

(a) an evidentiary hearing on the bidding process, the marketing efforts, and the communication relay failure at the auction;

(b) full verification that the purchase price of $160,000.00 has been paid in full;

(c) disclosure by the United States Marshals Service, within seven (7) days of this Order, of all bidder registration records, auction logs, bid histories, audio/video recordings, and custodial records concerning the June 26, 2026 auction, including the identities and contact information of the telephone bidder and the relay individual;

1

(d) final adjudication of Claimant's pending Emergency Motion to Preserve Evidence and Hold Proceeds (DE 82); and

(e) final disposition of Claimant's appeal before the United States Court of Appeals for the Eleventh Circuit, Case No. 26-12270-G.

3. The United States Marshals Service is DIRECTED to preserve all records referenced in paragraph 2(c) in their original form pending final appellate disposition.

4. Any sale proceeds held by the United States Marshals Service or the substitute custodian shall be DEPOSITED into the Court's registry and held pending final disposition of DE 82 and the Eleventh Circuit appeal.

5. National Liquidators' request for an eight percent ($12,800.00) commission as an administrative expense is DENIED without prejudice pending further briefing and determination of whether the commission was earned under a fairly conducted sale.

6. The Clerk is DIRECTED to set this matter for an evidentiary hearing on the earliest available date.

DONE AND ORDERED in Fort Lauderdale, Florida, this ___ day of July, 2026.

_____

**WILLIAM P. DIMITROULEAS**

United States District Judge Southern District of Florida

Copies furnished to: All counsel of record Charles Jacob Stratmann, Pro Se

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

CASE NO. 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK, Plaintiff,

vs.

M/V SLOW UR ROLL II, a 2008 Everglades 350LX Express,
Official No. 1220768, HIN: RJDE0005I708,
Together with all masts, boilers, cables, engines, machinery, etc., in rem,

and

STARBOARD YACHT GROUP LLC, a Florida limited liability company,
in personam,

Defendants.

___

NOTICE OF SERVICE ON THE UNITED STATES MARSHAL'S SERVICE

Charles Jacob Stratmann ("Claimant"), pro se party-in-interest, hereby certifies under penalty of perjury that on July 8, 2026, he caused true and correct copies of the following documents to be served on the United States Marshal's Service at the following address:

United States Marshal's Service

299 East Broward Boulevard, Room 101

Fort Lauderdale, Florida 33301

Documents served:

1. Objection to Confirmation of Judicial Sale and Request for Evidentiary Hearing (DE 92); 2. Claimant's Protest of Judicial Sale and Motion to Set Aside or Defer Confirmation of the June 26, 2026 Auction of M/V Slow UR Roll II (DE 97); 3. Motion for Disclosure of Bidder Identities and Auction Records (DE 96); 4. Notice of Errata Regarding Citations in Claimant's Objection to Confirmation of Judicial Sale (DE 92) and Protest of Judicial Sale (DE 97); and 5. Reply to Plaintiff's Response in Opposition (DE 98) to Objections to Confirmation of Judicial Sale, Protest of Judicial Sale, and Motion for Disclosure of Bidder Identities.

Service was effected by hand delivery and U.S. Mail, postage prepaid, on July 8, 2026.

1

Respectfully submitted,

/s/ Charles Jacob Stratmann

_____

Charles Jacob Stratmann

Pro Se Claimant and Party-in-Interest

545 NE 17th Avenue

Fort Lauderdale, Florida 33301

Telephone: (954) 873-8546

Email: jake@starboardyacht.com

Dated: July 8, 2026

2



# PAUL R. ANSTEY, INC.
## MARINE SURVEYOR, YACHT
## DESIGNER AND CONSULTANT
1959 Nw 6th. Street,
Coconut Creek, FL 33063
(954) 270 1949
ansteypaul@gmail.com









# SURVEY AND REPORT
# "OW R ROLL II"

"SLOW UR ROLL II"                    File no:15256B                              Page 1

# Paul R. Anstey Inc.
## MARINE SURVEYOR
## YACHT DESIGNER AND CONSULTANT

4950 NW 6th Street
Coconut Creek, FL 33063
(954) 270 1949

VESSELS NAME: SLOW UR ROLL II            DATE: 5/8/2024
TYPE: Cuddy Cabin                        FILE NUMBER: 15256B
MODEL: Everglades 350 LX                 ATTENDING SURVEYOR: Ben Dodarell
SURVEY TYPE: Appraisal - Condition and Valuation

Starboard Yacht Group LLC
850 NE 3rd Street, Suite 208
Dania Beach, FL

## GENERAL
REG. NO.: 1230788                        HULL NUMBER: RJDE00051708
HAIL PORT: Fort Lauderdale, FL           REG. PORT: Fort Lauderdale, Fl
OWNER: see above

                                         SURVEYED AT: Harbortown Marina, Dania Beach ,Fl
L.O.A.: 35' 4"   L.W.L.:                 BEAM: 10' 8"
GRS.TONS:        NET TONS:   14          BALLAST: none seen
YEAR: 2008       DRAFT:   3' 5"          BUILDER: Everglades Boats
DESIGNER: Bausley                        MKT VALUE: $1,000,000
NAV LIMITS: coastal and offshore islands  REPL. VALUE: $1,350,000
USE: pleasure                            BERTH: Dania Beach, FL
CAPTAIN: owner                           LICENSE: not reported

## HULL
TOPSIDES: fiberglass                     CONDITION: good
BOTTOM: fiberglass                       CONDITION: not observed
FRAMES: partitions and bulkheads         CONDITION: good
DECKS: fiberglass                        CONDITION: good
FLOORS: fiberglass                       FASTS: fiberglass
DECK BEAMS: fiberglass                   STEM: curved
STERN: transom                           RUDDER: 3 x outboards
KEEL: fiberglass                         CENTERBOARD: none
WORM SHOE: not applicable                SKEG: fiberglass
INTERIOR: gelcoat finished liner, vinyl overhead, vinyl wall coverings, some hardwood trim
synthetic floor coverings

BULKHEADS: 2 watertight, 5 partial       BILGE: good
INSULATION: none                         SUPERSTR.: fiberglass

## SPARS AND RIGGING
MASTS: signal lights only                CONDITION: good
BOOM: 2 outriggers                       CONDITION: good
STANDING: antennas on cockpit and tower  CONDITION: good
RUNNING:                                 CONDITION: good

"SLOW UR ROLL II"                    File no:15256B                              Page 2

SMALL BOATS
TYPE:                 none                                      MATERIAL:
CONDITION:                                                     MODEL:
SERIAL:                                                        MOTOR:
MODEL:                                                         SERIAL:

FITTINGS AND EQUIPMENT
STEERING:             wheel, hydraulic system                 CONDITION: good
EMERGENCY:            none                                     DECK FITS.: s/s,chrome, aluminum
ANCHORS:             1 x Spade shape approx 40#
TACKLE:              3/9" chain, 3/4" rode
WINDLASS:            Lewmar DC electric                        WINCHES: none
RADIO:               Raymarine VHF
EPIRB:               none                                      LOG/SPEED: GPS
AUTO PILOT:          Raymarine                                 COMPASS: 2 x Ritchie
RADAR:               Raymarine Integrated
GPS:                 3 x Raymarine units                       STABILIZERS: Sea Keeper 5000 Gyro
DEPTH SOUNDER:       Raymarine integrated                                   Humphree trim tabs
OTHER:               EPIr, Gosh, outboard jack plates           STEREO: Fusion

CLOCK:               GPS integrated                            BAROMETER: none
HORN:                electric and air                          SCHLITE: none
BELL:                none seen                                 LIFERING: 1 x throw Cushion
LIFEJACKETS:         6 x adult type III                           T.V.: 2 x LG
LIFE RAFT:           none seen                                  HEADS: approved type
FLARES:              type good until 07/2026                  AIR COND.: 2 x Webasto

GALLEY
LOCATION:            starboard cabin                          TYPE STOVE: Kenyon electric BBQ
TANK LOCATION:       not applicable                           NO. OF TANKS: none
LINES:               plastic water lines only                  SHUT OFF: on bbq, on panel
MICROWAVE:           Yoshiba                                       VENT: good
FRIDG:               icebom, Frigid Rigid cooler, cold plate
HOT WATER:           not visible                                  OTHER:

