UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

IN ADMIRALTY
CASE NO.: 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK,

     Plaintiff,

vs.

M/V SLOW UR ROLL II, a 2008 Everglades 350LX
Express, Official No. 1220768, HIN: RJDE0005I708,
Together with all masts, boilers, cables, engines,
machinery, etc., *in rem*, and STARBOARD YACHT
GROUP LLC, a Florida limited
liability company, *in personam*,

     Defendants.

_____/

## PLAINTIFF SEACOAST NATIONAL BANK'S MOTION FOR AWARD OF ATTORNEYS' FEES AND NON-TAXABLE COSTS

Plaintiff Seacoast National Bank ("Seacoast" or "Plaintiff"), by and through undersigned counsel, respectfully moves this Court for entry of an order: (1) awarding Plaintiff its reasonable attorneys' fees in the amount of $63,457.50 and (2) awarding Plaintiff its non-taxable costs and expenses in the amount of $13,858.21. In support thereof, Plaintiff states as follows:

## PROCEDURAL BACKGROUND

On February 2, 2026, Seacoast filed its Verified Complaint against the Vessel, *in rem*, and Starboard Yacht Group LLC ("Starboard"), *in personam*. [DE 1.]  Almost immediately upon filing the case, Charles Jacob Stratmann ("Stratmann") attempted to appear in the case on behalf of Starboard [DE 11], despite being fully aware from other litigation that he could not represent

87788035;2

Starboard as a non-attorney.[1] On February 18, 2026, the Court struck Stratmann's initial filings [DEs 11, 12, 13, and 14] as improperly filed and ordered Starboard to retain counsel by March 5, 2026. [DE 15.]  Rather than comply, Stratmann filed a Motion to Intervene [DE 17] just two days later, on February 20, 2026, accompanied by a Declaration [DE 18] and Memorandum of Law [DE 19]. Plaintiff's Opposition demonstrated that the Motion was "riddled with false statements and fabrications," including a fabricated case citations and the demonstrably false claims regarding an alleged conflict in Akerman LLP's representation of Plaintiff. [DE 25.] The Motion to Intervene was then denied by the Court. [DE 30.]

Meanwhile, on February 25, 2026, the Clerk of Court issued a Warrant for Arrest of the Vessel. [DE 24.] The U.S. Marshal arrested the Vessel on March 4, 2026. [DE 33.] National Liquidators, Inc. was appointed as substitute custodian. [DE 23.]

Stratmann also filed a Motion to Disqualify, accusing Plaintiff's counsel of an "impermissible conflict of interest" based on the allegation that Akerman LLP represented two different clients in two different federal lawsuits against the same defendant. [DE 28.] This motion was denied as moot. [DE 30.] Notably, the same conflict allegation was squarely rejected by Judge Singhal in the *Contessa Marine* action, who ruled: "Under no definition is this a conflict of interest … [t]his is not the law and it is not a common sense application of the law. There is no *per se* conflict between two or more people who both have claims against the same entity." *Starboard*

---

[1] Just days before Stratmann's appearance in this action, Judge Singhal in *Starboard Yacht Group LLC v. Contessa Marine Research LLC*, No. 0:23-cv-61696-CIV-Singhal (S.D. Fla.), denied Stratmann's *pro se* motion to set aside default on behalf of SYG, stating: "The fact that Stratmann filed this motion pro se on behalf of Starboard Yacht Group, LLC ('SYG') demonstrates why the entry of default will remain. If Stratmann was serious about vacating default, he would have hired counsel for SYG—as required by law—and had the lawyer file this motion." Order, ECF 286 (S.D. Fla. Feb. 11, 2026). Judge Singhal further noted that "Stratmann's filing came just five days after he was advised in open court at the February 5, 2026 hearing that such filings are not proper." Order Granting Final Default Judgment, ECF 299 at 1–2 (S.D. Fla. Feb. 20, 2026). Judge Singhal had also repeatedly admonished Stratmann and SYG for their litigation conduct in that case, comparing it to *Bleak House*'s *Jarndyce v. Jarndyce*, and stating that "SYG plays by its own rules. To the extent one's word is their bond, SYG's bond is worthless." Omnibus Order, No. 0:23-cv-61696-CIV-Singhal, ECF 266 at 6 (S.D. Fla. Jan. 13, 2026).

