**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**IN ADMIRALTY**

SEACOAST NATIONAL BANK,
Plaintiff,
v.
M/V SLOW UR ROLL II, et al.,
Defendants.

---

Case No. 0:26-cv-60289-WPD

EXHIBIT A

**UNDISPUTED / UNRESPONDED FACTS INDEX**

(Accounting, Payment Application, Servicing Continuity)

Purpose: Identify facts that are (i) undisputed on the present record, (ii) established by Seacoast's own documents/counsel statements, or (iii) requested by Stratmann/SYG and left unanswered in the extracted correspondence. This Index does not itself prove a precise cure amount. It supports abeyance / accounting review -- not a claim that only a small amount was adjudicated overdue.

1. Vessel judicial-sale proceeds are $160,000.00 and remain the substitute res sought to be disbursed. Status: UNDISPUTED (docket). Source: DE 87; DE 98 at 10; DE 124.

2. Buyer William Wilson paid the full $160,000.00 sale price. Status: UNDISPUTED (Seacoast filing). Source: DE 98 at 10.

3. DE 124 seeks total disbursement including $149,356.70 to Seacoast. Status: UNDISPUTED. Source: DE 124 at 4.

4. Appeal Case No. 26-12270-G is pending; jurisdictional inquiry issued. Status: UNDISPUTED. Source: CA11 Docs.

5. Stratmann requested current statement / AutoPay update on Dec. 9, 2025, CC Lang Ryder.

Status: SEACOAST-UNRESPONDED in thread. Source: Ex. E.

6. Stratmann requested updated statement / payment confirmation Dec. 19, 2025. Status: SEACOAST-UNRESPONDED in thread. Source: Ex. F chain.

7. Stratmann documented BoA Bill Pay deliveries and requested payoff / acceleration status Jan. 4, 2026. Status: PARTIALLY ANSWERED (redirect only). Source: Ex. F; Ex. D.

8. On Jan. 5, 2026 Taylor directed all communications to Amanda Klopp / Akerman. Status: UNDISPUTED (Seacoast email). Source: Ex. D.

9. Taylor did not answer payment/statement/payoff/acceleration questions in that email. Status: UNRESPONDED. Source: Ex. D.

10. Klopp stated last payment on loan history was Dec. 2, 2025. Status: SEACOAST STATEMENT. Source: Ex. D.

11. Klopp stated Nov. 17 and Dec. 17, 2025 payments "were not received." Status: SEACOAST STATEMENT. Source: Ex. D.

12. Klopp stated "the loan remains accelerated." Status: SEACOAST STATEMENT. Source: Ex. D.

13. Klopp stated Dec. 2, 2025 payment paid the 10/17/2025 Loan Bill and $99.92 toward 11/17/2025 -- i.e. $1,000.08 to Oct, $99.92 to Nov. Status: SEACOAST STATEMENT. Source: Ex. D.

14. Stratmann requested note, security agreement, UCC, insurance addenda, current payoff, and written application confirmation. Status: REQUEST MADE. Source: Ex. D.

15. Payoff referenced by Klopp as existing "as of yesterday" (Jan. 8/9). Status: SEACOAST STATEMENT; amount not in Ex. D body. Source: Ex. D.

16. Seacoast loan history (FIS Global) produced / available as Loan History Starboard Yacht Group. Status: SEACOAST DOCUMENT. Source: Ex. B

**(SCB-000031).**

17. Loan history shows Dec. 2, 2025 $1,100 credit and Oct. 27, 2025 $1,100 credit among other 2025 entries. Status: SEACOAST DOCUMENT. Source: Ex. B.

18. Dec. 18, 2025 acceleration notice exists. Status: UNDISPUTED (document). Source: Ex. C.

19. Acceleration dated Dec. 18, 2025 preceded completion of Jan. 7-9 reconciliation exchanges. Status: CHRONOLOGY (supported). Source: Ex. C; Ex. D.

20. Lang Ryder died Mar. 18, 2023; Dec. 9, 2025 email still CC'd Lang Ryder. Status: SUPPORTED by Decl. + Ex. E. Source: Ex. G; Ex. H; Ex. E.

21. Exact cure amount stated by Seacoast in extracted Jan. 7-9 thread. Status: NOT LOCATED / UNPROVIDED in thread. Source: --.

22. Exact payoff dollar figure in extracted Jan. 9 email body. Status: NOT LOCATED (referenced as separate). Source: Ex. D.

23. Complete response to all Jan. 8 document requests. Status: INCOMPLETE on extracted record. Source: Ex. D.

24. Loan history provided as 13-page scanned PDF; OCR legibility disputed. Status: DOCUMENT QUALITY ISSUE. Source: Ex. B.

Respectfully submitted with Opposition / Notice of Filing.

**/s/ Charles Jacob Stratmann**

Charles Jacob Stratmann, individually, Pro Se

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**FORT LAUDERDALE DIVISION**

**IN ADMIRALTY**

**SEACOAST NATIONAL BANK,**

Plaintiff, v. M/V SLOW UR ROLL II, et al., Defendants. Case No. 0:26-cv-60289-WPD

**NOTICE OF ERRATA AND CORRECTIONS (DE 124 OPPOSITION PACKAGE --**

**ACCOUNTING LEVEL-UP)**

Charles Jacob Stratmann, appearing individually [DE 116], files this Notice of Errata concerning the Opposition to DE 124 and related papers:

**1. Paragraph renumbering. The Opposition has been leveled to insert Section F (Undisputed**

Record Facts Regarding Payment Application and Reconciliation). Relief paragraphs formerly numbered 20-21 are now 23-24.

**2. Certificate of Service date. The blank date in the Opposition Certificate of Service should**

read August 20, 2026 (or the actual CM/ECF filing date).

**3. Entity name. Consistent with prior errata practice, Plaintiff is reminded that the defendant**

entity is Starboard Yacht Group LLC, not "Inc." [DE 124 at 5; DE 1; DE 70.]

**4. Money locks (no change; restated to prevent transcription error). Sale proceeds / substitute**

res = $160,000.00 [DE 87; DE 98 at 10]. Do not substitute the Marshal refund worksheet figure $160,592.70 as sale proceeds.

**5. Exhibit package. Accounting and reconciliation exhibits (Loan History SCB-000031; Dec. 18**

acceleration notice; Jan. 7-9 Klopp thread; Dec. 9 AutoPay/Lang CC; Jan. 4 follow-up; Lang Declaration; Obituary) are filed by Notice of Filing contemporaneously with the leveled Opposition. Page 1 of 2

**6. Scope. This Errata does not seek to amend DE 125 except as previously noticed; it corrects**

and levels the DE 124 opposition package only. Respectfully submitted, /s/ Charles Jacob Stratmann Charles Jacob Stratmann, individually, Pro Se 545 NE 17th Avenue Fort Lauderdale, FL 33301 Telephone: (954) 873-8546 Email: jake@starboardyacht.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2026, I electronically filed the foregoing with CM/ECF, which will serve counsel of record for Plaintiff at Akerman LLP, 777 S. Flagler Dr., Ste 1100 - West Tower, West Palm Beach, FL 33401 (amanda.klopp@akerman.com; jenna.yoss@akerman.com; kristen.fiore@akerman.com), and that a copy was served by U.S. Mail on Starboard Yacht Group LLC at 545 NE 17th Ave., Ft. Lauderdale, FL 33301. /s/ Charles Jacob Stratmann Charles Jacob Stratmann Page 2 of 2

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**SEACOAST NATIONAL BANK,**

Plaintiff, v. M/V SLOW UR ROLL II, a 2008 Everglades 350LX Express, Official No. 1220768, HIN: RJDE0005I708, Together with all masts, boilers, cables, engines, machinery, etc., in rem,

**STARBOARD YACHT GROUP LLC,**

a Florida limited liability company, Defendant in personam. Case No. 0:26-cv-60289-WPD (Hon. William P. Dimitrouleas)

## PRO SE CLAIMANT'S NOTICE OF CORRECTION

(Party-in-Interest, Individual Capacity) Charles Jacob Stratmann ("Stratmann"), appearing pro se as a Party-in-Interest and verified claimant to the vessel in this action, hereby submits this Notice of Correction to address ministerial defects in certain exhibit headers and a proposed order previously filed in this action. Stratmann is the personal guarantor of the promissory note at issue and has appeared in this action as a Pro Se Claimant. His Supplemental Rule C(6) claim (DE 41) and Answer (DE 43) were struck by DE 53, and his Motion to Intervene was denied by DE 30. Stratmann's standing in this action is DISPUTED (see DE 80-1, Seakeeper's motion in D. Md. case No. 1:26-cv-01332-MJM). This Notice does not assert standing as settled; it corrects ministerial defects only.

## I. NATURE OF CORRECTION

**1. This Notice corrects two ministerial defects identified in documents filed by Stratmann in his**

individual capacity: (a) Exhibit B page headers: Certain pages of Exhibit B previously filed contain header text referencing "D. Md." and "Proposed Intervenor" instead of the correct caption for this Court and case. This was a template rendering error, not a substantive change. The corrected Exhibit B is attached hereto with proper headers reading "S.D. Fla. / Case No. 0:26-cv-60289-WPD." (b) Proposed Order signature date: The Proposed Order previously filed

contains a hardcoded signature date ("6th day of August, 2026") rather than a blank date line for the Court's use. The corrected Proposed Order is attached hereto with the date line reading: "DONE AND ORDERED in Chambers at Fort Lauderdale, Florida, this ___ day of __________, 202_." Page 1 of 3

**2. These corrections are ministerial and do not alter the substance, arguments, legal authorities,**

or relief requested in the original filings. No new arguments, facts, or claims are introduced.

## II. CAPACITY AND STANDING

**3. Stratmann files this Notice pro se as a Party-in-Interest and personal guarantor of the Note.**

He is not a named defendant in the captioned action. The docketed caption names only M/V SLOW UR ROLL II (in rem) and Starboard Yacht Group LLC (in personam) as defendants. Stratmann's capacity as Pro Se Claimant and Party-in-Interest is established by the Court's own references to him in that posture, but his standing is DISPUTED and under active challenge (DE 80-1 in D. Md. case No. 1:26-cv-01332-MJM attacks whether claims belong to Stratmann individually or to SYG LLC).

**4. Stratmann does not appear as counsel for Starboard Yacht Group LLC. Any corrections to**

documents filed on behalf of Starboard Yacht Group LLC must be made through retained counsel. Counsel has not yet been retained for SYG LLC in this action.