MACHINERY
ENG LOC:             transom mounted                           HOURS: 165 / 150 / 159
MAKE:                Mercury Marine                          NO. & TYPE: 3 x gasoline outboards
SERIAL:                                                       MODEL: 400L
NUMBER OF CYLS.:     V8            APROX SPD:
R.P.M.:              5500                                        H.P.: 400 x 3
YEAR:                approx 2020                              RED.GEAR: lower unit internal
CONDITION:           good                                     RECOND.: not reported
ENG BEDS:            fiberglass                               BLOWER:
COOLING:             raw water                                  VENT: good
FLAME ARR:           none                                     BILGE PAN: bilge
FUEL PUMP:           electric                                 DRIP PAN: not applicable
MOUNT:               metal and plastic                        FILTERS: primary and secondary
OIL LINE:            exposed internal                         SILENCER: outboard internal
AC GENERATOR:        alternators                               COOLED: raw water
SHAFT LOG:           not applicable                          CONTROLS: electronic
COUPLERS:            blade stainless steel                   STUFF BOX: not applicable
SHAFT:               exposed internal                           SPARE: none
STRUTS:                                                      STUB SHAFT: none
AIR PROTECT:         2 x legs only                           BEARINGS: not applicable
                                                             AIR COMP: none seen

"SLOW UR ROLL II"                    File no:15256B                         Page 3

| | | | |
|---|---|---|---|
| BILGE PUMPS: | 3 x DC - forward, mid and aft | H20 MAKER: | SK Blue Gold |

**ELECTRICAL SYSTEM**

| | | | |
|---|---|---|---|
| AUX GEN: | one | HOURS: | not recorded |
| LOCATION: | aft bilge | MAKE: | Fisher Panda |
| SERIAL NUMBER: | CO2 075 019 | MODEL: | Panda 8000i |
| VOLTAGE: | 120 | VENT: | good |
| RPM: | 2800 | NO.OF CYLS: | 3 |
| ENG COOL: | fresh water | K.W.: | 6.5 |
| EXHAUST LINES: | flex hose | SOUND INS: | sound box |
| FLAME ARRESTOR: | not applicable | SILENCER: | fiberglass |
| FILTERS: | primary and secondary | FUEL PUMP: | electric |
| BATTERY CHARGER: | Victron Skylla | BOWLS: | metal and plastic |
| SWITCH PANEL: | aft cabin and helm | FUSES: | individual |
| ANTENNAS: | 3 | NAV.LIGHTS: | electric |
| BATTERIES: | 4 x 12 volt | GROUND: | zincs on outboards |

LOCATION:    below console in trays with terminal covers

**FIRE FIGHTING EQUIPMENT**

PORTABLE EXTS:    1 Dry Chemical in cab locker

DATE: in green range

FIXED IN SYSTEM:    none

DATE: none

**TANKS**

| | | | |
|---|---|---|---|
| FUEL TYPE: | gasoline and diesel | TANKS: | 2 |
| CAPACITY: | 300 gallons gasoline, 30 gallons diesel | LOCATION: | below cockpit sole, aft bilge |
| SHAPE: | rectangular and to hull | MATERIAL: | aluminum |
| CONDITION: | appears good | SECURED: | good |
| SECURED: | yes | FILLS: | flex and chrome |
| VALVES: | approved type | LOCATION: | by filters |
| ACCESS: | good | LINES: | flex and copper |
| OVERFLOW RUNS: | overboard | VENTS: | good |
| OTHER FUEL LINES: | none | | |
| WATER TANKS & | one | CAPACITY: | 30 gallons |
| LOCATION: | aft | MATERIAL: | aluminum |
| SHAPE: | rectangular and to hull | CONDITION: | good where visible |

**US GOVERNMENT REQUIREMENTS**

VESSEL COMPLIANCE:         No

This is two part report and shall not be complete without remarks and recommendations.
The above vessel shall be deemed a good fire and marine risk when all paragraphs
marked with a bullet, in the remarks section of this report, have been completed.

"SLOW UR ROLL II"                 file no.:15256B                          page 4

# PAUL R. ANSTEY, INC.
## MARINE SURVEYOR
### YACHT DESIGNER AND CONSULTANT

4959 NW 6th Street
Coconut Creek, FL 33063
(954) 270 1949

### REPORT OF SURVEY
### Remarks and recommendations

### "SLOW UR ROLL II"

file no.:15256B                                                  date. 5/8/2024

The survey report was conducted subject to the following conditions:   That it is agreed and understood that neither this corporation nor any of its directors or employees is to be held responsible in any circumstances whatsoever and in any way for any error in judgment, negligence, or default, nor for any omission, misrepresentation, misstatement or inaccuracy in the report.   The request for the survey shall be construed to be an acceptance of the above conditions.

This survey is conducted in all accessible areas, without making removals to expose parts concealed.   The surveyor uses standards laid down by the ABYC, US Coast Guard and NFPA to ascertain that vessel was constructed and has been maintained to those specifications.

The "SLOW UR ROLL II" was surveyed afloat at Harbortown Marina, Dania Beach, FL on Wednesday, May 8th 2024.

The vessel has recently received a major custom refit including new custom vinyl wrap, updated navigation electronics and custom Sea Keeper Gyro stabilization system.   All work appears to be of a good yacht quality finish.   The vessel appears very well maintained and updated an upgraded on a regular basis.

A trial run was neither requested nor conducted, therefore, no equipment was tested.   There was no indication that any equipment was in other than good working order.

"SLOW UR ROLL II"                    file no.:15256B                    page 5

INTERIOR

Inspection of the vessel was made to all accessible areas.   There are inaccessible areas behind ceilings, soles, linings, engines, tanks, batteries, etc..   All appeared to be in good condition with the following exceptions, findings and recommendations:
The fiberglass bonding of the bulkheads, partitions and engine beds was inspected, where accessible.   All appeared to be in good condition with no signs of movement or delamination.

The electrical wiring system appeared to be in good condition and to be in accordance with marine specifications.

The batteries are properly secured in trays with terminal covers.

The seacocks appear to be in generally good condition.   They should be cleaned and serviced.   Seacocks and flex sections should be inspected at regular intervals.

The bilge pumps appeared to be in working order.   They are adequate in number for a vessel of this size.

The fuel and water tanks were not full at the time of the survey; therefore, the surveyor was not able to prove them leak free.

The engines and generator were inspected, where accessible, externally.   All was found to be in good condition with no obvious signs of fuel, oil, or water leaks.

- This vessel should be fitted with a Carbon Monoxide detector.   Carbon monoxide is a deadly gas produced by gasoline internal combustion engines.   The unit should be maintained in accordance with the manufacturer's recommendations.

- The fire extinguisher should be serviced and recertified.   This should be repeated on an annual basis.

- The appropriate number of USCG approved fire extinguishers should be mounted and installed throughout the vessel according to ABYC recommendations.   They should be serviced on an annual basis.

The steering gear was inspected.   All appeared to be in good condition and to be in working order.

"SLOW UR ROLL II"                     file no.:15256B                          page 6

## DECKS AND SUPERSTRUCTURE

The decks and superstructure were inspected.   All appeared to be in good condition with the following exceptions, findings and recommendations.

The decks and superstructure were inspected visually.   No deterioration was discovered.

A lifering should be carried, adjacent to the helmsman.

Before offshore sailing a light and retrieval line should be attached to the lifering.

An up to date set of flares was noted aboard.

The pulpit and lifeails were inspected.   They all appeared to be in good condition and to be well secured to the deck.

The lifejackets were found to be in serviceable condition.   They are adequate in number for a vessel of this size.   One jacket, of the proper size, should always be carried for each person aboard.

The anchor was found to be in serviceable condition.   It is adequate in size for the vessel.

An additional anchor and rode, of similar or large size, should be carried aboard.

## TOPSIDES AND BOTTOM

The topsides and bottom were inspected from the dock only.   All appeared to be in good condition with the following exceptions, findings and recommendations:

The topsides were inspected.   They appear to be in good condition.   No deterioration was observed.