87788035;2

*Yacht Grp. LLC v. Contessa Marine Research LLC*, No. 23-61696-CIV-Singhal, DE 313 (S.D. Fla. Mar. 13, 2026). Undeterred, Stratmann continued to reassert the same conflict allegations in virtually every subsequent filing. On March 12, 2026, Stratmann filed a Verified Claim of Interest [DE 41], which again raised the conflict allegations and disclosed that Stratmann had filed a complaint with the Florida Bar against undersigned counsel based on the same purported conflict.[2] [DE 41.]  On April 2, 2026, Stratmann filed an Answer, Affirmative Defenses and Counterclaim [DE 43], which reasserted identical conflict arguments just twenty days after Judge Singhal's adverse ruling—a hallmark of vexatious litigation. [DE 49.] Stratmann's Claim, Answer, and Counterclaim were all dismissed and stricken by the Court on April 16, 2026. [DE 53.]

On April 22, 2026, Stratmann filed an Emergency Motion to Vacate the Clerk's Entry of Default [DE 56], which included as an exhibit a seventy-page proposed RICO complaint naming Akerman LLP, Amanda Klopp, and Jenna M. Yoss as defendants, and accusing Plaintiff's counsel of participating in a "racketeering enterprise" through prosecution of this vessel foreclosure. [DE 56.] The RICO complaint further accused Ms. Klopp of issuing a "materially false conflict denial" and engaging in a "preemptive cover-up of the conflict structure." [DE 56 at 44–45.] On May 1, 2026, Stratmann filed two additional Motions for Reconsideration [DEs 59, 60], both of which were stricken by the Court. [DE 61.]

On May 21, 2026, the Court entered Default Judgment, foreclosing the Mortgage and awarding Plaintiff a total Judgment Amount of $168,773.21, consisting of $143,054.75 in principal, $9,118.21 in accrued and unpaid interest through April 29, 2026 (with a per diem thereafter of approximately $70.5475), plus repossession fees ($695.00), transportation fees

---

[2] The clearly AI-generated complaint was filed after the undersigned sent a demand letter to Stratmann. The Florida Bar closed the complaint immediately upon receipt.

87788035;2

($5,600.00), recovery fees ($850.00), storage fees ($3,330.25), insurance fees ($540.00), service and repair fees ($5,535.00), and abstract fees ($50.00). [DE 70 ¶ 6.]

The Default Judgment further provides that "***Plaintiff is also entitled to recover its attorneys' fees, costs and expenses*** herein to be taxed, and any additional custodial, storage and insurance fees and expenses." (emphasis added) [DE 70, ¶7.]   The Court expressly reserved jurisdiction "to determine the amount of attorneys' fees and taxable costs, custodial, storage, and insurance costs, and expenses of arrest, in a further claim by Plaintiff against the sale proceeds and in any deficiency judgment sought against Starboard, *in personam.*" *Id.*   The Court ordered the Vessel sold by the U.S. Marshal and authorized Plaintiff to credit bid all or part of its Judgment Amount of $168,773.21 at the public sale. [DE 70 ¶¶ 8–11.]

On June 15, 2026, Stratmann filed a Verified Claim for Seaman's Wages and Motion to Vacate the Default Judgment. [DE 72.] This filing again contained multiple nonexistent case citations, as explained in Plaintiff's Motion to Strike. [DE 73.] On June 23, 2026, the Court struck the claim on the merits, noting that it had "little tolerance for the hallucinated case citations." [DE 79.] On June 24, 2026, Stratmann filed an Emergency Motion to Stay the Judicial Sale [DE 75], which again contained the same fake citations and renewed the same meritless conflict allegations. [DE 81.]   The Court denied this motion, again providing that "Stratmann's allegations regarding purported conflicts are without merit." [DE 84.]