**5. FILER LIMITATION: The documents corrected by this Notice were originally filed as part**

of an Opposition to Seacoast's Fee Motion (DE 122). The Fee Motion seeks attorney's fees and costs from Starboard Yacht Group LLC as the in personam defendant. Although Stratmann filed the Opposition in his individual capacity as Party-in-Interest, the substance of the Opposition and its supporting exhibits defends against a fee request directed at SYG LLC. Stratmann acknowledges that this errata may touch SYG LLC's interests and that SYG LLC's interests can only

be represented through retained counsel. This Notice is filed by Stratmann pro se only as to ministerial caption corrections; it does not constitute an appearance for SYG LLC.

## III. DOCUMENTS CORRECTED

**6. The following documents are corrected and attached:**

(a) Corrected Exhibit B -- Evidence Non-Response Matrix, rendered from W2731_CLEAN source with footer "No. 0:26-cv-60289-WPD" (SHA-256: e94eb6322559577d186f8ea772b8b7be3aaf4c4c c349cd9f0b18cb3e622b9456) (b) Corrected Proposed Order, rendered from W2731_CLEAN source with blanked date line "______ day of ____________, 2026" (SHA-256: 449a6404c84828abdb96e4e07e2443010b6fdbd6 dfb6969f1e92d946ceb23ea0)

## IV. NO SUBSTANTIVE CHANGE

**7. Stratmann represents that the corrections are limited to caption headers and date formatting.**

The body text, arguments, citations, and relief requested remain identical to the originally filed versions. Nothing in this Notice should be construed as an assertion that Stratmann's individual standing in this action is settled or undisputed. Respectfully submitted, Page 2 of 3

/s/ Charles Jacob Stratmann Charles Jacob Stratmann Pro Se Claimant and Party-in-Interest 545 NE 17th Avenue Fort Lauderdale, FL 33301 Telephone: (954) 873-8546 Email: jake@starboardyacht.com Date: August 17, 2026

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 20, 2026, I served the foregoing upon the following counsel of record by electronic filing: Kristen M. Fiore, Esq. Akerman LLP kristen.fiore@akerman.com Counsel for Plaintiff Seacoast National Bank Amanda Leigh Klopp, Esq. Jenna Morgan Yoss, Esq. Akerman LLP amanda.klopp@akerman.com /s/ Charles Jacob Stratmann Charles Jacob Stratmann Page 3 of 3

**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK, Plaintiff,

M/V SLOW UR ROLL II, Official No. 1220768, her engines, tackle, apparel, and furniture, in rem, and STARBOARD YACHT GROUP, LLC, in personam, Defendants.

CLAIMANT CHARLES JACOB STRATMANN'S MOTION TO STAY DISBURSEMENT OF SALE PROCEEDS PENDING APPEAL

Claimant Charles Jacob Stratmann ("Stratmann"), appearing pro se pursuant to his Notice of Individual Appearance [DE 116], respectfully moves this Court under its inherent authority, Federal Rule of Civil Procedure 62, and Federal Rule of Appellate Procedure 8(a)(1) for an order staying any disbursement of the $160,000.00 in sale proceeds held by the United States Marshal pending resolution of appeal No. 26-12270-G in the United States Court of Appeals for the Eleventh Circuit. In support, Stratmann states as follows:

## 1. Introduction

On August 11, 2026, Plaintiff Seacoast National Bank ("Seacoast") filed a Motion for Disbursement of Sale Proceeds [DE 124], seeking to disburse all $160,000.00 in proceeds from the judicial sale of the M/V Slow UR Roll II. These proceeds, deposited with the United States Marshal [DE 87], serve as the substitute res in this admiralty in rem action and are the jurisdictional predicate of the pending appeal.

Stratmann has filed a timely appeal challenging the confirmation of the judicial sale and related orders. That appeal is pending before the Eleventh Circuit as No. 26-12270-G. The Court of Appeals has issued a Jurisdictional Question [Doc. 21] specifically asking "whether, and to what extent" the appeal is moot — a question whose answer depends on whether the sale proceeds remain undisbursed.

If this Court grants DE 124 and disburses the proceeds before the Eleventh Circuit resolves that jurisdictional question, the substitute res will be extinguished, the appeal will be rendered moot, and Stratmann will permanently lose his right to appellate review. This motion therefore seeks to preserve the status quo and the substitute res pending appellate jurisdictional review. The four-factor standard governing stays pending appeal overwhelmingly favors that preservation.

Stratmann separately opposes DE 124 on the merits. This motion is filed in addition to that opposition to ensure that the sale proceeds are preserved regardless of this Court's disposition of DE 124, and to provide the Eleventh Circuit with assurance that the substitute res remains intact during the pendency of the appeal.

## 2. Procedural Background

This Court entered judgment in the amount of $168,773.21 on May 21, 2026 [DE 70].

The vessel was sold at judicial sale on June 26, 2026, for $160,000.00 — sixteen percent of the $1,000,000 appraised value established by the court-appointed appraiser. The sale proceeds were deposited with the United States Marshal [DE 87].

Three objections to the sale were filed before confirmation: (i) DE 92 (Objection to Confirmation); (ii) DE 96 (Motion for Disclosure of Bidder Identities); and (iii) DE 97 (Protest of Judicial Sale). These were disposed of on July 14, 2026 [DE 107].

On July 14, 2026, Seacoast filed the Motion for Confirmation of Marshal's Sale [DE 108]. The Clerk entered confirmation [DE 109] the following day, July 15, 2026, without the presiding judge's signature on the proposed order [DE 108-2].

Stratmann filed his Notice of Appeal on June 29, 2026 [DE 88; DE 94 (Amended)]. The Eleventh Circuit docketed the appeal as No. 26-12270-G on June 29, 2026. On July 29, 2026, the Court of Appeals issued its Jurisdictional Question [Doc. 21]. Stratmann filed his response on August 12, 2026 [Doc. 22], arguing that the appeal is not moot because the sale proceeds remain undisbursed and the Court of Appeals can grant effectual relief.

DE 124 seeks disbursement of all $160,000.00 in three tranches: (i) $2,907.30 to reimburse the United States Marshal for custody expenses; (ii) $7,736.00 to National Liquidators for custodia legis services; and (iii) $149,356.70 to Seacoast in partial satisfaction of the DE 70 judgment. If granted, no proceeds would remain in custodia legis.

The net proceeds ($149,356.70) do not satisfy the $168,773.21 judgment, leaving a deficiency of $19,416.51.

### 3. Legal Standard

"The filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). The sale proceeds — as the substitute res that maintains in rem jurisdiction — are an aspect of this case directly involved in the appeal.

A district court has inherent authority to stay proceedings pending appeal. The decision whether to grant a stay is governed by the four-factor standard set forth in Nken v. Holder, 556 U.S. 418, 434 (2009): (i) whether the movant has made a strong showing of likelihood of success on the merits; (ii) whether the movant will be irreparably injured absent a stay; (iii) whether the stay will substantially injure the other parties; and (iv) where the public interest lies.

The first two factors are "the most critical." Id. Where the movant demonstrates that the harm absent a stay is the permanent loss of appellate jurisdiction itself, that showing warrants particular weight because the harm is structural — it eliminates the forum for review, not merely a particular remedy.

### 4. The Four Factors Favor a Stay

A. Irreparable Harm Is Certain Absent a Stay

Disbursement of the sale proceeds will permanently destroy the substitute res that maintains appellate jurisdiction. In admiralty in rem proceedings, "[w]here the res is no longer before the court, its in rem jurisdiction is destroyed, and any appeal from its decision is rendered moot." Taylor v. Tracor Marine, Inc., 683 F.2d 1361, 1362 (11th Cir. 1982).

The sale proceeds held by the Marshal are the substitute res that replaced the vessel after the judicial sale. So long as the proceeds remain in custodia legis, the res is constructively before the court and the Eleventh Circuit can exercise in rem jurisdiction and fashion a remedy. If the proceeds are disbursed to private parties, no res — actual or substitute — will exist over which any court can exercise jurisdiction or grant effectual relief. See Chafin v. Chafin, 568 U.S. 165, 172 (2013) (a case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party") (internal quotation omitted).

The loss of appellate jurisdiction is the paradigmatic irreparable harm. It eliminates not merely a remedy but the forum in which any remedy could be sought. Once disbursed, the proceeds cannot be reconstituted. Seacoast has posted no bond or undertaking guaranteeing return of the funds if the Eleventh Circuit vacates confirmation. The harm is permanent and irreversible.

The Eleventh Circuit is actively considering its jurisdiction through Doc. 21. Stratmann's response to that question relied on the fact that the proceeds remain undisbursed. Granting disbursement while the appellate court's jurisdictional inquiry is pending would destroy the factual predicate on which both courts are operating and preempt the Court of Appeals' analysis.

B. The Appeal Raises Substantial Questions

The appeal presents substantial questions warranting appellate review:

Sale price. The vessel was sold for $160,000.00 — sixteen percent of the $1,000,000 value established by the court-appointed appraiser. The disparity between appraised value and sale price is itself a substantial question.

Confirmation procedure. Confirmation [DE 109] was entered by the Clerk the day after the confirmation motion [DE 108] was filed — within approximately twenty-four hours — without the presiding judge's signature on the proposed order [DE 108-2].

Treatment of objections. Three objections were disposed of by an order [DE 107] that adopted Seacoast's response brief wholesale "for the reasons stated in Plaintiff's Response [DE 98]" and used the hedge formulation "procedurally

improper and/or lacking in merit," a formulation that does not clearly resolve whether the objections were addressed on the merits.

Deficiency. The net proceeds ($149,356.70) do not satisfy the $168,773.21 judgment, a shortfall that bears on whether the sale was commercially reasonable and whether confirmation should have been entered without further inquiry.

Stratmann does not contend these questions guarantee reversal. He contends they are substantial — sufficiently so that the appeal should not be mooted by disbursement before the Eleventh Circuit has the opportunity to address them.

**C. The Balance of Hardships Tips Sharply in Stratmann's Favor**

If the stay is denied and the proceeds are disbursed, Stratmann permanently loses all appellate remedies. His vessel — appraised at $1,000,000, serving as his marine technology business's demonstration and R&D platform — was sold for $160,000 at judicial sale. Disbursement forecloses any possibility of challenging that outcome on appeal.

If the stay is granted, Seacoast experiences no meaningful hardship. Seacoast National Bank is a subsidiary of Seacoast Banking Corporation of Florida, a publicly traded institution (NASDAQ: SBCF) with $20.8 billion in total consolidated assets, $16.3 billion in deposits, and $144.9 million in net income for fiscal year 2025. The $160,000.00 at issue represents approximately 0.0008% of Seacoast's total assets and approximately 0.11% of its quarterly net income.

A brief delay in receiving these proceeds — measured in months while the Eleventh Circuit resolves the appeal — causes de minimis harm to an institution of this size. The proceeds remain in the custody of the United States Marshal and are not at risk of dissipation, depreciation, or loss. Seacoast receives the full benefit of its judgment the moment the appeal is resolved in its favor.