Case 0:26-cv-60289-WPD    Document 104-1    Entered on FLSD Docket 07/14/2026    Page 20 of 128

"SLOW UR ROLL II"            file no.:15256B                    page 7

This vessel was inspected afloat without making removals to expose parts concealed.   It is the opinion of the surveyor that the vessel is structurally sound and in satisfactory condition for intended service as a yacht.

This survey is based on the facts presented and discovered, based on opinion, with no warranty either specified or implied.

Signed without prejudice,

Attending surveyor: Ben Dodarell
NAMS Surveyor Associate.

Signed without prejudice:

PAUL R. ANSTEY INC.:
For The Corporation

"SLOW UR ROLL II" file no.:15256B page 8





"SLOW UR ROLL II"                    file no.:15256B                    page 9





BLOW UP ROLL 1                              file no.:15256B                                    page 10



file no.:15256B                                                    page 11





file no.:15256B

page 12





# NATIONAL LIQUIDATORS

A DIVISION OF NATIONAL YACHT SALES

### EXCLUSIVE SALES AGENT AGREEMENT - COURT-ORDERED SALE

This agreement is to engage National Liquidators (NL) to be the court ordered broker to promote the US Marshals Sale of the vessel:

### 2008 Everglades 35

### HIN: RJDE0005I708

US Marshal Sales are traditionally advertised in legal publications which are not usually viewed by potential yacht buyers. The process tends to be confusing and intimidating to potential buyers. This sales plan will enhance promotion to our extensive database, and advertise your vessel in yachting publications, websites, and social media formats. We have experienced great success in the past in promoting US Marshals Sales, educating potential bidders, facilitating showings, and improving the overall likelihood of attracting more qualified buyers at the sale.

National Liquidators (NL) will be undertaking a significant effort in promoting this event. These efforts will include:

- Premier placement on VesselArrest.com/YachtAuctions.com and numerous related websites which allow posting of 'auctions', reaching vast international visitors each month. This includes all of the sites covered by Boats Group (Yacht World)
- Vessel-specific marketing pamphlet(s), in electronic and hard copy formats, for distribution to interested parties. The pamphlets will be a compilation of the vessel's technical specifications, class certifications, recent marine survey, photographs, pertinent court order(s), and bid instructions.
- Making the vessel available through our licensed brokerage team – National's sales staff will market the vessel to its network of potential buyers (located in both the United States and abroad).
- Print and digital ads in some of the largest Media Formats ie. Wall Street Journal and Financial Times
- Extensive experience in US Marshal Sales, instructing potential buyers on terms and conditions of the courthouse sale and facilitating showing as the custodian.

NL will charge a reduced commission rate of 8 % of the gross sales price for this service. This agreement and approval for this commission will be filed with the court for approval as an administrative expense. The commission structure allows us to work with outside brokers in the event that a co-brokerage relationship occurs.



# NATIONAL LIQUIDATORS
A DIVISION OF NATIONAL YACHT SALES

It is understood that this subcommission will be paid only if there is a successful buyer at or before the US Marshal Sale to a third party, other than the plaintiff.   Should the plaintiff credit bid the yacht at the sale, no monies are owed.

The terms as outlined above are hereby agreed to and entered into:

Frank Kupa

Frank Kupa, National Liquidators

6/26/26

Date

Trina Sessoms, VP Seacoast Bank

Plaintiff
Name / Title / Company

06/26/2026

Date

Case 0:26-cv-60289-WPD   Document 115-1   Entered on FLSD Docket 07/20/2026   Page 86 of
128
Case 0:26-cv-60289-WPD   Document 86-1   Entered on FLSD Docket 06/26/2026   Page 3 of 3



## NATIONAL LIQUIDATORS
A DIVISION OF NATIONAL YACHT SALES

### International Associations & Affiliations

- Canadian Maritime Law Association
- The Institute of Chartered Shipbrokers
- International Bar Association
- Lloyds Maritime Academy
- Marine Industries Association
- Marine Money
- Maritime Law Association (USA)
- Maritime London
- National Marine Bankers Association
- National Marine Manufacturers Association
- New York Maritime Inc (NYMAR)
- Propeller Club
- Southeastern Admiralty Law Institute (SEALI)
- Lake Erie Marine Trades Association
- Port Everglades Association
- Fort Lauderdale Mariner's Club
- International Yacht Brokers Association

**U.S. Department of Justice**
**United States Marshals Service**

# PROCESS RECEIPT AND RETURN
See "*Instructions for Service of Process by U.S. Marshal*"

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| Seacoast National Bank | 26-cv-60289 |
| DEFENDANT | TYPE OF PROCESS |
| M/V Slow Ur Roll II, and Starboard Yacht Group | Notice & Sale |

|  | NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN |
|---|---|
| SERVE AT | Ft. Lauderdale Federal Courthouse MV SLOW Ur Roll II |
|  | ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code) |
|  | 299 E. Broward Blvd. Ft. Laud FL |

| SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW | |
|---|---|
|  | Number of process to be served with this Form 285 |
|  | Number of parties to be served in this case · 1 |
|  | Check for service on U.S.A |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE *(Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service):*

Sale of MV Slow Ur Roll II, 06/26/2026 at 12:00nn in Ft. Lauderdale FL, Federal Courthouse

| Signature of Attorney other Originator requesting service on behalf of: ☒ PLAINTIFF ☐ DEFENDANT | TELEPHONE NUMBER | DATE |
|---|---|---|

## SPACE FOR CHARGE, USE OF U.S. MARSHAL ONLY - DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. (Sign only for USM 285 if more than one USM 285 is submitted) | Total Process | District of Origin No. 24 | District to Serve No. 04 | Signature of Authorized USMS Deputy or Clerk | Date 06/25/2026 |
|---|---|---|---|---|---|

I hereby certify and return that I ☐ have personally served , ☐ have legal evidence of service, ☒ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc. named above *(See remarks below)*

| Name and title of individual served (if not shown above) | Date 6.26.26 | Time 12:45 ☐ am ☒ pm |
|---|---|---|
| Address (complete only different than shown above) | Signature of U.S. Marshal or Deputy | # 3586 |

| Service Fee | Total Mileage Charges | Forwarding Fee | Total Charges 65 | Advance Deposits | Amount owed to U.S. Marshal* or (Amount of Refund*) |
|---|---|---|---|---|---|
| 0.00 | | | | | |

REMARKS: Vessel sold for $150,000.00 on behalf of william wilson, wilson provided a certified check for $75,000.00 to the USMS.

Form USM 285
Rev 11/18

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

## IN ADMIRALTY

CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/Y SLOW UR ROLL II, a 2008 Everglades 350LX Express,

Official No. 1220768, HIN: RJDE00005I708,

together with all masts, boilers, cables, engines, machinery, etc.,

in rem, and

STARBOARD YACHT GROUP LLC,

a Florida limited liability company, in personam,

Defendants.

---

# EXHIBIT F

## Bates No.: SYG-107813

---

TITLE:   Court's Order Overruling Objections and Directing Confirmation Procedure

DATE:   July 14, 2026

SOURCE:   DE 107, SDFL 0:26-cv-60289-WPD

PAGES:   2

SHA-256:   e9d5c3c430dce6b5...

FILE SIZE:   156,148 bytes

RELEVANCE:

SMOKING GUN: Court's own order proves objections existed on same day Klopp denied them at DE 108

---

*Exhibit F -- SYG-107813 -- Filed with Emergency Supplemental Motion to Vacate DE 109 (Rule 60(d)(3))*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

　　　　Plaintiff,

vs.

M/V SLOW UR ROLL II, a 2008 Everglades 350LX
Express, Official No. 1220768, HIN: RJDE0005I708,
Together with all masts, boilers, cables, engines,
machinery, etc., *in rem*, and STARBOARD YACHT
GROUP LLC, a Florida limited liability company, *in
personam*,

　　　　Defendants.

_____/

## ORDER

This Cause is before the Court on the (I) Objection of Charles Jacob Stratmann's

("Stratmann") *Pro Se* Claimant and Party-in-Interest, to Confirmation of Judicial Sale and Request

for Evidentiary Hearing [DE 92], filed herein on June 30, 2026, (II) Claimant's Protest of Judicial

Sale and Motion to Set Aside or Defer Confirmation of the June 26, 2026 Auction of M/V Slow

Ur Roll II [DE 97], filed herein on July 6, 2026, and (III) Stratmann's Motion for Disclosure of

Bidder Identities and Auction Records, and for Order Preserving Such Records Pending Appellate

Review [DE 96], filed herein on July 6, 2026.