The U.S. Marshal conducted the public sale of the Vessel on June 26, 2026. [DE 87.] The winning bidder, William Wilson, purchased the Vessel for $160,000.00, and the sale proceeds were deposited with the U.S. Marshal. [DE 87.]  Stratmann's pattern of misstatements continued in subsequent filings. His Objection to Confirmation of the Judicial Sale [DE 92] and Protest of Judicial Sale [DE 97] relied upon more fabricated or inapposite authorities, as explained in

Plaintiffs' Opposition. [DE 98.] The Court denied Stratmann's objections and motions in their entirety. [DE 107.] On July 14, 2026, Plaintiff filed its Motion for Confirmation of Sale [DE 108], and, on July 15, 2026, the Clerk entered Confirmation of Sale. [DE 109].

In sum, throughout this litigation, Stratmann filed no fewer than twenty-five motions, claims, objections, and other filings, virtually all of which were denied, stricken, or otherwise rejected by the Court. In those filings, Stratmann repeatedly cited nonexistent or inapplicable case law, made false factual representations under penalty of perjury, and leveled scandalous and baseless accusations against Plaintiff's counsel, including accusing them of conflicts of interest (a claim rejected by two federal judges), accusing them of participating in a RICO enterprise, and falsely accusing lead counsel of committing fraud on the Court. Plaintiff was required to expend significant time and resources responding to each of these filings and correcting the substantial misstatements of law and fact contained therein.

## REQUEST FOR ATTORNEYS' FEES AND COSTS

**A.      Plaintiff is Entitled to Attorneys' Fees and Non-Taxable Costs**

The Default Judgment [DE 70] confirms Plaintiff's entitlement to an award of its attorneys' fees and nontaxable costs. The Court found Plaintiff is "entitled to recover its attorneys' fees, costs and expenses herein to be taxed" and reserved jurisdiction to determine the amount of such fees, costs, and expenses in connection with Plaintiff's claim against the sale proceeds. [DE 70 ¶ 7.] On July 22, 2026, the Court granted Plaintiff an extension of time to move for an award of attorneys' fees and non-taxable expenses and costs through and including 14 days after confirmation of the sale of the Vessel (thus, by July 29, 2026). [DE 119.]  The only question remaining for the Court is the amount of reasonable attorneys' fees and expenses.

87788035;2

**B.** **Plaintiff's Requested Attorneys' Fees Are Reasonable**

Under the lodestar method, the Court determines reasonableness of attorneys' fees by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

In this action, Plaintiff was represented by the law firm of Akerman LLP. Plaintiff's counsel expended a total of 141.9 hours on this matter from December 15, 2025, through June 30, 2026, resulting in reasonable attorneys' fees of $63,457.50.[3] *See* Declaration of D. Brett Marks ("Marks Declaration") attached hereto as **Exhibit A**. The attorneys who worked on this matter, their respective hourly rates, and hours billed are set forth in the billing records attached to the Marks Declaration as Exhibit 1. *Id.* Each time entry provides a detailed description of the specific work that was performed. The hourly rates and hours for each professional and paraprofessional for which an award of fees are requested are as follows:

| Name | Hours | Rate | Total |
|---|---|---|---|
| D. Brett Marks, Esq. | 5.6 | $550.00 | $3,080.00 |
| Amanda Klopp, Esq. | 54.3 | $500.00 | $27,150.00 |
| Jenna M. Yoss, Esq. | 76.1 | $425.00 | $32,342.50 |
| Nora Graziano | 2.4 | $150.00 | $360.00 |
| Nancy Perez | 3.5 | $150.00 | $525.00 |
| **TOTALS** | **141.9** | **$355 (average) $447.70 (blended)** | **$63,457.50** |

---

[3] Totals provided herein include deduction of $72.50 due to a billing error.

87788035;2

The hourly rates charged by Plaintiff's counsel are reasonable and consistent with the prevailing market rates in the Southern District of Florida for attorneys of comparable skill, experience, and reputation handling complex admiralty and commercial litigation matters.