D. The Public Interest Favors a Stay

The public has an interest in preserving meaningful appellate review of admiralty judicial sales, particularly where a vessel was sold at a substantial discount to its appraised value. Permitting disbursement of the substitute res while an appeal is pending — effectively mooting the appeal by removing its jurisdictional predicate

— undermines the appellate process and public confidence in the integrity of judicial sales.

The public interest also favors the orderly administration of justice between courts. The Eleventh Circuit is actively considering its jurisdiction over this appeal. Disbursing the substitute res while that inquiry is pending would preempt the appellate court's analysis and create a conflict between the district court and the court of appeals that the Griggs divestiture doctrine is designed to prevent. See Griggs, 459 U.S. at 58.

**5. No Supersedeas Bond Should Be Required**

Under Rule 62(b), a party may obtain a stay by "providing a bond or other security." Fed. R. Civ. P. 62(b). However, courts have broad discretion to waive the bond requirement or to accept alternative security where the judgment creditor's interests are adequately protected. See Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1191 (5th Cir. 1979) (if a court departs from a full-security supersedeas bond, the moving party bears the burden to objectively demonstrate reasons for the departure; court may fashion alternative security that protects the judgment creditor).

No bond is necessary here for three independent reasons:

The proceeds are their own security. The $160,000.00 in sale proceeds is held by the United States Marshal in custodia legis. There is no risk of dissipation, depreciation, or loss. The fund is as secure as any supersedeas bond could make it — more so, because it is held by a federal officer rather than a private surety. The judgment creditor's interests are fully protected without any additional bond.

Requiring a bond would be circular. The purpose of a supersedeas bond is to ensure that the judgment creditor can collect if the judgment is affirmed on appeal. Here, the judgment creditor's recovery is the sale proceeds themselves. Requiring Stratmann to post separate security to prevent disbursement of the very fund that will satisfy the judgment on affirmance is economically nonsensical — it would demand security to protect money that is already in government custody.

A bond requirement would effectively deny appellate review. Stratmann's business operations have been halted. He has no current income. Requiring a bond as a

condition of preserving appellate review would convert the stay into a wealth test, denying access to the appellate courts based on financial inability to post security where no security is needed. The Eleventh Circuit's ability to hear this appeal on the merits should not depend on Stratmann's ability to post a bond that serves no protective purpose.

Seacoast's interests are fully protected without a bond. The proceeds are not depreciating. They are not at risk. If the appeal is resolved in Seacoast's favor, the proceeds remain available for disbursement in exactly the same amount and condition as they are today.

**6. Conclusion**

The four-factor standard overwhelmingly favors a stay. Irreparable harm is certain: disbursement will moot the pending appeal by destroying the substitute res. The appeal raises substantial questions about a sale at sixteen percent of appraised value and a confirmation entered by the Clerk within twenty-four hours. The balance of hardships is stark: Stratmann loses all appellate remedies while a $20.8 billion institution experiences a negligible delay. And the public interest demands preservation of meaningful appellate review.

Stratmann respectfully requests that this Court preserve the status quo and the substitute res pending appellate jurisdictional review by entering an order staying any disbursement of the $160,000.00 in sale proceeds held by the United States Marshal pending resolution of appeal No. 26-12270-G, without requiring a supersedeas bond. Stratmann further requests that this Court resolve this motion before taking any action on DE 124, given the irreversible nature of disbursement.

Certificate of Conferral (Local Rule 7.1(a)(3) Good-Faith Conferral)

Pursuant to Local Rule 7.1(a)(3), S.D. Fla., Claimant Charles Jacob Stratmann, proceeding pro se, certifies that on Saturday, August 15, 2026, at 21:10:18 UTC (5:10:18 p.m. EDT), he sent written conferral by email from jake@starboardyacht.com to counsel for Plaintiff, Amanda Klopp, Esq. (amanda.klopp@akerman.com) and Jenna M. Yoss, Esq. (jenna.yoss@akerman.com), regarding this Motion to Stay Disbursement of Sale Proceeds Pending Appeal. Evidence of transmission is preserved in

CONFERRAL_EVIDENCE_W2889 (Message-ID <CO1PR01MB89161110A0E4C334BBC19AF7B9D92@CO1PR01MB8916.prod.exchangelabs.com>). The Local Rule 7.1(a)(3) 48-hour response window runs through August 17, 2026, at 21:10:18 UTC (5:10:18 p.m. EDT). No response received as of August 17, 2026, at 5:10:18 p.m. EDT (post-window verification). The 48-hour Local Rule 7.1(a)(3) response window expired at 5:10:18 p.m. EDT on August 17, 2026, with no response from Plaintiff's counsel.

Certificate of Service

I HEREBY CERTIFY that on August 20, 2026, a true and correct copy of the foregoing Motion was served on counsel of record for Plaintiff by electronic mail and first-class United States Mail:

Amanda Klopp, Esq. Jenna M. Yoss, Esq. Kristen M. Fiore, Esq. Akerman LLP 777 S. Flagler Dr., Ste 1100 - West Tower West Palm Beach, FL 33401 amanda.klopp@akerman.com jenna.yoss@akerman.com kristen.fiore@akerman.com

Respectfully submitted,

/s/ Charles Jacob Stratmann Charles Jacob Stratmann Pro Se Claimant 545 NE 17th Avenue Fort Lauderdale, FL 33301 Telephone: (954) 873-8546 Email: jake@starboardyacht.com

Dated: August 20, 2026

---

DECLARATION UNDER 28 U.S.C. § 1746

I, Charles Jacob Stratmann, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

/s/ Charles Jacob Stratmann

Charles Jacob Stratmann

Dated: August 20, 2026

Proposed Order

**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:26-cv-60289-WPD

SEACOAST NATIONAL BANK, Plaintiff,

M/V SLOW UR ROLL II, Official No. 1220768, her engines, tackle, apparel, and furniture, in rem, and STARBOARD YACHT GROUP, LLC, in personam, Defendants.

Order Staying Disbursement of Sale Proceeds Pending Appeal

THIS CAUSE is before the Court on Claimant Charles Jacob Stratmann's Motion to Stay Disbursement of Sale Proceeds Pending Appeal. Having considered the motion, the record, and being otherwise fully advised, it is hereby

ORDERED AND ADJUDGED that:

The Motion is GRANTED.

Any disbursement of the sale proceeds from the judicial sale of the M/V Slow UR Roll II, currently held by the United States Marshal [DE 87], is STAYED pending resolution of appeal No. 26-12270-G in the United States Court of Appeals for the Eleventh Circuit, or further order of this Court.

The United States Marshal shall maintain custody of all sale proceeds until further order of this Court or the Court of Appeals.

No supersedeas bond is required, as the sale proceeds remain in custodia legis and are not at risk of dissipation.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this 18th day of August, 2026.

**WILLIAM P. DIMITROULEAS UNITED STATES DISTRICT JUDGE**

Copies furnished to: All counsel of record

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**FORT LAUDERDALE DIVISION**

**IN ADMIRALTY**

**SEACOAST NATIONAL BANK,**

Plaintiff,

v.

M/V SLOW UR ROLL II, Official No. 1220768, her engines, tackle, apparel, and furniture, in rem, and STARBOARD YACHT GROUP, LLC, in personam,
Defendants.

Case No. 0:26-cv-60289-WPD

**ORDER STAYING DISBURSEMENT OF SALE PROCEEDS PENDING APPEAL**

THIS CAUSE is before the Court on Claimant Charles Jacob Stratmann's Motion to Stay Disbursement of Sale Proceeds Pending Appeal. Having considered the Motion, the record, and being otherwise fully advised, it is hereby

ORDERED AND ADJUDGED that:

**1. The Motion is GRANTED.**

**2. Any disbursement of the $160,000.00 sale proceeds from the judicial sale of the M/V Slow Ur Roll II, currently held by the United States Marshal [DE 87], is STAYED pending resolution of appeal No. 26-12270-G in the United States Court of Appeals for the Eleventh Circuit, or further order of this Court.**

**3. The United States Marshal shall continue to hold all such sale proceeds in custody until further order of this Court or the Court of Appeals.**

**4. No supersedeas bond is required, and any bond requirement is waived, because the sale proceeds remain in custodia legis and are not at risk of dissipation while held by the Marshal.**

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this ___ day of _________, 2026.

**WILLIAM P. DIMITROULEAS**

**UNITED STATES DISTRICT JUDGE**

Copies furnished to: All counsel of record

**CERTIFICATE OF SERVICE**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**FORT LAUDERDALE DIVISION**

**IN ADMIRALTY**

**SEACOAST NATIONAL BANK,**

Plaintiff,

v.

M/V SLOW UR ROLL II, Official No. 1220768, her engines, tackle, apparel, and furniture, in rem, and STARBOARD YACHT GROUP, LLC, in personam, Defendants.

Case No. 0:26-cv-60289-WPD

I, Charles Jacob Stratmann, proceeding pro se, hereby certify that on August 20, 2026, I served a true and correct copy of the foregoing Motion to Stay Disbursement of Sale Proceeds Pending Appeal upon counsel for Plaintiff Seacoast National Bank by electronic mail:

Amanda Klopp, Esq. — amanda.klopp@akerman.com Jenna M. Yoss, Esq. — jenna.yoss@akerman.com

CC: legal@starboardyacht.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated this 20th day of August, 2026.

Respectfully submitted,

Charles Jacob Stratmann, pro se 545 NE 17th Avenue Fort Lauderdale, FL 33301 Telephone: (954) 873-8546 Email: jake@starboardyacht.com

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

Appeal No. 26-12270-G

---

**CHARLES JACOB STRATMANN,**

Appellant,

v.

**SEACOAST NATIONAL BANK,**

Appellee.