The Court has carefully reviewed the Objection [DE 92], the Motions [DEs 96, 97],

Plaintiff's Response [DE 98], Stratmann's Reply [DE 104] and supporting affidavits [DEs 103,

105], and the record as a whole, and is otherwise fully advised in the premises.

The Court agrees with Plaintiff that the objections and motions are procedurally improper and/or lacking in merit. Accordingly, for the reasons stated in Plaintiff's Response [DE 98], the Motions [DEs 96, 97] are **DENIED**; the Objection [DE 92] is **OVERRULED**. The request for an evidentiary hearing is **DENIED**.

To the extent Plaintiff seeks confirmation of the judicial sale, Plaintiff shall file a motion for confirmation of judicial sale in the record, along with a proposed order emailed to Chambers.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 14th day of July, 2026.

WILLIAM P. DIMITRI LEAS
United States District Judge

Copies to

Counsel of record

Charles Jacob Stratmann
545 NE 17th Avenue
Fort Lauderdale, FL 33301

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

## IN ADMIRALTY

CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/Y SLOW UR ROLL II, a 2008 Everglades 350LX Express,
Official No. 1220768, HIN: RJDE0005I708,
together with all masts, boilers, cables, engines, machinery, etc.,
in rem, and

STARBOARD YACHT GROUP LLC,
a Florida limited liability company, in personam,
Defendants.

---

# EXHIBIT G

## Bates No.: SYG-107804

---

TITLE:   Motion for Confirmation of Sale with False Statement 'No Objections on File'
DATE:   July 14, 2026
SOURCE:   DE 108, SDFL 0:26-cv-60289-WPD
PAGES:   2
SHA-256:   0aef7a04b4626259...
FILE SIZE:   522,058 bytes

---

RELEVANCE:

Contains the false statement 'no objections on file' -- the fraud on the court instrument

---

*Exhibit G - SYG-107804 - Filed with Emergency Supplemental Motion to Vacate DE 109 (Rule 60(d)(3))*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

IN ADMIRALTY
CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

vs.

M/Y SLOW UR ROLL II, a 2008 Everglades 350LX
Express, Official No. 1220768, HIN: RJDE0005I708
Together with all masts, boilers, cables, engines, machinery,
etc., *in rem*, and STARBOARD YACHT GROUP LLC, a
Florida limited liability company, *in personam*,

Defendants.

_____/

## MOTION FOR CONFIRMATION OF SALE

Plaintiff, by and through its undersigned attorney certifies the following:

(1) *Date of Sale.* In accordance with the Court's Default Final Judgment Against Defendants M/Y Slow Ur Roll II and Starboard Yacht Group LLC [DE 70], ordering the sale of the Defendant vessel, Plaintiff represents that the sale of M/Y Slow Ur Roll II, a 2008 Everglades 350LX Express, Official No. 1220768, HIN: RJDE0005I708, together with all masts, boilers, cables, engines, machinery, etc., was conducted by the U.S. Marshal on June 26, 2026. William Wilson was the winning bidder for a bid of $160,000.00. [DE 87.]

(2) *Last Day for Filing Objections.* Pursuant to Local Admiralty Rule E(17)(a)(i), the last day for filing objections to the sale was July 6, 2026.

(3) *Survey of Court Records.* Plaintiff has surveyed the docket and records of this case, and has confirmed that as of July 14, 2026, there were no objections to the sale on

1

file with the Clerk of Court which have not already been overruled by the Court. [DE 107.]

THEREFORE, in light of the facts presented above and pursuant to Local Admiralty Rule E(17)(f), Plaintiff requests the Clerk of the Court to enter a Confirmation of Sale and to transmit the confirmation to the Marshal for processing.

Dated: July 14, 2026

Respectfully submitted,

/s/ Amanda Klopp
Amanda Klopp, Esq.
Florida Bar Number: 124156
amanda.klopp@akerman.com
Jenna M. Yoss, Esq.
Florida Bar Number: 1049858
jenna.yoss@akerman.com
**AKERMAN LLP**
777 S. Flagler Dr., Ste 1100 - West Tower
West Palm Beach, FL 33401
Tel: (561) 653-5000 /Fax: (561) 659-6313
*Attorneys for Seacoast National Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served the same day via transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case, and via US Mail and email to those listed below.

Starboard Yacht Group LLC
543 NE 17th Ave.
Ft Lauderdale, FL 33301

National Liquidators
800 Old Griffin Rd
Dania Beach, FL 33004

/s/ Amanda Klopp
Amanda Klopp, Esq.

2

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

## IN ADMIRALTY

CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/Y SLOW UR ROLL II, a 2008 Everglades 350LX Express,
Official No. 1220768, HIN: RJDE0005I708,
together with all masts, boilers, cables, engines, machinery, etc.,
in rem, and

STARBOARD YACHT GROUP LLC,
a Florida limited liability company, in personam,

Defendants.

---

# EXHIBIT H

## Bates No.: SYG-107805

---

TITLE:    Unsigned Proposed Order for Judge Dimitrouleas (Blank Date/Signature)

DATE:    July 14, 2026

SOURCE:    DE 108-2, SDFL 0:26-cv-60289-WPD

PAGES:    2

SHA-256:    e1a29d6ae5b529df...

FILE SIZE:    331,344 bytes

---

RELEVANCE:

Pathway B instrument — pre-signed order presented to court with false statement

---

*Exhibit H — SYG-107805 — Filed with Emergency Supplemental Motion to Vacate DE 109 (Rule 60(d)(3))*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

IN ADMIRALTY
CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

        Plaintiff,

vs.

M/Y SLOW UR ROLL II, a 2008 Everglades 350LX
Express, Official No. 1220768, HIN: RJDE0005I708
Together with all masts, boilers, cables, engines, machinery,
etc., *in rem*, and STARBOARD YACHT GROUP LLC, a
Florida limited liability company, *in personam*,

        Defendants.

_____/

### ORDER GRANTING PLAINTIFF SEACOAST NATIONAL BANK'S MOTION FOR CONFIRMATION OF SALE

THIS CAUSE is before the Court on Plaintiff Seacoast National Bank's Motion for

Confirmation of Sale, filed July 14, 2026. [DE 108.] The Court has carefully considered the Motion

[DE 108], notes the records in this action indicate that no objection has been filed to the sale of

property conducted by the United States Marshal on June 26, 2026, other than the objection already

overruled [DE 107], and is otherwise fully advised in the premises.

Accordingly, it is ORDERED AND ADJUDGED as follows:

1.      The Motion [DE 108] is GRANTED;

2.      The Court hereby DIRECTS THE CLERK to enter the Clerk's Confirmation of

Sale, *see* [DE 108-1] and to transmit the confirmation to the Marshal for processing.

The Clerk shall MAIL a copy of this Order to Starboard Yacht Group LLC and

National Liquidators at the addresses below.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this

_____, 2026.

_____
WILLIAM P. DIMITROULEAS
United States District Judge

Copies to:

Counsel of Record

Starboard Yacht Group LLC
545 NE 17th Ave.
Ft. Lauderdale, FL 33301

National Liquidators
800 Old Griffin Rd
Dania Beach, FL 33004

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

## IN ADMIRALTY

CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/Y SLOW UR ROLL II, a 2008 Everglades 350LX Express,

Official No. 1220768, HIN: RJDE0005I708,

together with all masts, boilers, cables, engines, machinery, etc.,

in rem, and

STARBOARD YACHT GROUP LLC,

a Florida limited liability company, in personam,

Defendants.

---

# EXHIBIT I

## Bates No.: SYG-107806

---

TITLE:   Clerk's Confirmation of Sale

DATE:   July 15, 2026

SOURCE:   DE 109, SDFL 0:26-cv-60289-WPD

PAGES:   1

SHA-256:   f32d6ec722d51faa...