D. Brett Marks, Esq. is a partner at Akerman LLP, and a graduate of the St. Thomas University School of Law, with nearly thirty years of experience representing and counseling fiduciaries, financial institutions, and asset purchasers in high-stakes sale transactions and complex litigation matters, including extensive federal court practice in the Southern District of Florida. Mr. Marks provided strategic oversight, case supervision, and consultation on key legal issues throughout the course of the instant litigation. Mr. Marks's hourly rate of $550/hour is consistent with the prevailing market rate for attorneys of his experience and stature in this District. The rate of $500 per hour is well within the range of Mr. Marks' rates previously approved in this District as reasonable. *See Generex Biotechnology Corp*, Case 22-13166-PDR, (DE 486) (S.D. Fla. Bankr., June 29, 2026) (approving rate of $650 an hour reflected in fee application filed at DE 473); *Seacoast National Bank v. Chaise Investment Group LLC et al.*, Case No. 25-001369-CA (Fla. Cir. Ct. Martin County Mar. 16, 2026) (approving rate of $550 an hour as reasonable).

Amanda Klopp, Esq. is a partner at Akerman LLP, and graduate of Harvard Law School, with nearly ten years of experience in commercial litigation, creditors' rights, and maritime law, including significant experience in vessel arrest and foreclosure proceedings, secured lending disputes, and federal court practice. In this action, Ms. Klopp served as lead counsel and was responsible for directing the litigation strategy, managing the vessel arrest and judicial sale process, and addressing contested filings and collateral attacks. Ms. Klopp's hourly rate of $500/hour is reasonable, commensurate with her experience and the specialized nature of the work performed, and within the range approved by courts in this District for attorneys of comparable

7

87788035;2

skill, experience, and reputation. The rate of $500 per hour is well within the range of Ms. Klopp's rates previously approved in this District as reasonable. *See In Re Norwegian Air Resources*, Case No. 21-11399-SMG (DE 108) (approving rate of $475/hour reflected in fee application filed at DE 104) (S.D. Fla. Bankr. May 17, 2024); *Seacoast National Bank v. Chaise Investment Group LLC et al.*, Case No. 25-001369-CA (Fla. Cir. Ct. Martin County Mar. 16, 2026) (approving rate of $480/hour); *In re Ivankovich Family, LLC*, Case No. 24-15755-LMI (DE 661) (S.D. Fla. Bankr., Sept. 24, 2025) (approving rate of $600/hour reflected in fee application filed at DE 620).

Jenna M. Yoss, Esq. is an associate at Akerman LLP, and a graduate of University of Florida Levin College of Law, with nearly three years of commercial litigation experience, with a particular emphasis on lender-side representation, enforcement of commercial loan documents, and collateral disposition. Her work in this matter included substantive legal analysis, preparation of initial drafts of pleadings, motions, and responses, and case management. Ms. Yoss's hourly rate of $425/hour is reasonable and consistent with the prevailing market rate in this District for attorneys of comparable experience and qualifications performing similar work. Ms. Yoss's rate of $425/hour was previously approved as reasonable by the Circuit Court of the Nineteenth Judicial Circuit in *Seacoast National Bank v. Chaise Investment Group LLC et al.*, Case No. 25-001369-CA (Fla. Cir. Ct. Martin County Mar. 16, 2026).

Nora Graziano is a paralegal at Akerman LLP with over forty years of experience working on complex litigation matters. Nancy Perez is a paralegal at Akerman LLP with eighteen years of experience working on complex litigation matters. Ms. Graziano's and Ms. Perez's hourly rates of $150/hour[4] are reasonable and consistent with the prevailing market rate for paralegals of such

---

[4] The hourly rates reflected on the invoices for these professionals have been adjusted from $455/hour for Ms. Graziano and $515/hour for Ms. Perez. The total amount of attorneys' fees requested herein reflects these adjustments to $150/hour for each of these paralegals.