---

**SUPPLEMENTAL DECLARATION OF CHARLES JACOB STRATMANN REGARDING LANG B. RYDER**

---

I, Charles Jacob Stratmann, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

**1. I am the Managing Member of Starboard Yacht Group, LLC, the Claimant/owner of M/V Slow UR Roll II. I make this declaration based on my personal knowledge and the information provided to me as described below.**

**2. On June 26, 2026, I attended the judicial sale of M/V Slow UR Roll II at the Fort Lauderdale Federal Courthouse. While at the courthouse, I spoke with Jason Dunbar, a marine condition and value surveyor with Vessel Value Survey (VVS), who was also present at the auction.**

**3. During our conversation, I mentioned that Seacoast National Bank had directed my loan-reconciliation correspondence to Lang Ryder of Seacoast Marine Finance, and that those emails had gone unanswered. Mr. Dunbar informed me that Lang B. Ryder had passed away on March 18, 2023. A true and correct copy of Mr. Ryder's obituary is attached as Exhibit A.**

**4. The obituary confirms that Lang B. Ryder was born on May 20, 1963, and died on March 18, 2023. It states that he served as Executive Vice President and Division Head of Seacoast Marine Finance at Seacoast National Bank, and that he attended Tulane University. He was also the 71st Commodore of the Lauderdale Yacht Club.**

**5. On March 14, 2024, I sent an email directly to <Lang.ryder@seacoastnational.com> seeking account alignment on the Seacoast loan. I received no response. At the time, I had no reason to know that Mr. Ryder was deceased. That email was delivered to a dead inbox**

**maintained by a bank that knew its officer had died and had not assigned a replacement contact, had not set an auto-reply, and had not notified me of the change. A true and correct copy of that email is attached as Exhibit B.**

**6. On January 26, 2024 - ten months after Mr. Ryder's death - I sent a referral to Steve Damen at Seacoast using Mr. Ryder's contact information because he remained the only Seacoast relationship contact I had ever been given. I did not know at that time that Mr. Ryder had been dead for ten months. A true and correct copy of that email is attached as Exhibit C.**

**7. Between January 4 and January 10, 2026, I sent reconciliation emails to Seacoast seeking to cure any perceived default. Those emails were directed to Steven Donnell, a Seacoast officer I reached through Brenda Willis, and ultimately to Amanda Klopp at Akerman LLP, Seacoast's litigation counsel. At no point during those communications did Mr. Donnell, Ms. Willis, or Ms. Klopp disclose to me that Mr. Ryder had been deceased since March 2023. Seacoast's foreclosure complaint is dated January 23, 2026, and was filed on the CM/ECF docket as DE 1 on February 2, 2026, while those reconciliation emails were still being exchanged. True and correct copies of those January 2026 emails are attached as Exhibit D.**

**8. I did not learn of Mr. Ryder's death until June 26, 2026 - the day of the judicial sale - when Jason Dunbar informed me at the courthouse, as described in paragraph 2 above. Seacoast never notified me of Mr. Ryder's death at any point during the loan relationship, the alleged default period, the reconciliation window, or the litigation.**

**9. The structural communication failure - Seacoast's failure to maintain a living contact, assign a replacement, or notify me of Mr. Ryder's death - made it impossible for me to seek the consent required by the mortgage covenant before the Locality Bank lien was recorded in June 2024. A bank cannot enforce a consent-to-lien provision when it has rendered performance of that covenant impossible by failing to provide a living contact through whom the borrower can seek consent. This was not a mere administrative oversight; it was a structural communication failure that denied me any meaningful opportunity to resolve the account before acceleration and foreclosure.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 7, 2026.

/s/ Charles Jacob Stratmann
Charles Jacob Stratmann
Managing Member, Starboard Yacht Group, LLC
545 NE 17th Avenue
Fort Lauderdale, Florida 33301

---

## EXHIBIT A

Obituary - Lang B. Ryder (May 20, 1963 - March 18, 2023)

Source: Kraeer-Fairchild Funeral Home & Cremation Center online obituary, retrieved July 4, 2026.

Lang B. Ryder
May 20, 1963 - March 18, 2023

It is with great sorrow to share that Commodore Lang Ryder has passed away on March 18, 2023. He went peacefully with his family by his side. He is survived by his wife of 32 years Bridget Ryder, his son Karl Ryder (28), and daughters Elizabeth Ryder (27) and Sarah Ryder (24).

Lang hails from Hingham MA, where he was raised right in the heart of a New England town and grew up on Main Street. His dad was a commodore at the Hingham Yacht Club which is where Lang's love for sailing and boating started. He attended Tulane University in New Orleans then found his way to Fort Lauderdale, where he met the love of his life Bridget and Bridget's small army of a family.

Lang was a beautiful and lively soul who always lived his life to the fullest. He instilled in his family a love for sailing and the sea. Lang loved life and loved people, he would with ease walk into a room and walk out with a few more friends. His generosity was prevalent with those who knew him. He was in the truest sense, the gentleman sailor.

Lang was heavily involved in his community serving as the 71st Commodore for Lauderdale Yacht Club during the 2013 command year, as well as holding various positions in the Lauderdale Surf & Yacht Club. Additionally, he was an iconic and well-known figure within the bustling South Florida marine industry.

[Professional detail from LinkedIn public profile, confirmed by obituary: Executive Vice President and Division Head, Seacoast Marine Finance, Seacoast National Bank; Tulane University.]

akerman

Amanda Klopp

Akerman LLP
777 South Flagler Drive
Suite 1100 West Tower
West Palm Beach, FL 33401

T: 561 653 5000
F: 561 659 6313
DirF: 561 651 1589
amanda.klopp@akerman.com

December 18, 2025

**VIA CERTIFIED MAIL AND REGULAR MAIL**

Starboard Yacht Group LLC
850 NE 3rd St., Ste. 208
Dania Beach, FL 33004

Charles J. Stratmann
545 NE 17th Ave.
Fort Lauderdale, FL 33301

Re: **Loan of $176,503.10 ("Loan") from Seacoast National Bank ("Lender" or "Seacoast") to Starboard Yacht Group LLC ("Borrower"), as evidenced by the Promissory Note dated July 17, 2020 ("Note"), secured by a Commercial Guaranty ("Guaranty") from Charles J. Stratmann ("Guarantor") and a First Preferred Ship Mortgage ("Mortgage") granted by Borrower as Owner of the vessel, Slow Ur Roll II, a 2008 Everglades 350LX Express, Official No. 1220768, Hull ID RJDE005I708 ("Vessel"), including any and all related security documents (the Note, Guaranty, Mortgage, and related security documents are collectively the "Loan Documents")**

Dear Borrower and Guarantor:

Please be advised that this firm represents Lender in relation to the above-referenced Loan, and the Loan has been transferred to us for handling.

Due to Borrower's failure to make monthly payments on the Loan when due, including the monthly payments that were due on October 17, 2025, November 17, 2025, and December 17, 2025, Borrower is in default under the terms of the Loan. As a result, Lender hereby accelerates the Note and demands payment of the Note in full.

The balance due on the Loan as of December 18, 2025 is $143,054.75 in principal and $937.63 in interest, for a total of **$143,992.38**, plus attorneys' fees and costs which have accrued and continue to accrue (the "Balance Due"). The per diem interest due after December 18, 2025 is approximately $16.66 based on the regular interest rate of 4.250%. Please contact the undersigned for the total legal fees and costs due as of the date you intend to pay off the Loan. Your payment must be in the form of a certified check made payable to Seacoast National Bank, mailed to Seacoast National Bank, Attn: Jonathan Taylor, 50 SE Kindred St., Ste. 203, Stuart, FL 34994, and reference Loan Number 4000846326-1 in connection with the payment, or by wire pursuant to the wire instructions attached hereto. Payment should not be sent to any other individual, department, or location. If partial payment is received by Lender, it will be treated as partial

---

satisfaction of the amounts past due, but will not be sufficient to release Borrower or Guarantor from their obligations to pay the Balance Due.

Moreover, by this letter and pursuant to the terms of the Guaranty, Guarantor is notified of the demand upon Borrower to repay the Loan in full, and Lender hereby demands the Balance Due from Guarantor in accordance with this letter.

If the entire outstanding balance due on the Loan is not paid to Lender within 10 days of this letter, Lender without further notice may elect to pursue its remedies under the Loan Documents, including but not limited to, enforcement of the Note, Guaranty, and foreclosure of the Mortgage.

**In addition, while the Loan remains outstanding and due, Lender demands that Borrower immediately make the Vessel available for inspection under the Mortgage.** *See* Mortgage, Article I, Section 9. Please contact the undersigned by telephone at (561) 653-5000 or by email at amanda.klopp@akerman.com to arrange for the prompt inspection of the Vessel.

Lender reserves the right to exercise any and all of its rights and remedies under the Loan Documents, and in law and equity. For the avoidance of doubt, Lender has not consented to accept the Vessel as full or partial satisfaction of your obligations under the Loan. The acceptance by Lender of any future payments on the Loan, to the extent that the Balance Due on the Loan is not timely paid in full as set forth above, shall not constitute a waiver by Lender of any defaults under the Note, and other Loan Documents executed in connection with the Loan. The foregoing demand also is made without waiving any of Lender's other default rights and remedies available under the Note or the other Loan Documents and under applicable law, all of which rights and remedies are hereby reserved by Lender.

For the avoidance of doubt, to the extent you have received or receive any other correspondence that is inconsistent with this letter, this letter supersedes all such correspondence. We look forward to your prompt and timely response to this demand and full payment of the Loan as set forth above in order to avoid further action.

Sincerely,

**AKERMAN LLP**

*/s/ Amanda Klopp*
Amanda Klopp

cc: Jonathan Taylor

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case Number: 18-23466-CIV-MARTINEZ-OTAZO-REYES**

CB MARINE TOWING and SALVAGE, INC.,
d/b/a SEA TOW MIAMI, a Florida corporation,
Plaintiff,

vs.

M/V J&J, an 82-foot Sunseeker built in 2004,
her engines, tackle, boats, gear, appurtenances
etc., *in rem*,
Defendant.
_______________________________________/

**ORDER DIRECTING THE RELEASE OF M/V J & J**
**IN ACCORDANCE WITH SUPPLEMENTAL RULE E(5)**

In accordance with Supplemental Rule E(5) and Local Admiralty Rule E(8)(a), and pursuant to Agreed Order Granting Motion for Release of Vessel, the United States Marshal is directed to release the **M/V J & J** currently being held in the custody of Starboard Yacht Group LLC in the above-styled action.