FILE SIZE:   152,506 bytes

---

RELEVANCE:

Clerk's confirmation issued based on false statement -- the fruit of the fraud

---

*Exhibit I -- SYG-107806 -- Filed with Emergency Supplemental Motion to Vacate DE 109 (Rule 60(d)(3))*

Case 0:26-cv-60289-WPD   Document 109   Entered on FLSD Docket 07/15/2026   Page 1 of 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### IN ADMIRALTY

### CLERK'S CONFIRMATION OF SALE

CASE NO. **26-CIV-60289-WPD**

Seacoast National Bank

       Plaintiff(s),

v.

M/Y Slow UR Roll, II et al.

       Defendant(s).
_____/

The records in this action indicate that no objection has been filed to the sale of property conducted by the U.S. Marshal on _____**June 26, 2026**_____.

THEREFORE, in accordance with Local Admiralty Rule E(17)(f), the sale shall stand confirmed as of _____June 26, 2026_____.

DONE at ___West Palm Beach___, Florida, this the **15th**, day of _____**July**_____,**26**.

ANGELA E. NOBLE
Clerk of Court

By: _____*Lisa J. Streets*_____
     Deputy Clerk

cc:    U.S. Marshal (2 certified copies)
       Counsel of record

Print | Reset

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

## IN ADMIRALTY

CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/Y SLOW UR ROLL II, a 2008 Everglades 350LX Express,

Official No. 1220768, HIN: RJDE0005I708,

together with all masts, boilers, cables, engines, machinery, etc.,

in rem, and

STARBOARD YACHT GROUP LLC,

a Florida limited liability company, in personam,

Defendants.

---

# EXHIBIT J

Bates No.: SYG-107801

---

TITLE: Order Approving Employment of Bankruptcy Counsel -- Klopp as DIP Counsel

DATE: July 22, 2024

SOURCE: BK ECF No. 57, Case No. 24-15755-LMI

PAGES: 2

SHA-256: b235bef065f13d92...

FILE SIZE: 396,269 bytes

---

RELEVANCE:

Establishes Klopp's undisclosed DIP conflict -- motive for false statement

---

*Exhibit J -- SYG-107801 -- Filed with Emergency Supplemental Motion to Vacate DE 109 (Rule 60(d)(3))*



ORDERED in the Southern District of Florida on July 19, 2024.

Laurel M. Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case No. 24-15755-LMI |
| IVANKOVICH FAMILY LLC | (Jointly Administered) |
| A&O FAMILY LLC, | 24-15762- LMI |
| A&O FAMILY LLC (Illinois), | 24-15767- LMI |
| ATLAS P2 MANAGING MEMBER, LLC, | 24-15770- LMI |
| Debtors. | |

_____/

### ORDER APPROVING DEBTORS' APPLICATION TO EMPLOY EYAL BERGER, ESQ., AMANDA KLOPP, ESQ., AND THE LAW FIRM OF AKERMAN, LLP AS GENERAL BANKRUPTCY COUNSEL FOR THE DEBTOR-IN-POSSESSION EFFECTIVE JUNE 17, 2024

THIS CAUSE came before the Court for hearing on July 12, 2024 at 11:00 a.m. (the "Hearing") upon the above styled Debtors' *Application for Approval of Employment of Eyal Berger, Esq., Amanda Klopp, Esq., and the law firm of Akerman LLP Effective June 17, 2024* (ECF No. 23) (the "Application"). Upon the representations in the Berger Declaration that Eyal Berger, Esq. and Amanda Klopp, Esq. are duly admitted to practice in this court, Eyal Berger, Esq.,

Amanda Klopp, Esq., and Akerman LLP (hereafter, the **"Firm"**) hold no undisclosed interest adverse to the estate in the matters upon which they are engaged, that Eyal Berger, Amanda Klopp and the Firm are disinterested persons as required under 11 U.S.C. § 327, and have disclosed any connections with parties set forth in FRBP 2014, and that their employment is necessary and would be in the best interest of the estates, it is

ORDERED that the Debtors are authorized to retain Eyal Berger, Amanda Klopp and Akerman LLP as general bankruptcy counsel on a general retainer, pursuant to 11 U.S.C. §§ 327 and 330, effective June 17, 2024 upon the engagement terms detailed in the Akerman Engagement Letter.[1]

### # # #

Submitted by:

Eyal Berger, Esq.
AKERMAN LLP
*Proposed Counsel for Debtors*
201 East Las Olas Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Tel: 954-463-2700
Fax: 954-463-2224
Email: eyal.berger@akerman.com

Eyal Berger is directed to serve copies of this Order upon all interested parties and to file a certificate of service with the Court.

---

[1] All capitalized terms shall have the same meaning as defined in the Application unless otherwise defined herein.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

## IN ADMIRALTY

CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/Y SLOW UR ROLL II, a 2008 Everglades 350LX Express,

Official No. 1220768, HIN: RJDE0005I708,

together with all masts, boilers, cables, engines, machinery, etc.,

in rem, and

STARBOARD YACHT GROUP LLC,

a Florida limited liability company, in personam,

Defendants.

---

# EXHIBIT K

Bates No.: SYG-107802

---

TITLE:   CMR Docket -- Seacoast v. Contessa Marine Research LLC (Differential Treatment)

DATE:   2025-2026

SOURCE:   SDFL 1:25-cv-25958-DPG

PAGES:   6

SHA-256:   b4a4214918e90d1c...

FILE SIZE:   2,249,574 bytes

---

RELEVANCE:

Shows Seacoast/CMR got default set aside + jury trial -- differential treatment proves motive

---

*Exhibit K -- SYG-107802 -- Filed with Emergency Supplemental Motion to Vacate DE 109 (Rule 60(d)(3))*

D

# U.S. District Court
## Southern District of Florida (Miami)
### CIVIL DOCKET FOR CASE #: 1:25-cv-25958-DPG

Seacoast National Bank v. Contessa Marine Research, LLC et al
Assigned to: Judge Darrin P. Gayles
Referred to: Magistrate Judge Detra Shaw-Wilder
Cause: 28:1333 Admiralty

Date Filed: 12/17/2025
Jury Demand: None
Nature of Suit: 120 Contra
Jurisdiction: Federal Quest

## Plaintiff

**Seacoast National Bank**

represented by **Robert Dewitt McIntosh**
McIntosh Schwartz, P.L.
888 SE 3rd Avenue
Suite 500
Fort Lauderdale, FL 3333:
954-660-9888
Fax: 954-760-9531
Email: rmcintosh@fowler·
*ATTORNEY TO BE NOTI(*

**Adam B. Cooke**
Fowler White Burnett, P.A
200 East Las Olas Bouleva
Suite 2000 - PH B
Fort Lauderdale, FL 33301
954-377-8118
Fax: 954-377-8100
Email: acooke@fowler-wl
*ATTORNEY TO BE NOTI(*

V.

## Defendant

**Contessa Marine Research, LLC**
1000 Brickell Avenue, Suite 715,
Miami, Fl 33131-3013

represented by **Brooke Linne' Bishop**
Perry Maritime Law Grou
1650 SE 17th Street

Suite 200
Fort Lauderdale, FL 3331(
9542942352
Email: brooke2bishop@g
*ATTORNEY TO BE NOTI(*

**Defendant**

**Anthony IVANOVICH**
*In Personam*

represented by **Brooke Linne' Bishop**
(See above for address)
*ATTORNEY TO BE NOTI(*

| Date Filed | # | Select all / clear | Docket Text |
|---|---|---|---|
| 06/09/2026 | 29 | | PAPERLESS ORDER granting 28 Defendants' Motion for Extension of Time to File I July 8, 2026, Defendants shall file their Fact Witness List. Signed by Judge Darrin P. ( (Entered: 06/09/2026) |
| 06/08/2026 | 28 | ☐ 426.1 KB | MOTION for Extension of Time to File Fact Witness List by Contessa Marine Resear( IVANOVICH. Responses due by 6/22/2026. (Attachments: # 1 Text of Proposed Orde for Extension of Time)(Bishop, Brooke) (Entered: 06/08/2026) |
| | | ☐ 0 | Main Document | 3 pages | 239.2 KB |
| | | ☐ 1 | Text of Proposed Order Granting Defendants' Motion for Extension of Time | 1 page | 186.8 KB |
| 06/08/2026 | 27 | ☐ 161.8 KB | Witness List by Seacoast National Bank.. (Cooke, Adam) (Entered: 06/08/2026) |
| 05/04/2026 | 26 | ☐ 141.5 KB | Plaintiff's NOTICE of Mediator Selection and Hearing. Selected/Added David McCre Hearing set for 07/14/2026 at 10:00 a.m.. (Cooke, Adam) (Entered: 05/04/2026) |
| 04/28/2026 | 25 | | PAPERLESS ORDER granting 24 Unopposed Motion for Brief Extension of Time to Selection and Schedule Mediation. On or before May 4, 2026, the Parties shall select ε date, and place for mediation. Signed by Judge Darrin P. Gayles on 4/28/2026. (ia00) ( |
| 04/27/2026 | 24 | ☐ 171.8 KB | Unopposed MOTION for Extension of Time Brief Extension of Time to File Notice ο Schedule Mediation by Seacoast National Bank. Responses due by 5/11/2026. (Cooke |