87788035;2

experience levels in this District.  This District has previously approved $150.00 as the prevailing market rate for paralegals within the last year. *Fed. Trade Comm'n v. Ecom Genie Consulting LLC*, No. 24-CV-23976, 2025 WL 2498127, at *2 (S.D. Fla. July 30, 2025).

The rates of the attorneys are well within market range in the Southern District of Florida, as recognized by recent cases. *Byoplanet Int'l, LLC v. Johansson*, No. 0:25-CV-60630, 2025 WL 3091094, at *3 (S.D. Fla. Aug. 1, 2025) (approving hourly rates between $150 and $825).  The rates also reflect a substantial discount from the legal professionals' standard hourly rates. Specifically, Ms. Klopp's standard rate is $695/hour, and she billed this matter at $500/hour—a discount of $195/hour, or approximately 28%. Mr. Mark's standard rate is $1,105.00/hour, and he billed this matter at $550/hour—a discount of $555/hour, or approximately 50%. Ms. Yoss's standard rate is $565/hour, and she billed this matter at $425/hour—a discount of $140/hour, or approximately 25%. The total discount arising from the hourly rate reduction is $24,350.50.[5]

The hours expended were reasonable for the tasks necessary, including the preparation and perfection of an admiralty vessel arrest and foreclosure proceeding, coordination with the U.S. Marshal and substitute custodian, a court-ordered judicial sale, and confirmation proceedings.

Moreover, while 141.9 hours may seem high for a case that ultimately resulted in default, the hours expended and fees incurred were substantially increased by the conduct of non-party Charles Jacob Stratmann, who has pursued a relentless campaign of meritless, frivolous, and harassing litigation against Plaintiff, Plaintiff's counsel, and the orderly administration of this case. Stratmann filed countless motions, claims, objections, and other filings in this case, virtually all of

---

[5] The calculation of this total is as follows: Ms. Klopp at $195 x 54.3 = $10,588.50; Mr. Marks at $555 x 5.6 = $3,108; Ms. Yoss at $140 x $10,654.00.

9

which were denied, stricken, or otherwise rejected by the Court.[6]  The Plaintiff spent significant amount of time addressing the various misstatements of law and fact by Stratmann. In addition to his barrage of frivolous and non-meritorious filings in this Court, Stratmann filed a separate civil RICO action, *Stratmann v. Akerman LLP et al.*, Case No. 0:26-cv-61150-PAB (S.D. Fla.), in which he named Akerman LLP, and Plaintiff's counsel of record in this case as defendants based on their representation of Seacoast National Bank in this matter, alleging that their prosecution of this vessel foreclosure somehow constituted participation in a complex racketeering enterprise. The filing of these baseless actions against Plaintiff's counsel in separate forums required Plaintiff's attorneys to expend significant additional time monitoring, evaluating, and carefully responding to Stratmann's repeated attacks and misstatements in this case, further increasing the fees reasonably incurred in this matter.

Courts awarding fees may consider the conduct of the opposing counsel in determining whether the time expended on the matter is reasonable, and have found in situations (as here) where the opposing party's improper conduct has created a significant amount of work, that a larger than typical number of hours will be reasonably expended. *See e.g., Heimkes v. Fairhope Motorcoach Resort Condo. Owners Ass'n, Inc.*, 828 F. Supp. 3d 1317, 1342–43 (S.D. Ala. 2026). *See also ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1356 (S.D. Fla. 2025) (finding an award of attorneys' fees appropriate given the use of AI-hallucinated cases).  Courts have also recognized that the submission of false case law, as Stratmann did repeatedly in this case, forces

---

[6] As stated in the procedural posture section, *supra*, Stratmann filed a motion to intervene [DE 17], which was denied [DE 30]; filed a motion to disqualify Plaintiff's counsel, Akerman LLP [DE 28], which was denied as moot [DE 30]; filed a purported verified claim of interest in the Vessel [DE 41] and an answer with affirmative defenses and counterclaims [DE 43], all of which were dismissed and stricken [DE 53]; filed an emergency motion to vacate the Clerk's entry of default [DE 56], which was denied [DE 57]; filed multiple motions for reconsideration [DE 59, 60], both of which were stricken [DE 61]; filed a verified claim for seaman's wages and motion to vacate default judgment [DE 72], which was stricken [DE 79]; and filed no fewer than four emergency motions to stay the judicial sale [DE 75, 82, 85, and others], all of which were denied [DE 79, 84, 91].