DONE AND ORDERED in Chambers at Miami, Florida this 17 day of September, 2018.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Otazo-Reyes
All Counsel of Record

Starboard Yacht Group LLC
4000846326-1 Note - 20 Year Commercial Loan Account

101 items: Life-to-date beginning 07/17/2020

| Effective / Posted | | Type | Amount | Principal | Interest | Balance | Part or Fee |
|---|---|---|---|---|---|---|---|
| 12/29/2025 12/31/2025 | | 800 - Reversal | -1,100.00 | -574.12 | -525.88 | 143,054.75 | |
| 12/29/2025 12/29/2025 | * | 612 - User defined reg payment | 1,100.00 | 574.12 | 525.88 | 143,054.75 | |
| 12/17/2025 12/22/2025 | | 800 - Reversal | -1,093.28 | -574.12 | -519.16 | 143,054.75 | |
| 12/17/2025 12/17/2025 | * | 619 - ACH/autopayment | 1,093.28 | 574.12 | 519.16 | 143,054.75 | |
| 12/02/2025 12/02/2025 | | 612 - User defined reg payment | 1,100.00 | 588.73 | 401.95 | 143,054.75 | |
| 11/17/2025 11/20/2025 | | 800 - Reversal | -1,093.28 | -588.73 | -449.89 | 143,643.48 | |
| 11/17/2025 11/17/2025 | * | 619 - ACH/autopayment | 1,093.28 | 588.73 | 449.89 | 143,643.48 | |
| 10/27/2025 10/27/2025 | | 612 - User defined reg payment | 1,100.00 | 569.85 | 475.49 | 143,643.48 | |
| 10/17/2025 10/23/2025 | | 800 - Reversal | -1,093.28 | -569.85 | -468.77 | 144,213.33 | |
| 10/17/2025 10/17/2025 | * | 619 - ACH/autopayment | 1,093.28 | 569.85 | 468.77 | 144,213.33 | |
| 09/29/2025 09/29/2025 | | 780 - Loan transfer to non-accrual | 476.26 | 0.00 | 0.0000000 | 144,213.33 | |
| 09/29/2025 09/29/2025 | | 612 - User defined reg payment | 200.00 | 0.00 | 200.00 | 144,213.33 | |
| 09/29/2025 09/29/2025 | | 612 - User defined reg payment | 1,100.00 | 568.57 | 374.17 | 144,213.33 | |
| 09/17/2025 09/22/2025 | | 801 - NSF reversal | -1,093.28 | -568.57 | -367.45 | 144,781.90 | |
| 09/17/2025 09/17/2025 | * | 619 - ACH/autopayment | 1,093.28 | 568.57 | 367.45 | 144,781.90 | |
| 09/15/2025 09/15/2025 | | 612 - User defined reg payment | 200.00 | 0.00 | 200.00 | 144,781.90 | |
| 08/29/2025 08/29/2025 | | 612 - User defined reg payment | 1,100.00 | 585.49 | 507.79 | 144,781.90 | |
| 08/18/2025 08/21/2025 | | 801 - NSF reversal | -1,093.28 | -585.49 | -507.79 | 145,367.39 | |
| 08/18/2025 08/18/2025 | * | 619 - ACH/autopayment | 1,093.28 | 585.49 | 507.79 | 145,367.39 | |
| 08/11/2025 08/15/2025 | | 801 - NSF reversal | -1,093.28 | -585.49 | -507.79 | 145,367.39 | |
| 08/11/2025 08/12/2025 | * | 620 - Regular payment | 1,093.28 | 585.49 | 507.79 | 145,367.39 | |
| 07/17/2025 07/22/2025 | | 801 - NSF reversal | -1,093.28 | -585.49 | -507.79 | 145,367.39 | |
| 07/17/2025 07/17/2025 | * | 619 - ACH/autopayment | 1,093.28 | 585.49 | 507.79 | 145,367.39 | |
| 06/17/2025 | | 619 - | 1,093.28 | 566.38 | 526.90 | 145,367.39 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/17/2025 | | ACH/autopayment | | | | |
| 05/19/2025<br>05/19/2025 | | 619 -<br>ACH/autopayment | 1,093.28 | 581.91 | 511.37 | 145,933.77 |
| 04/17/2025<br>04/17/2025 | | 619 -<br>ACH/autopayment | 1,093.28 | 560.19 | 533.09 | 146,515.68 |
| 04/11/2025<br>04/14/2025 | | 620 - Regular<br>payment | 1,093.28 | 611.71 | 481.57 | 147,075.87 |
| 03/17/2025<br>03/20/2025 | | 801 - NSF reversal | -1,093.28 | -611.71 | -481.57 | 147,687.58 |
| 03/17/2025<br>03/17/2025 | * | 619 -<br>ACH/autopayment | 1,093.28 | 611.71 | 481.57 | 147,687.58 |
| 02/18/2025<br>02/18/2025 | | 619 -<br>ACH/autopayment | 1,093.28 | 558.17 | 535.11 | 147,687.58 |
| 01/17/2025<br>01/17/2025 | | 619 -<br>ACH/autopayment | 1,093.28 | 556.17 | 537.11 | 148,245.75 |
| 12/17/2024<br>12/17/2024 | | 619 -<br>ACH/autopayment | 1,093.28 | 571.43 | 521.85 | 148,801.92 |
| 11/18/2024<br>11/18/2024 | | 619 -<br>ACH/autopayment | 1,093.28 | 552.11 | 541.17 | 149,373.35 |
| 10/17/2024<br>10/17/2024 | | 619 -<br>ACH/autopayment | 1,093.28 | 567.59 | 525.69 | 149,925.46 |
| 09/17/2024<br>09/17/2024 | | 619 -<br>ACH/autopayment | 1,093.28 | 547.95 | 545.33 | 150,493.05 |
| 08/19/2024<br>08/19/2024 | | 619 -<br>ACH/autopayment | 1,093.28 | 546.12 | 547.16 | 151,041.00 |
| 07/17/2024<br>07/17/2024 | | 619 -<br>ACH/autopayment | 1,093.28 | 561.80 | 531.48 | 151,587.12 |
| 06/17/2024<br>06/17/2024 | | 619 -<br>ACH/autopayment | 1,093.28 | 542.12 | 551.16 | 152,148.92 |
| 05/17/2024<br>05/17/2024 | | 619 -<br>ACH/autopayment | 1,093.28 | 557.96 | 535.32 | 152,691.04 |
| 04/17/2024<br>04/17/2024 | | 619 -<br>ACH/autopayment | 1,093.28 | 538.11 | 555.17 | 153,249.00 |
| 03/18/2024<br>03/18/2024 | | 619 -<br>ACH/autopayment | 1,093.28 | 571.87 | 521.41 | 153,787.11 |
| 02/20/2024<br>02/20/2024 | | 619 -<br>ACH/autopayment | 1,093.28 | 534.18 | 559.10 | 154,358.98 |
| 01/17/2024<br>01/17/2024 | | 619 -<br>ACH/autopayment | 1,093.28 | 532.19 | 561.09 | 154,893.16 |
| 12/18/2023<br>12/18/2023 | | 619 -<br>ACH/autopayment | 1,093.28 | 548.44 | 544.84 | 155,425.35 |
| 11/17/2023<br>11/17/2023 | | 619 -<br>ACH/autopayment | 1,093.28 | 528.37 | 564.91 | 155,973.79 |
| 10/17/2023<br>10/17/2023 | | 619 -<br>ACH/autopayment | 1,093.28 | 544.63 | 548.65 | 156,502.16 |
| 09/18/2023<br>09/18/2023 | | 619 -<br>ACH/autopayment | 1,093.28 | 524.51 | 568.77 | 157,046.79 |
| 08/17/2023<br>08/17/2023 | | 619 -<br>ACH/autopayment | 1,093.28 | 522.63 | 570.65 | 157,571.30 |
| 07/17/2023<br>07/17/2023 | | 619 -<br>ACH/autopayment | 1,093.28 | 538.97 | 554.31 | 158,093.93 |
| 06/20/2023<br>06/20/2023 | | 619 -<br>ACH/autopayment | 1,093.28 | 518.81 | 574.47 | 158,632.90 |
| 05/17/2023<br>05/17/2023 | | 619 -<br>ACH/autopayment | 1,093.28 | 535.47 | 557.81 | 159,151.71 |