| 04/20/2026 | 23 | ☐ 198.8 KB | ANSWER and Affirmative Defenses to Complaint by Anthony IVANOVICH. Attorne to party Anthony IVANOVICH(pty:dft). (Bishop, Brooke) (Entered: 04/20/2026) |
|---|---|---|---|
| 03/20/2026 | 22 | ☐ 169.4 KB | Certificate of Other Affiliates/Corporate Disclosure Statement - NONE disclosed by C (Bishop, Brooke) (Entered: 03/20/2026) |
| 03/20/2026 | 21 | | Clerk's Notice to Filer re 20 Certificate of Other Affiliates/Corporate Disclosure Statem Affiliates/Corporate **Parents Not Entered**; ERROR - The Filer failed to enter all Otl from the Certificate of Other Affiliates/Corporate Disclosure Statement. Filer is instruc Other Affiliates/Corporate Disclosure Statement and enter the missing Other Affiliates Affiliates/Corporate Parents do not appear on the docket sheet. (gqa) (Entered: 03/20/2 |
| 03/19/2026 | 20 | ☐ 138.9 KB | Defendant's Certificate of Other Affiliates/Corporate Disclosure Statement by Contess (Bishop, Brooke) (Entered: 03/19/2026) |
| 03/13/2026 | 19 | ☐ 178.5 KB | Plaintiff's Certificate of Other Affiliates/Corporate Disclosure Statement by Seacoast N Corporate Parent Seacoast Banking Corporation of Florida for Seacoast National Bank 03/13/2026) |
| 03/13/2026 | 18 | ☐ 131.7 KB | NOTICE of Attorney Appearance by Robert Dewitt McIntosh on behalf of Seacoast N Dewitt McIntosh added to party Seacoast National Bank(pty:pla). (McIntosh, Robert) |
| 03/13/2026 | 17 | | Clerk's Notice to Filer re 14 Certificate of Other Affiliates/Corporate Disclosure Statem Affiliates/Corporate **Parents Not Entered**; ERROR - The Filer failed to enter all Otl from the Certificate of Other Affiliates/Corporate Disclosure Statement. Filer is instruc Other Affiliates/Corporate Disclosure Statement and enter the missing Other Affiliates Affiliates/Corporate Parents do not appear on the docket sheet. (Robert D. McIntosh, I 03/13/2026) |
| 03/12/2026 | 16 | ☐ 244.3 KB | SCHEDULING ORDER SETTING CIVIL TRIAL DATE AND PRETRIAL SCHEDU MEDIATION, AND REFERRING CERTAIN MOTIONS TO MAGISTRATE JUDGI Miami Division before Judge Darrin P. Gayles., Telephonic Calendar Call set for 3/3/2 Darrin P. Gayles., Telephonic Status Conference set for 12/16/2026 at 10:00 AM befor REFERRING CASE to Mediation. ( Mediation Deadline 12/8/2026.), REFERRING C Shaw Wilder for Discovery Matters. Signed by Judge Darrin P. Gayles on 3/12/2026. details. (gqa) <br><br> Pattern Jury Instruction **Builder - To access the latest, up to date changes to the 11t** Instructions go to https://pji.ca11.uscourts.gov or click here. (Entered: 03/13/2026) |
| 03/12/2026 | 15 | ☐ 386.9 KB | Joint SCHEDULING REPORT - **Rule 16.1** by Seacoast National Bank (Attachments: Proposed Scheduling Order)(Cooke, Adam) (Entered: 03/12/2026) |

| | | | | |
|---|---|---|---|---|
| | | | 0 Main Document | 4 pages 171.6 KB |
| | | | 1 Text of Proposed Order Proposed Scheduling Order | 3 pages 215.2 KB |
| 03/12/2026 | 14 | 177.9 KB | Plaintiff's Certificate of Other Affiliates/Corporate Disclosure Statement by Seacoast I Corporate Parent Seacoast Banking Corporation of Florida for Seacoast National Banl 03/12/2026) | |
| 02/20/2026 | 13 | 254.1 KB | WAIVER OF SERVICE Returned Executed by Seacoast National Bank. Anthony IVA 2/17/2026, response/answer due 4/20/2026. (Cooke, Adam) (Entered: 02/20/2026) | |
| 02/20/2026 | 12 | 209.0 KB | PAPERLESS ORDER REQUIRING JOINT SCHEDULING REPORT AND PROPOS Pursuant to S.D. Fla. Local Rule 16.1, on or before **March 12, 2026**, the parties shall j Scheduling Report, as well as Certificates of Interested Parties and Corporate Disclosu The parties shall also file a Proposed Scheduling Order, adhering to the format and gu the parties deviate in any way from that format and guidance, they **shall** contemporan explanation, which provides their purported justification for each and every deviation. *such written explanation, the Court may enter a Scheduling Order that does not tak proposed dates.* Failure to comply with this Order shall be grounds for dismissal without prejudice and by Judge Darrin P. Gayles on 2/20/2026. (skz) (Entered: 02/20/2026) | |
| 02/19/2026 | 11 | 163.0 KB | ANSWER and Affirmative Defenses to Complaint by Contessa Marine Research, LLC 02/19/2026) | |
| 02/12/2026 | | | Set/Reset Response/Answer Due Deadline: Contessa Marine Research, LLC response 10 . (wce) (Entered: 02/12/2026) | |
| 02/12/2026 | 10 | | PAPERLESS ORDER granting 9 Defendant Contessa Marine Research LLC's ("Cont Motion to Set Aside Default and Motion for Extension of Time. The 7 Clerk's Default, shall be vacated. On or before February 19, 2026, Defendant Contessa Marine shall fil Signed by Judge Darrin P. Gayles on 2/12/2026. (skz) (Entered: 02/12/2026) | |
| 02/11/2026 | 9 | 363.1 KB | Unopposed MOTION to Set Aside Default *AND FOR AN EXTENSION OF TIME TO* by Contessa Marine Research, LLC. Responses due by 2/25/2026. (Attachments: # 1 PROPOSED ORDER)(Bishop, Brooke) (Entered: 02/11/2026) | |
| | | | 0 Main Document | 7 pages 242.0 KB |
| | | | 1 Text of Proposed Order PROPOSED ORDER | 1 page 121.1 KB |