87788035;2

the opposing party, here, Seacoast, to "waste[] time and money in exposing the deception." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023).

Additionally, even after the Court ordered judicial sale, Stratmann continued to file emergency motions in this Court [DE 92, 96, 97, 111, 115] and in the Eleventh Circuit Court of Appeals [Appeal No. 26-12270, DE 2, 3], seeking to stay, vacate, or otherwise disrupt the sale and confirmation process. Every one of these efforts was denied or otherwise unsuccessful, yet each required Plaintiff's counsel to expend additional time and resources in responding. The totality of Stratmann's conduct demonstrates the exceptional nature of this case and fully supports the reasonableness of the hours expended by Plaintiff's counsel.

**C.**     **Plaintiff's Non-Taxable Costs and Expenses Are Reasonable and Recoverable Under the Terms of the Loan Documents.**

The Default Judgment also reserved jurisdiction for the Court to determine additional fees and expenses incurred after entry of judgment. [DE 70 ¶ 7.] Pursuant to the terms of the subject Ship Mortgage, the proceeds of any judicial sale of the vessel shall be first used for the "payment of all attorney's fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by [Seacoast] in the protection of its rights or caused by the Owner's default hereunder or under [the] note secured hereby, with interest on all such amounts..." (emphasis added) [DE 1-3 at 2.]

Plaintiff has incurred additional non-taxable costs and expenses in the total amount of $13,858.21, inclusive of the $12,800.00 sales commission paid to National Liquidators for the promotion and advertisement of the Vessel sale, pursuant to the Exclusive Sales Agreement—Court Ordered Sale [DE 86], $236.81 in publication fees related to the notice of the action in rem [DE 34, 42] that was required by the Local Admiralty Rules,  $120.50 of recording fees, $75.00 of abstract fees for a vessel title search required for default judgment, $103.40 of PACER fees,

11

and $522.50 of Westlaw fees. The sales commission to National Liquidators is evidenced by the invoice attached as **Exhibit B**, and the publication fees, recording fees, abstract fees, PACER fees, and Westlaw fees are shown in the disbursement records attached to the Marks Declaration as Exhibit 2.

## CONCLUSION

**WHEREFORE**, Plaintiff Seacoast National Bank respectfully requests that this Court enter an Order in the form attached as **Exhibit C** hereto:

1. Awarding Plaintiff its reasonable attorneys' fees in the amount of $63,457.50;

2. Awarding Plaintiff non-taxable costs and expenses in the amount of $13,858.21; and

3. Granting such other and further relief as the Court deems just and proper.

## CERTIFICATE OF CONFERRAL

I was unable to confer with Starboard Yacht Group, Inc., pursuant to Local Rule 7.3, due to the default of the party in the case and absence of representation by counsel.

## VERIFICATION

Pursuant to Local Rule 7.3, I verify that the facts herein are true and correct to the best of my knowledge, information and belief.

*/s/ Amanda Klopp*
Amanda Klopp

Dated:  July 29, 2026                                   Respectfully submitted,

*/s/ Amanda Klopp*
Amanda Klopp, Esq.
Florida Bar Number: 124156
amanda.klopp@akerman.com
Jenna M. Yoss, Esq.
Florida Bar Number: 1049858
jenna.yoss@akerman.com
**AKERMAN LLP**

12

777 S. Flagler Dr., Ste 1100 - West Tower
West Palm Beach, FL 33401
Tel: (561) 653-5000 /Fax: (561) 659-6313
*Attorneys for Seacoast National Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served the same day via transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case, and via US Mail to those listed below.

Starboard Yacht Group LLC
545 NE 17th Ave.
Ft. Lauderdale, FL 33301

/s/   *Amanda Klopp*
Amanda Klopp, Esq.

13

87788035;2