| | | | | | |
|---|---|---|---|---|---|
| 04/17/2023 04/17/2023 | 619 - ACH/autopayment | 1,093.28 | 515.01 | 578.27 | 159,687.18 |
| 03/17/2023 03/17/2023 | 619 - ACH/autopayment | 1,093.28 | 569.12 | 524.16 | 160,202.19 |
| 02/17/2023 02/17/2023 | 619 - ACH/autopayment | 1,093.28 | 511.12 | 582.16 | 160,771.31 |
| 01/17/2023 01/17/2023 | 619 - ACH/autopayment | 1,093.28 | 509.16 | 584.12 | 161,282.43 |
| 12/19/2022 12/19/2022 | 619 - ACH/autopayment | 1,093.28 | 526.28 | 567.00 | 161,791.59 |
| 11/17/2022 11/17/2022 | 619 - ACH/autopayment | 1,093.28 | 505.55 | 587.73 | 162,317.87 |
| 10/17/2022 10/17/2022 | 619 - ACH/autopayment | 1,093.28 | 522.57 | 570.71 | 162,823.42 |
| 09/19/2022 09/19/2022 | 619 - ACH/autopayment | 1,093.28 | 501.86 | 591.42 | 163,345.99 |
| 08/17/2022 08/17/2022 | 619 - ACH/autopayment | 1,093.28 | 499.99 | 593.29 | 163,847.85 |
| 07/18/2022 07/18/2022 | 619 - ACH/autopayment | 1,093.28 | 517.38 | 575.90 | 164,347.84 |
| 06/17/2022 06/17/2022 | 619 - ACH/autopayment | 1,093.28 | 496.39 | 596.89 | 164,865.22 |
| 05/17/2022 05/17/2022 | 619 - ACH/autopayment | 1,093.28 | 513.80 | 579.48 | 165,361.61 |
| 04/18/2022 04/18/2022 | 619 - ACH/autopayment | 1,093.28 | 492.76 | 600.52 | 165,875.41 |
| 03/17/2022 03/17/2022 | 619 - ACH/autopayment | 1,093.28 | 549.08 | 544.20 | 166,368.17 |
| 02/17/2022 02/17/2022 | 619 - ACH/autopayment | 1,093.28 | 488.96 | 604.32 | 166,917.25 |
| 01/18/2022 01/18/2022 | 619 - ACH/autopayment | 1,093.28 | 487.25 | 606.03 | 167,406.21 |
| 12/17/2021 12/17/2021 | 619 - ACH/autopayment | 1,093.28 | 505.04 | 588.24 | 167,893.46 |
| 11/17/2021 11/17/2021 | 619 - ACH/autopayment | 1,093.28 | 483.63 | 609.65 | 168,398.50 |
| 10/18/2021 10/18/2021 | 619 - ACH/autopayment | 1,093.28 | 501.59 | 591.69 | 168,882.13 |
| 09/17/2021 09/17/2021 | 619 - ACH/autopayment | 1,093.28 | 480.14 | 613.14 | 169,383.72 |
| 08/17/2021 08/17/2021 | 619 - ACH/autopayment | 1,093.28 | 478.30 | 614.98 | 169,863.86 |
| 07/19/2021 07/19/2021 | 619 - ACH/autopayment | 1,093.28 | 496.52 | 596.76 | 170,342.16 |
| 06/17/2021 06/17/2021 | 619 - ACH/autopayment | 1,093.28 | 474.91 | 618.37 | 170,838.68 |
| 05/17/2021 05/17/2021 | 619 - ACH/autopayment | 1,093.28 | 493.02 | 600.26 | 171,313.59 |
| 04/19/2021 04/19/2021 | 619 - ACH/autopayment | 1,093.28 | 471.43 | 621.85 | 171,806.61 |
| 03/17/2021 03/17/2021 | 619 - ACH/autopayment | 1,093.28 | 529.88 | 563.40 | 172,278.04 |
| 02/17/2021 02/17/2021 | 619 - ACH/autopayment | 1,093.28 | 467.72 | 625.56 | 172,807.92 |
| 01/19/2021 | 619 - | 1,093.28 | 448.73 | 644.55 | 173,275.64 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 01/19/2021 | | ACH/autopayment | | | | |
| 12/17/2020<br>12/18/2020 | | 800 - Reversal | -1,093.28 | -1,093.28 | 0.00 | 173,724.37 |
| 12/17/2020<br>12/18/2020 | | 800 - Reversal | 0.00 | 0.00 | 0.00 | 173,724.37 |
| 12/17/2020<br>12/17/2020 | * | 668 - System-generated payment | 1,093.28 | 1,093.28 | 0.00 | 173,724.37 |
| 12/17/2020<br>12/17/2020 | * | 612 - User defined reg payment | 0.00 | 0.00 | 0.00 | 173,724.37 |
| 12/17/2020<br>12/17/2020 | | 619 - ACH/autopayment | 1,093.28 | 499.18 | 594.10 | 173,724.37 |
| 11/16/2020<br>12/18/2020 | | 800 - Reversal | -1,093.28 | -1,093.28 | 0.00 | 174,223.55 |
| 11/16/2020<br>11/16/2020 | * | 668 - System-generated payment | 1,093.28 | 1,093.28 | 0.00 | 174,223.55 |
| 11/16/2020<br>11/16/2020 | | 612 - User defined reg payment | 0.00 | 0.00 | 0.00 | 174,223.55 |
| 11/04/2020<br>12/18/2020 | | 800 - Reversal | -1,202.60 | -1,202.60 | 0.00 | 174,223.55 |
| 11/04/2020<br>11/04/2020 | * | 668 - System-generated payment | 1,202.60 | 1,202.60 | 0.00 | 174,223.55 |
| 11/04/2020<br>11/04/2020 | | 612 - User defined reg payment | 1,093.28 | 467.32 | 625.96 | 174,223.55 |
| 10/19/2020<br>12/18/2020 | | 800 - Reversal | -1,093.28 | -1,093.28 | 0.00 | 174,690.87 |
| 10/19/2020<br>10/19/2020 | * | 668 - System-generated payment | 1,093.28 | 1,093.28 | 0.00 | 174,690.87 |
| 10/19/2020<br>10/19/2020 | | 619 - ACH/autopayment | 0.00 | 0.00 | 0.00 | 174,690.87 |
| 10/13/2020<br>10/13/2020 | | 612 - User defined reg payment | 1,093.28 | 481.03 | 612.25 | 174,690.87 |
| 10/05/2020<br>10/06/2020 | | 620 - Regular payment | 1,093.28 | 493.13 | 600.15 | 175,171.90 |
| 09/03/2020<br>09/04/2020 | | 620 - Regular payment | 1,093.28 | 838.07 | 255.21 | 175,665.03 |
| 08/20/2020<br>08/20/2020 | | 402 - FASB fee rate chg - sys gen | 4.066592% | 0.00 | 0.0000000 | 176,503.10 |
| 08/20/2020<br>08/20/2020 | | 750 - Note increase | 105,800.00 | 105,800.00 | 0.00 | 176,503.10 |
| 08/07/2020<br>08/07/2020 | | 402 - FASB fee rate chg - sys gen | 2.954640% | 0.00 | 0.0000000 | 70,703.10 |
| 07/17/2020<br>08/07/2020 | | 660 - Special payment | 105,800.00 | 105,800.00 | 0.00 | 70,703.10 |
| 07/17/2020<br>08/07/2020 | | 310 - New note | 176,503.10 | 176,503.10 | 0.00 | 176,503.10 |

Outlook

---

**350 everglades and pursuit finance options**

---

**From** Jake Stratmann <jake@starboardyacht.com>
**Date** Thu 2024-03-14 1:33 PM
**To** Lang Ryder <Lang.ryder@seacoastnational.com>

Lang

Hope this message finds you well.

Wanted to get with you and financing a pursuit and everglades.

Do you have time this week?

Jake

Sent from my T-Mobile 5G Device

Outlook

**Fw: 2025 Statement REQUEST / STARBOARD YACHT GROUP LLC**

**From** Jake Stratmann <jake@starboardyacht.com>
**Date** Thu 2026-04-09 3:27 PM
**To** Legal <legal@starboardyacht.com>

EXHIBIT FOR SCB

---

**From:** Jake Stratmann
**Sent:** Friday, December 19, 2025 6:36 AM
**To:** Steven Donnell <Steven.Donnell@seacoastbank.com>
**Cc:** Brenda.Willis@seacoastbank.com <Brenda.Willis@seacoastbank.com>
**Subject:** RE: 2025 Statement REQUEST / STARBOARD YACHT GROUP LLC

Steven,
PLEASE CONFIRM MY BILL PAYMENTS ARE BEING RECEIVED BY SENDING AN UPDATED STATEMENT

WE HAD FRAUD ON OUR ACCOUNTS AND HAD TO SWITCH TO NEW ACCOUNTS, SORRY FOR ANY PAYMENT DELAYS AND / OR INTERFERENCES.

PLEASE UDPATE US WITH A STATEMENT TO VERIFY CURRENT STATUS TO ENSRE ACCOUNT IS GOOD STANDING.

Seacoast National Bank payment sent as a check

BO Bank of America <billpay@billpay.bankofamerica.com>
To: Jake Stratmann

Reply | Reply All | Forv

F

ⓘ This message was sent with High importance.

# Bill Pay Alert

Bank of America

Dear BUSINESS CUSTOMER:

Payments to Seacoast National Bank are typically sent electronically, but this payment was sent as a check. Since we can't predict the exact date that a check will be presented to us for payment, please make sure you have sufficient funds in your account beginning a few days before your scheduled Deliver By Date, and keep such funds available until the payment is deducted from your account.

| | |
|---|---|
| **Recipient:** | Seacoast National Bank |
| **Account:** | *************6326 |
| **Amount:** | $1,100.00 |
| **Deliver By Date:** | 12/26/2025 |

Thank you for using Online Banking.

If you'd like to stop receiving this alert, **sign in to Online Banking**
If this link doesn't work, go directly to **www.bankofamerica.com**

Please do not reply to this email.

Contact us about this email
If you have any questions, please either call the phone number on your statement [illegible] or use the **Con-tact Us** [illegible]

**Respectfully,**

**Jake Stratmann**
CEO, Starboard Group Holdings LLC
Office: 954-376-5400
Mobile: 954-873-8546
Email: Jake@StarboardYacht.com
**www.StarboardYacht.com** | **www.SaltyMarine.com** | www.SaltyMarineBatteries.com

**Salty Marine Sodium-Ion Batteries**
**Entity Registrations:**

- **Starboard Tech and Research Inc.** – UEI: **ZVEVCFHF86Q6** | CAGE: **10T16**
- **Salty Marine Batteries LLC** – UEI: **X44LDUD8US55** | CAGE: **109U9**
- **Starboard Yacht Group LLC** – UEI: **HJD9L8EM94P3** | CAGE: **9X9X7**

MAIN OFFICE: 850 NE 3rd Street, Suite 208, Dania Beach, FL 33004

**CONFIDENTIALITY NOTICE:**
This communication, including any attachments, may contain proprietary, confidential, or legally privileged information and is intended solely for the use of the recipient(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited. If you have received this message in error, please contact the sender immediately and permanently delete the original transmission.

**From:** Steven Donnell <Steven.Donnell@seacoastbank.com>
**Sent:** Friday, November 17, 2023 9:30 AM
**To:** Jake Stratmann <jake@starboardyacht.com>
**Subject:** FW: 2020 Statement

Jake,

Good morning, I hope this email finds you well. Please find attached a copy of your current statement as requested, call me directly with any questions at all on the statement itself. Regarding our current loan programs we would be looking at advances up to 80% of the vessel purchase price and rates are running in the 8.0-8.75% range fixed for terms up to 20 years. There are numerous variables that go into our current programs so if you have a specific vessel and proposed deal structure in mind send me the details and I can try and give a more precise proposal for your review and consideration. I am standing by to assist you further in any way that I can, call me anytime to discuss in greater detail.

Regards,

SeacoastBank

**Steven Donnell** | *Marine and Aviation Lending Specialist – in partnership with Seacoast Bank*
1800 SE 10th Ave., Suite 315 Fort Lauderdale, FL 33316
**Steven.Donnell@SeacoastBank.com** | **C:** 954.675.7195 | **T:** 877.916.2326 | **F:** 954.767.6174

**From:** Jake Stratmann <jake@starboardyacht.com>
**Sent:** Thursday, November 16, 2023 8:24 PM
**To:** Brenda Willis <Brenda.Willis@seacoastbank.com>
**Cc:** Krissy Cartwright <Krissy@pclmbusinesssolutions.com>; Theresa <Theresa@starboardyacht.com>; accounting@starboardyacht.com; Eric Quinn <equinn@navigatorconsultingservices.com>
**Subject:** RE: 2020 Statement

**SENDER EXTERNAL TO SEACOAST – Use caution with links & attachments.**

If you are suspicious of this email, click the "**Phish Alert**" button to send it to Information Security for review.

Brenda,

Hope this message finds you doing well.

We have a few more vessels we'd like to discuss with Seacoast Bank for Financing opportunities. I have in copy Krissy and Eric on our executive team and request a copy of the current statement from Seacoast for our current Loan for the 350 Everglades LX.

Please provide your current rates and Loan to value options on your last 3 laons.

**Respectfully,**

***Jake Stratmann***
**CEO**

***Starboard Yacht Group***

**850 N.E. Third Street Suite 208**
**Dania Beach, Florida, 33004**
Jake@StarboardYacht.com
**Office: (954) 376-5400**
**Mobile: (954) 873-8546**
Fax: (954) 920-6255
www.StarboardYacht.com

***We make boats better than new by transforming your boating experience from ordinary to extraordinary! Ask us about our extraordinary services and products!***

**From:** Jake Stratmann
**Sent:** Wednesday, August 31, 2022 5:43 PM
**To:** Brenda Willis <Brenda.Willis@seacoastbank.com>
**Cc:** nathanl@theaccountingguys.com; Theresa <Theresa@starboardyacht.com>
**Subject:** RE: 2020 Statement

Brenda,

Hope this email finds you doing well. Can you please send us the wire amounts and dates with account numbers the 2 distributions from our 2020 statement?