| Date | # |  | Description |
|---|---|---|---|
| 02/11/2026 | 8 | 151.0 KB | NOTICE of Attorney Appearance by Brooke Linne' Bishop on behalf of Contessa Mai Brooke Linne' Bishop added to party Contessa Marine Research, LLC(pty:dft). (Bisho 02/11/2026) |
| 01/14/2026 | 7 | 4.2 KB | VACATED Clerk's Entry of Default as to Contessa Marine Research, LLC - Motions Entry of Default Signed by DEPUTY CLERK on 1/14/2026. (cqs) Modified Text per (Entered: 01/14/2026) |
| 01/13/2026 | 6 | 151.2 KB | MOTION for Clerk's Entry of Default as to Contessa Marine Research, LLC by Seaco Adam) (Entered: 01/13/2026) |
| 01/09/2026 | 5 | 1.1 MB | SUMMONS (Affidavit) Returned Executed on 1 Complaint, with a 21 day response/a to Fed. R. Civ. P. 12 by Seacoast National Bank. Contessa Marine Research, LLC serv response/answer due 1/9/2026. (Cooke, Adam) (Entered: 01/09/2026) |
| 12/18/2025 | 4 |  | NOTICE OF COURT PRACTICE. Unless otherwise specified by the Court, every mo Times New Roman 12-point typeface. **Multiple Plaintiffs or Defendants shall file jo** unless there are clear **conflicts of position.** If conflicts of position exist, the parties s separate motions. Failure to comply with **ANY** of these procedures may result in the ii sanctions including, but not limited to, the striking of the motion or dismissal of this a Gayles on 12/18/2025. (skz) (Entered: 12/18/2025) |
| 12/18/2025 | 3 | 594.4 KB | Summons Issued as to Contessa Marine Research, LLC, Anthony IVANOVICH. (gqa) |
| 12/17/2025 | 2 |  | Clerk's Notice of Judge Assignment to Judge Darrin P. Gayles. Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Juc available to handle any or all proceedings in this case. If agreed, parties should comple found on our website. It is not necessary to file a document indicating lack of consent. |
| 12/17/2025 | 1 | 21.0 MB | COMPLAINT against All Defendants. Filing fees $ 405.00. Pay.gov Agency Tracking 19053523, payment transferred from : 1:25-cv-25957 Seacoast National Bank v. Cont al, filed by Seacoast National Bank. (Attachments: # 1 Exhibit Exhibits, # 2 Civil Cov Summon(s) Contessa Marine Research, # 4 Summon(s) Anthony Ivanovich)(Cooke, A |

| | | |
|---|---|---|
| 0 Main Document | 5 pages | 177.1 KB |
| 1 Exhibit Exhibits | 28 pages | 17.2 MB |
| 2 Civil Cover Sheet Civil Cover Sheet | 2 pages | 2.0 MB |
| 3 Summon(s) Contessa Marine Research | 2 pages | 793.3 KB |
| 4 Summon(s) Anthony Ivanovich | 2 pages | 790.6 KB |

View Selected

or

Download Selected

Total filesize of selected documents (MB):  0

Maximum filesize allowed: 10 MB

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/23/2026 13:58:11 | | | |
| PACER Login: | mvalcourt86 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:25-cv-25958-DPG |
| Billable Pages: | 4 | Cost: | 0.40 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

IN ADMIRALTY

CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/Y SLOW UR ROLL II, a 2008 Everglades 350LX Express,
Official No. 1220768, HIN: RJDE0005I708,
together with all masts, boilers, cables, engines, machinery, etc.,
in rem, and
STARBOARD YACHT GROUP LLC,
a Florida limited liability company, in personam,
Defendants.

## EXHIBIT L

Bates No.: SYG-107807

TITLE:   Seacoast Acceleration Letter to Stratmann (One-Day Gap Evidence)
DATE:   December 18, 2025
SOURCE:   External evidence hub
PAGES:   2
SHA-256:   42c0fb331514e72c...
FILE SIZE:   1,287,216 bytes

RELEVANCE:

One-day gap: CMR filed 12/17, acceleration 12/18 -- proves coordinated delay-and-accelerate

*Exhibit L -- SYG-107807 -- Filed with Emergency Supplemental Motion to Vacate DE 109 (Rule 60(d)(3))*

# akerman

Amanda Klopp

Akerman LLP
777 South Flagler Drive
Suite 1100 West Tower
West Palm Beach, FL 33401

T: 561 653 5000
F: 561 659 6313
DirF: 561 651 1589
amanda.klopp@akerman.com

December 18, 2025

**VIA CERTIFIED MAIL AND REGULAR MAIL**

Starboard Yacht Group LLC
850 NE 3rd St., Ste. 208
Dania Beach, FL 33004

Charles J. Stratmann
545 NE 17th Ave.
Fort Lauderdale, FL 33301

Re:   Loan of $176,503.10 ("Loan") from Seacoast National Bank ("Lender" or "Seacoast") to Starboard Yacht Group LLC ("Borrower"), as evidenced by the Promissory Note dated July 17, 2020 ("Note"), secured by a Commercial Guaranty ("Guaranty") from Charles J. Stratmann ("Guarantor") and a First Preferred Ship Mortgage ("Mortgage") granted by Borrower as Owner of the vessel, Slow Ur Roll II, a 2008 Everglades 350LX Express, Official No. 1220768, Hull ID RJDE005I708 ("Vessel"), including any and all related security documents (the Note, Guaranty, Mortgage, and related security documents are collectively the "Loan Documents")

Dear Borrower and Guarantor:

Please be advised that this firm represents Lender in relation to the above-referenced Loan, and the Loan has been transferred to us for handling.

Due to Borrower's failure to make monthly payments on the Loan when due, including the monthly payments that were due on October 17, 2025, November 17, 2025, and December 17, 2025, Borrower is in default under the terms of the Loan. As a result, Lender hereby accelerates the Note and demands payment of the Note in full.

The balance due on the Loan as of December 18, 2025 is $143,054.75 in principal and $937.63 in interest, for a total of $143,992.38, plus attorneys' fees and costs which have accrued and continue to accrue (the "Balance Due"). The per diem interest due after December 18, 2025 is approximately $16.66 based on the regular interest rate of 4.250%. Please contact the undersigned for the total legal fees and costs due as of the date you intend to pay off the Loan. Your payment must be in the form of a certified check made payable to Seacoast National Bank, mailed to Seacoast National Bank, Attn: Jonathan Taylor, 50 SE Kindred St., Ste. 203, Stuart, FL 34994, and reference Loan Number 4000846326-1 in connection with the payment, or by wire pursuant to the wire instructions attached hereto. Payment should not be sent to any other individual, department or location. If partial payment is received by Lender, it will be treated as partial

December 18, 2025
Page 2

satisfaction of the amounts past due, but will not be sufficient to release Borrower or Guarantor from their obligations to pay the Balance Due.

Moreover, by this letter and pursuant to the terms of the Guaranty, Guarantor is notified of the demand upon Borrower to repay the Loan in full, and Lender hereby demands the Balance Due from Guarantor in accordance with this letter.

If the entire outstanding balance due on the Loan is not paid to Lender within 10 days of this letter, Lender without further notice may elect to pursue its remedies under the Loan Documents, including but not limited to, enforcement of the Note, Guaranty, and foreclosure of the Mortgage.

In addition, while the Loan remains **outstanding and due, Lender demands that** Borrower immediately make the Vessel **available for inspection under the Mortgage.** *See* Mortgage, Article 1, Section 9. Please contact the undersigned by telephone at (561) 653-5000 or by email at amanda.klopp@akerman.com to arrange for the prompt inspection of the Vessel.

Lender reserves the right to exercise any and all of its rights and remedies under the Loan Documents, and in law and equity. For the avoidance of doubt, Lender has not consented to accept the Vessel as full or partial satisfaction of your obligations under the Loan. The acceptance by Lender of any future payments on the Loan, to the extent that the Balance Due on the Loan is not timely paid in full as set forth above, shall not constitute a waiver by Lender of any defaults under the Note, and other Loan Documents executed in connection with the Loan. The foregoing demand also is made without waiving any of Lender's other default rights and remedies available under the Note or the other Loan Documents and under applicable law, all of which rights and remedies are hereby reserved by Lender.

For the avoidance of doubt, to the extent you have received or receive any other correspondence that is inconsistent with this letter, this letter supersedes all such correspondence. We look forward to your prompt and timely response to this demand and full payment of the Loan as set forth above in order to avoid further action.

Sincerely,

AKERMAN LLP

*/s/ Amanda Klopp*
Amanda Klopp

cc:   Brandon Taylor

UNITED STATES **DISTRICT COURT**

SOUTHERN **DISTRICT OF FLORIDA**

FORT **LAUDERDALE DIVISION**

IN ADMIRALTY

CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/Y SLOW UR ROLL II, a 2008 Everglades 350LX Express,

Official No. 1220768, HIN: RJDE0005I708,

together with all masts, boilers, cables, engines, machinery, etc.,

in rem, and

STARBOARD YACHT GROUP LLC,

a Florida limited liability company, in personam,

Defendants.

---

# EXHIBIT M

Bates No.: SYG-107808

TITLE:   Fiore Extension Motion (Coordinated Timing)

DATE:   July 13, 2026

SOURCE:   11th Cir. 26-12270-G

PAGES:   3

SHA-256:   70d5158d3d3570b...