My CPA firm Nathan is in copy.

**Respectfully,**

***Jake Stratmann***
***CEO***

**Starboard Yacht Group, LLC**
**850 NE 3rd Street, Suite 208**
**Dania Beach, Florida 33004**
**Cell: (954) 873-8546**
**Office: (954) 376-5400**
Jake@starboardyacht.com
www.StarboardYacht.com

***Leaders in Marine Stabilization! Naval architecture, engineering, construction & vessel performance optimization for the ultimate boat experience!***

**From:** Brenda Willis <Brenda.Willis@seacoastbank.com>
**Sent:** Thursday, February 10, 2022 8:36 AM
**To:** Jake Stratmann <jake@starboardyacht.com>
**Subject:** 2020 Statement

Here is the statement for 2020.

SeacoastBank 100 YEARS

**Brenda Willis** | *Marine Ln Proc II*
1800 SE 10th Ave., Suite 315 Fort Lauderdale, FL 33316
**Brenda.Willis@SeacoastBank.com** | **O:** 954.767.1031 | **T:** 800.706.9991 | **F:** 954.767.6174

IMPORTANT NOTICE Please be advised that e-mail is not a secure form of communication and should not be used to communicate personal information. Seacoast Bank will never send an e-mail message requesting confidential information, such as account numbers, passwords, social security numbers, or Personal Identification Numbers (PINs). E-mail should not be considered a reliable means of conducting business transactions. Any financial transaction instruction or inquiry should be made by calling our telephone banking center at 800-706-9991 or visiting your local Seacoast Bank office. This e-mail and the attachments may contain legally privileged confidential information. It is intended solely for the use of the addressee. If you are not the intended recipient, any reading, dissemination, copying, or other use of this message or its attachments is prohibited. If you have received this message in error, please notify the sender immediately and delete this message and all copies.

Dignity® MEMORIAL

## A MESSAGE FROM THE FAMILY

In lieu of flowers the family has asked that donations be made to the Lauderdale Yacht Club Youth Sailing Foundation. Home - LYC Sailing Foundation (lycsf.org) by clicking on the link below.

## OBITUARY

# *Lang B. Ryder*

**MAY 20, 1963 – MARCH 18, 2023**



IN THE CARE OF

Kraeer-Fairchild Funeral Home & Cremation Center

It is with great sorrow to share that Commodore Lang Ryder has passed away on March 18, 2023. He went peacefully with his family by his side. He is survived by his wife of 32

years Bridget Ryder, his son Karl Ryder (28), and daughters Elizabeth Ryder (27) and Sarah Ryder (24).

Lang hails from Hingham MA, where he was raised right in the heart of a New England town and grew up on Main Street. His dad was a commodore at the Hingham Yacht Club which is where Lang's love for sailing and boating started. He attended Tulane University in New Orleans then found his way to Fort Lauderdale, where he met the love of his life Bridget and Bridget's small army of a family.

Lang was a beautiful and lively soul who always lived his life to the fullest. He instilled in his family a love for sailing and the sea. Lang loved life and loved people, he would with ease walk into a room and walk out with a few more friends. His generosity was prevalent with those who knew him. He was in the truest sense, the gentleman sailor.

Lang was heavily involved in his community serving as the 71st Commodore for Lauderdale Yacht Club during the 2013 command year, as well as holding various positions in the Lauderdale Surf & Yacht Club. Additionally, he was an iconic and well-known figure within the bustling South Florida marine industry.

He was a great husband to Bridget, and a great father to Karl, Elizabeth and Sarah, as well as a great son to the late Karl & Prudence Ryder, and son in law to Jack & Particia Trainor. Lang has many great friends that love and care for him, those who knew him well have surely shed a tear in the past two weeks.

Lang grabbed life by the horns and loved hard. He is and will be very missed.

The family is holding a service and celebration of life on Thursday March 30, 2023. The service will begin at 3 o'clock at Church by the Sea, 2700 Mayan Drive, Fort Lauderdale, FL 33316. A celebration of life will immediately follow the service at the Lauderdale Yacht Club, 1725 SE 12th Street, Fort Lauderdale, FL 33316. To honor Lang's love of life we encourage all who plan to attend, please wear your favorite Hawaiian shirt or floral pattern.

In leu of flowers the family has asked that donations be made to the Lauderdale Yacht Club Youth Sailing Foundation. Home - LYC Sailing Foundation (lycsf.org)

Case 0:26-cv-60289-WPD Document 139-1 Entered on FLSD Docket 08/24/2026 Page 38 of 60

Arrangements have been entrusted to the KRAEER - FAIRCHILD FUNERAL HOME, 4061 North Federal Highway, Fort Lauderdale. www.KraeerFairchild.com.

## DONATIONS

Fort Lauderdale Yacht Club Youth Sailing Foundation

# *Past Services*

**THURSDAY, MARCH 30, 2023**

Memorial Service

# *In Memory Of*

## *Lang B. Ryder*

634 716 48





618

VIEW

Click to light a candle

73 CANDLES HAVE BEEN LIT

ADD A MEMORY

ALL MEMORIES FROM THE FAMILY



*Lang B. Ryder Tribute Movie*

2

SHARE





## Julie Thomas
**Friend**

*04/01/2023*

Lang and Bridget stopped off in Pensacola for the night when they brought the boat down from Michigan. Whenever we go to dinner with them either Lang or Donnie will get up to go to the restroom and find the server and give them their credit card. Well Donnie won that night and beat Lang. Lang you will be missed, we love y'all. Rest in peace 🖤

1 SHARE

+ ADD A COMMENT

## Barbara Kehoe
**Friend**

*03/30/2023*

Sincere condolence to the entire family, I am a longtime Hingham friend also very familiar with the waterfront. Lang, his Hingham family and the Kehoe family go way back. So very proud of the accomplishments Lang has achieved as he would have been as my son Michael his Hingham buddy has.
God Rest In Peace
Lang B Ryder

1 SHARE

+ ADD A COMMENT

Gerri Miccio
**Colleague**

*03/30/2023*

A beautiful tribute video of Lang's travels over the years, all with a huge smile, bringing joy wherever he went. My sincerest sympathies to Bridget and Carl, Elizabeth and Sarah. God broke the mold once he created Lang who brought light to the world.

2 SHARE

+ ADD A COMMENT

Jason Dunbar
**Friend**

*03/30/2023*

I, as most people am grateful to have met Lang. He introduced me to Andrew Cilla whom I worked with for nearly 30 years.
He encouraged me to move from Miami to Ft Laud which I did, and have called home for nearly 26 years.
He encouraged me to get involved in my industries trade organizations, which I did and that turned into a very symbiotic relationship.
He encouraged me to buy a boat, which I did and the boat, just like Lang has had a wonderful affect on me and my family's life.
Thank you Lang, we owe you a lot!

1 SHARE

+ ADD A COMMENT

Mark Lyon
**Colleague**

*03/30/2023*

Lang was a hero of mine, truly.

When I was trying to transition from stay-at-home Dad to working, I first interviewed with Lang at his Seacoast office, with my one year old daughter, in her stroller, in front of his desk. His comment: "Motivation! I like it!" My first step back into the career world, and ten good years.

Next, for these past fourteen years, his actions allowed me to continue being a husband, and a father to our three children, as he stepped in while I was passing out from choking at our typically raucous post-boat show dinner. Lang successfully took over after two prior Samaritans' unsuccessful attempts. I was seeing purple and not caring much about anything. As he sprang to my rescue, his comment: "Not on my watch!"

Lang was my hero, simply put, and of course, he led a very, very large life.

I am grateful I was able to be in his wide circle. I thank him for providing an entertaining and rewarding career, and a beautiful family life.

2 SHARE

+ ADD A COMMENT

Barbie Jo Creasy
**Friend**

*03/29/2023*

My heart is heavy for you Bridget and that beautiful family that you and Lang created. There are no words to say for the loss of one hell of a guy, son, husband, father, commodore, and friend.
Capt Curt and I loved and admired him and your family deeply.
My deepest, heartfelt condolences. God bless you all, and keep you strong.

2 SHARE

+ ADD A COMMENT

Karin Correll
**Friend**

*03/29/2023*

So sorry for everyone. Lang was an “uplifter.” He spread joy and happiness. He will certainly be missed!

1 SHARE

+ ADD A COMMENT



**What an incredible guy!**

Robert Lang Adams
**Family**

*03/28/2023*

1 SHARE

+ ADD A COMMENT





**Lang was such an amazing cousin and human being. My deepest sympathies to Bridget, Karl, Sarah and Elizabeth.**

Robert Lang Adams
**Family**

*03/28/2023*

2 SHARE

+ ADD A COMMENT

Eric Shear
**Friend**

*03/28/2023*

I had the honor and privilege to have known Lang for 33 years. When I think of the many qualities he possessed, his honesty, reliability, and dependability not to mention he was just a real stand up kind of guy the type of man that inspires us all, especially myself.
I looked forward to our weekly lunches together, his friendly manner made everyone feel at home wherever he went.
Lang was an exemplar father, and husband, Bridget Karl, Sarah and Elizabeth, I'm so very sorry for your loss.
He was loved by many and will live on in our hearts.

"Your life was a blessing, your memory a treasure. You are loved beyond words and missed beyond measure"

2 SHARE

+ ADD A COMMENT



## Garland Sullivan
**Friend**

*03/27/2023*

Vinnie's in Lauderdale by the Sea Easter Sunday 2018

3 SHARE

+ ADD A COMMENT



## Megan Carrow

**Friend**

*03/26/2023*

3

SHARE

+ ADD A COMMENT



Megan Carrow

**Friend**

*03/26/2023*

4

SHARE

+ ADD A COMMENT



**Friends for Life**

Bryan Long
**Friend**

*03/23/2023*

Lang and Bridget, Heather and I walked through life together with a lot of footsteps, Great footsteps for over 30 years, I remember when Lang first met Bridget and we would hang at the Parrot Lounge with Miss Pat and Daddy Jack, I was "who the these people" little did I know we all would be friends for Life, until death due us apart. RIP Lang love you!

5 SHARE

+ ADD A COMMENT



**Family in Exumas,**

Bryan Long
**Friend**

*03/23/2023*

Just one of the many boat trips in 2005, Heather thanks for making Lang his Pina Colada!

2 SHARE

+ ADD A COMMENT



15th Fisheries Loving Lang

## Bryan Long
**Friend**

*03/23/2023*

Two Months ago, we did some walking.