FILE SIZE:   10,561 bytes

---

RELEVANCE:

Fiore extension + Klopp same-day filing -- coordinated timing evidence

---

*Exhibit M -- SYG-107808 -- Filed with Emergency Supplemental Motion to Vacate DE 109 (Rule 60(d)(3))*

# IN THE UNITED STATES COURT OF APPEALS
## ELEVENTH CIRCUIT

### No. 26-12270-G
United States District Court, Southern District of Florida
District Court Docket No.:  0:26-cv-60289-WPD

## CHARLES JACOB STRATMANN

Appellant,

v.

## SEACOAST NATIONAL BANK

Appellee.

## APPELLEE'S MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO APPELLANT'S EMERGENCY MOTION FOR STAY OF CONFIRMATION OF JUDICIAL SALE AND FOR INJUNCTION PENDING APPEAL

KRISTEN M. FIORE, BCS (25766)
AKERMAN LLP
201 East Park Avenue, Suite 300
Tallahassee, Florida  32301
Telephone:  (850) 224-9634
Facsimile:  (850) 222-0103
kristen.fiore@akerman.com

Attorneys for Appellee

## APPELLEE'S MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO APPELLANT'S EMERGENCY MOTION FOR STAY OF CONFIRMATION OF JUDICIAL SALE AND FOR INJUNCTION PENDING APPEAL

Pursuant to Federal Rule of Appellate Procedure 27(a)(1) and Eleventh Circuit Rule 26-1, Appellee Seacoast National Bank ("Seacoast") moves for an extension of time to file response to Appellant's Emergency Motion for Stay of Confirmation of Judicial Sale and for Injunction Pending Appeal (Doc. 3-1) (the "Response"), and states:

The Response is due July 13, 2026. *See* FRAP 27(a)(3). Due to events related to the undersigned's unexpected home displacement due to a leak and extended time caring for her son after his shoulder surgery, Seacoast moves for a 4-day extension of time within which to serve the Response to allow the undersigned to adequately come up to speed in this appeal and prepare a sufficient Response.

Seacoast does not request this extension for purposes of delay.

WHEREFORE, Seacoast respectfully requests that the Court extend the time for the filing of the Response to and including July 17, 2026.

## CERTIFICATE OF CONSULTATION

Consultation under 11th Cir. Rule 26-1 is required because Appellant is pro se

USCA Case No. 26-12270
*Charles Stratmann v. Seacoast National Bank*

Respectfully submitted,

/s/ Kristen M. Fiore
KRISTEN M. FIORE, BCS (25766)
AKERMAN LLP
201 East Park Avenue, Suite 300
Tallahassee, Florida 32301
Telephone: (850) 224-9634
Fax: (850) 222-0103
kristen.fiore@akerman.com

Counsel for Appellee

2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

### IN ADMIRALTY

CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

Plaintiff,

v.

M/Y SLOW UR ROLL II, a 2008 Everglades 350LX Express,

Official No. 1220768, HIN: RJDE0005I708,

together with all masts, boilers, cables, engines, machinery, etc.,

in rem, and

STARBOARD YACHT GROUP LLC,

a Florida limited liability company, in personam,

Defendants.

---

## EXHIBIT N

Bates No.: SYG-107813

---

TITLE:   S.D. Fla. Local Admiralty Rule E(17)(f) and (g) -- Confirmation and Objection Procedures

DATE:   2025

SOURCE:   flsd.uscourts.gov -- S.D. Fla. Local Rules 2025, pages 99-100

PAGES:   2

SHA-256:   0f3cc2c409ba88e...

FILE SIZE:   597,685 bytes

---

RELEVANCE:

Governing procedural rules for confirmation of sale and objection procedures in admiralty cases

---

*Exhibit SYG-107813 -- Filed with Emergency Supplemental Motion to Vacate DE 109 (Rule 60(d)(3))*

property be released pursuant to a judgment or dismissal, until fourteen (14) days after the entry of the judgment or order of dismissal.

(b)     *Stays Beyond the Fourteen Day Period.* If within the fourteen (14) day period established by Federal Rule of Civil Procedure 62(a), a party files any of the motions contemplated in Federal Rule of Civil Procedure 62(b), or a notice of appeal, then unless otherwise ordered by the Court, a further stay shall exist for a period not to exceed thirty (30) days from the entry of the judgment or order. The purpose of this additional stay is to permit the Court to consider an application for the establishment of a supersedeas bond and to order the date upon which the bond shall be filed with the Court.

(16)  Notice of Sale.

(a)     *Publication of Notice.* In an action in rem or quasi in rem, and except in suits on behalf of the United States of America where other notice is prescribed by statute, the Marshal shall publish notice in any of the newspapers approved pursuant to Local Admiralty Rule A(7).

(b)     *Duration of Publication.* Unless otherwise ordered by the Court, applicable Supplemental Rule, or Local Admiralty Rule, publication of the notice of sale shall be made at least twice; the first publication shall be at least fourteen (14) days prior to the date of the sale, and the second at least seven (7) days prior to the date of the sale.

(17)  Sale of a Vessel or Property.

(a)     *Payment of the Purchase Price.* Unless otherwise provided in the order of sale, the person whose bid is accepted shall pay the Marshal the purchase price in the manner provided below:

(i)     If the Bid Is Not More Than $500.00. The successful bidder shall immediately pay the full purchase price.

(ii)    If the Bid Is More Than $500.00. The bidder shall immediately deposit with the Marshal $500.00, or ten percent of the bid, whichever sum is greater. Thereafter the bidder shall pay the remaining purchase price within seven (7) days.

If an objection to the sale is filed within the time permitted by Local Admiralty Rule E(17)(g), the successful bidder is excused from paying the remaining purchase price until seven (7) days after the Court confirms the sale.

(b)     *Method of Payment.* Unless otherwise ordered by the Court, payments to the Marshal shall be made in cash, certified check or cashier's check.

(c)     *Custodial Costs Pending Payment.* When a successful bidder fails to pay the balance of the bid within the time allowed by Local Admiralty Rule E(17)(a)(ii), or within the time permitted by order of the Court, the Marshal shall charge the

99

successful bidder for the cost of keeping the property from the date payment of the balance was due, to the date the bidder takes delivery of the property.

The Marshal may refuse to release the property until these additional charges have been paid.

(d)     *Default for Failure to Pay the Balance*. The person who fails to pay the balance of the bid within the time allowed shall be deemed to be in default. Thereafter a judicial officer may order that the sale be awarded to the second highest bidder, or may order a new sale as appropriate.

Any sum deposited by the bidder in default shall be forfeited, and the amount shall be applied by the Marshal to any additional costs incurred because of the forfeiture and default, including costs incident to resale. The balance of the deposit, if any, shall be retained in the registry and subject to further order of the Court.

(e)     *Marshal's Report of Sale*. At the conclusion of the sale, the Marshal shall file and serve a written report of the sale to include the date of the sale, the price obtained, and the name and address of the buyer.

(f)     *Confirmation of Sale*. Unless an objection is timely filed in accordance with this rule, or the purchaser is in default for failing to pay the balance of the purchase price, plaintiff shall proceed to have the sale confirmed on the day following the last day for filing objections.

In order to confirm the sale, plaintiff's counsel shall file and serve a "Request for Confirmation of Sale" on the day following the last day for filing an objection. See forms available on the Court's website (www.flsd.uscourts.gov). Plaintiff's counsel shall also prepare and offer for filing a "Confirmation of the Sale." *See* forms available on the Court's website (www.flsd.uscourts.gov). Thereafter the Clerk of the Court shall file and docket the confirmation and shall promptly transmit a certified copy of the "Confirmation of Sale" to the Marshal's Office.

Unless otherwise ordered by the Court, if the plaintiff fails to timely file the "Request for Confirmation of Sale" and proposed "Confirmation of Sale," the Marshal shall assess any continuing costs or expenses for custody of the vessel or property against the plaintiff.

(g)     *Objections to Confirmation*.

1)     Time for Filing Objections. Unless otherwise permitted by the Court, an objection must be filed within seven (7) days following the sale. The party or person filing an objection shall serve a copy of the objection upon the Marshal and all other parties to the action, and shall also file and serve a Certificate of Service indicating the date and manner of service. Opposition to the objection must be filed within seven (7) days after receipt of the objection of the sale.