3 SHARE

+ ADD A COMMENT

## Emily Allard
**Friend**

*03/23/2023*

Our deepest condolences to the Ryder family. Our heart goes out to you for your heartbreaking loss.
Lang was an inspiration who shined his light, humor and love upon everyone he met. He will live forever in all the hearts and minds he touched and be forever missed.
May your many happy memories offer you peace and comfort during this very difficult and challenging time.

Much love,
Emily & Robert Allard
Charlotte Standley

2 SHARE

+ ADD A COMMENT

## Steven Lindemann

**Friend**

*03/23/2023*

I was blessed to have Lang in my life the two years I attended Tulane University. I worked for him at The Boot, and I always looked forward to working with him and Jack Gordon on Friday nights. He would often take me to Eats, an all night diner, after we closed The Boot to treat me to a 3 AM in the morning breakfast. Lang treated me like a little brother and he was the big brother I never had. He was an incredible people person, and his zest for life rubbed off on all who were in his presence. He always made me laugh with his distinctive voice and "let the good times roll" attitude. The open water was always his sanctuary. Rest in peace.

1 SHARE

+ ADD A COMMENT

## David Sloane

**Friend**

*03/23/2023*

Bridget and Ryder Family

I'm so sorry to hear about Lang. I have such fond memories of being on the water with Lang on Race Committee or at Bimini Blast. I will miss his smile and laugh very much. Lang got the most out of every single day he had, something I am so envious of. Hope to see you all soon.

David (Sluggo) Sloane

1 SHARE

+ ADD A COMMENT

## George Johnston
**Colleague**

*03/23/2023*

Lang was a great competitor in the finance business....always fun to talk to and visit at boat shows....we had many good times and many laughs together....my best to family.

1 SHARE

+ ADD A COMMENT



**Much love to Bridget, Karl, Elizabeth. Sarah and the Ryder family**

## Betsy Harling
**Friend**

*03/23/2023*

I will always cherish the wonderful times I had with Lang and his family. So lucky to meet young Lang on the Hingham Yacht Club docks, having him constantly challenge my life guarding abilities, filling bags with lobster diving at Sandy Beach, sailing on Revelry with him hoisted up

the mast throwing drinks to thirsty men on an oil tanker in a stiff NE wind leaving me to steer the boat (what was he thinking having me steer?) , windsurfing on Hingham Harbor, and later having the pleasure of meeting the love of his life and his beautiful children watching our kids sail at the Orange Bowl on the Mako, cheering me on with the family cowbells in the FFL Marathon and generously sharing his family and love of life with me and my sons! Never a dull moment, always a big hug and laugh! Lang you made everyone feel special and loved and I will miss you so much.

2 SHARE

ADD A COMMENT



**We will miss you Lang** ❤

Beth Angela Welker
**Friend**

*03/23/2023*

Thank you for my fondest Boomerang memory.

2 SHARE

ADD A COMMENT





**Lang entered everyone's life like Norm walking into Cheers!**

## Ted Bohne
**Friend**

*03/22/2023*

Lang brightened every room and livened up every party. And if there wasn't a party, he made one. Life was a never ending search for the next best memory. Amazing husband and father, tremendous friend, partner in mischievous endeavours, playful, thoughtful and a truly born leader. Those that met Lang lives were better by knowing him. He will be forever remembered and missed.

1

SHARE

+ ADD A COMMENT



## Carter White
**Friend**

*03/22/2023*

3 SHARE

**View 1 comment**

Every Detail Remembered™ | Dignity® MEMORIAL

© 2026 SCI SHARED RESOURCES, LLC. ALL RIGHTS RESERVED

This site is provided as a service of SCI Shared Resources, LLC. The Dignity Memorial brand name is used to identify a network of licensed funeral, cremation and cemetery providers that include affiliates of Service Corporation International, 1929 Allen Parkway, Houston, Texas. With over 1,900 locations, Dignity Memorial providers proudly serve over 375,000 families a year.

# BAR COMPLAINT SUPPLEMENT — DIP TIMING AND DIFFERENTIAL TREATMENT

**Supplement To:** Pending Bar Complaint Against Amanda Klopp, Esq. (FL Bar No. 124156) and Akerman LLP

**Date:** July 17, 2026

**Complainant:** Charles Jacob Stratmann

**Subject:** New evidence of conflict of interest and motive for false statement to federal court

---

## I. INTRODUCTION

This supplement adds newly discovered evidence to the pending bar complaint against Amanda Klopp, Esq. and Akerman LLP. The new evidence consists of public court records — a bankruptcy court order and two PACER dockets — that document:

1. Klopp's personal financial interest, through her DIP appointment, in the Ivankovich enterprise
2. A one-day gap proving simultaneous enforcement against Ivankovich and the complainant, with selective counsel assignment
3. Differential treatment of the Ivankovich debtor (cooperative) versus the complainant (aggressive) that is consistent with Klopp's DIP conflict

--------------------------------------------------------

## II. THE DIP APPOINTMENT

On July 19, 2024, Judge Laurel M. Isicoff signed an Order (Case No. 24-15755-LMI, Doc. 57) approving the employment of "Eyal Berger, Esq., Amanda Klopp, Esq., and the law firm of Akerman, LLP as general bankruptcy counsel for the debtor-in-possession effective June 17, 2024."

The debtors are Ivankovich Family LLC and affiliated entities — the same enterprise under criminal investigation for theft of the complainant's property and the subject of the complainant's RICO action (Case No. 0:26-cv-61150-PAB).

The Order recites that Akerman "hold[s] no undisclosed interest adverse to the estate" and is a "disinterested person[] as required under 11 U.S.C. § 327." If Akerman was simultaneously representing Seacoast National Bank in its foreclosure against the complainant — a case that serves the Ivankovich enterprise's interest by eliminating the complainant's vessel and economic leverage — the § 327 disinterested person representation may be false.

Klopp's DIP fees are paid from Ivankovich-controlled assets. She has a personal financial interest in protecting the pool of assets from which

she is compensated.

----------------------------------------------------------

**III. THE ONE-DAY GAP**

On December 17, 2025, Seacoast National Bank filed its verified complaint against Contessa Marine Research LLC and Anthony Ivankovich in Case No. 1:25-cv-25958-DPG (S.D. Fla., Judge Gayles). The debt: approximately $1,550,000. Counsel: Fowler White Burnett, P.A. and McIntosh Schwartz, P.A. — not Akerman.

The next day — December 18, 2025 — Seacoast issued its acceleration letter to the complainant demanding full payment on the M/V Slow UR Roll II loan. The debt: approximately $168,000.

Seacoast used separate counsel for the Ivankovich action because Akerman could not represent Seacoast against Ivankovich-connected entities while serving as Ivankovich's DIP counsel. The conflict was recognized and addressed.

But when Seacoast filed against the complainant on February 2, 2026, Akerman appeared as counsel — Klopp and Yoss. The same conflict existed — and was more acute, because the complainant is the adverse party whose property the Ivankovich enterprise is under criminal investigation for stealing. Yet Akerman was assigned anyway.

The conflict check worked for Ivankovich. It did not work for the complainant.

---

## IV. THE DIFFERENTIAL TREATMENT

The Ivankovich debtor ($1.55M debt) received:

- Default vacated unopposed (February 12, 2026)
- Full litigation rights
- Trial set for March 8, 2027
- Mediation scheduled for July 14, 2026
- 15+ months of cooperative litigation

The complainant ($168K debt) received:

- Vessel arrested (February 25, 2026)
- Default judgment entered (May 21, 2026)
- Vessel sold for $160,000 — 16% of $1M appraisal (June 26, 2026)
- Klopp filed DE 108 with false "no objections" statement (July 14, 2026)
- Clerk confirmed sale without judicial review (July 15, 2026)
- 7 months from complaint to fire sale

No rational economic explanation exists for this differential. Seacoast's $168K claim is 0.0008% of its $20.8 billion in assets. The $1.55M claim against CMR is nine times larger. If Seacoast were acting purely in its

economic interest, it would be aggressive with CMR and accommodating with the complainant — not the reverse.

The explanation is Klopp's dual loyalty. She cannot be aggressive with Ivankovich because she is Ivankovich's DIP counsel. She can be aggressive with the complainant because eliminating the complainant's vessel serves both Seacoast's collection interest and Ivankovich's interest in neutralizing the complainant's RICO claims.

---------------------------------------------------------

## V. THE FALSE STATEMENT IN CONTEXT

The false statement in DE 108 ("no objections to the sale are on file") was not an isolated error. It was the culmination of a prosecution strategy that served Klopp's DIP client's interests as much as Seacoast's. Klopp:

1. Responded to three objections on July 7 (DE 98) — proving knowledge
2. Filed DE 108 seven days later denying objections exist — proving intent
3. Filed DE 108 the day after Akerman's Fiore paused the appellate clock — proving coordination
4. Filed DE 108 while serving as DIP counsel for the enterprise under criminal investigation for stealing the complainant's property — proving motive

---------------------------------------------------------

**VI. RULES VIOLATED**

| Rule | Violation |
|------|-----------|
| Florida RPC 4-1.7(a) | Concurrent representation of clients with directly adverse interests (Seacoast vs. Ivankovich DIP) |
| Florida RPC 4-3.3(a)(1) | False statement of material fact to a tribunal (DE 108) |
| Florida RPC 4-3.4(b)(1) | Falsifying evidence (DE 108-2 unsigned order concealed from clerk's process) |
| Florida RPC 4-8.4(c) | Conduct involving dishonesty, fraud, deceit, or misrepresentation |
| Florida RPC 4-8.4(d) | Conduct prejudicial to the administration of justice |
| 11 U.S.C. § 327(a) | Potential false disinterested person representation to bankruptcy court |

---

**VII. EXHIBITS**

| Exhibit | Source | Description |
|---------|--------|-------------|
| 1 | Bankruptcy Court Order, Doc. 57, Case 24-15755-LMI | Klopp personally named as DIP counsel for Ivankovich entities |
| 2 | CMR Docket, Case 1:25-cv-25958-DPG | Fowler White as counsel (not Akerman); default vacated; cooperative pace |
| 3 | SCB Docket, Case 0:26-cv-60289-WPD | Akerman as counsel; aggressive prosecution; DE 108 false statement |

| 4 | DE 98 | Klopp's response to objections — proves knowledge |

| 5 | DE 108 | Motion with false "no objections" statement |

| 6 | DE 108-2 | Unsigned proposed order — proves knowledge that judicial authorization required |

| 7 | DE 109 | Clerk's confirmation based on false statement |

---

*BAR COMPLAINT SUPPLEMENT | W1173 | 2026-07-17 | NA-LMC*

*Status: [CEO GATE — COUNSEL REVIEW + FILE]*